**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

MICHAEL GAFFNEY,

                                        Plaintiff,                    **COMPLAINT**

         -against-                                    Civil Action No. ____CV_____

MUHAMMAD ALI ENTERPRISES LLC,
a New York Limited Liability Company,
and AUTHENTIC BRANDS GROUP LLC,
a New York Limited Liability Company,

                                        Defendants.
------------------------------------------------------------------X

         Plaintiff Michael Gaffney, through his attorneys, Nicoll Davis & Spinella LLP, by way of

complaint against defendants Muhammad Ali Enterprises LLC ("MAE") and Authentic Brands

Group LLC ("ABG") (collectively "Defendants"), says as follows:

                              **NATURE OF THE CASE**

         1.        This is an action for injunctive and monetary damages arising from MAE/ABGs'

willful and knowing infringement of Michael Gaffney's exclusive rights in and to a collection of

original photographs taken by Mr. Gaffney, herein referred to as the "Michael Gaffney

Photographs," of Muhammad Ali when he was Muhammad Ali's personal photographer from

1977 through 1978. Mr. Gaffney authored, created, copyrighted, and published, the Michael

Gaffney Photographs and registered them with the U.S. Copyright Office. Attached hereto as

Exhibit A is a true and correct copy of the "Michael Gaffney Photographs." An example of one

of the iconic photographs authored by and owned by Plaintiff is the following picture taken of

Muhammed Ali at the height of his boxing career:



© Michael Gaffney 1977

2.      Mr. Gaffney is an award winning photojournalist who began his career as a news photographer in 1972.  He was chosen by Muhammad Ali to be his personal photographer from 1977 through 1978.

3.      Mr. Gaffney is the author and owner of all copyrights in and to the Michael Gaffney Photographs which were created in 1977 and 1978, and registered under U.S. Copyright Registration Number VAu000964300, dated February 22, 2008 as well as U.S. Copyright Registration Number TX0008550740 dated June 12, 2018.

4.      After Michael Gaffney terminated a written license agreement with MAE/ABG in 2015 for the use of the Michael Gaffney Photographs, MAE/ABG willfully and knowingly engaged in an extraordinary, unparalleled large-scale and widespread infringement of Mr. Gaffney's rights.  Without the permission of Mr. Gaffney, MAE/ABG copied, reproduced and publicly displayed and continue to display the Michael Gaffney Photographs in extensive digital

marketing and on worldwide social media platforms.  This was done as part of their overall business strategy further allowing their unlawful copyright infringement to spread to national mass media outlets and worldwide apparel retailers causing further misuse and copyright infringement by others, all of which has and continues to cause Michael Gaffney to suffer substantial, irreparable harm as well as substantial monetary damage that will continue unless enjoined by this Court.

## JURISDICTION AND VENUE

5.      This is a civil action seeking injunctive relief and monetary damage for violations of the Copyright Act of the United States, 17 U.S.C. §101 *et seq*. and the Digital Millennium Copyright Act ("DMCA") 17 U.S.C. §1201-05.

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C §§1331 and 1338(a).

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and 28 U.S.C. §1400(a).

8.      This Court has personal jurisdiction over each of the Defendants because Defendants are doing business in the State of New York and/or have committed acts of copyright infringement by unlawfully reproducing and publicly displaying the subject photographs within the State of New York.

## PARTIES

9.      Plaintiff Michael Gaffney is an award winning photographer, photojournalist and visual artist.  Mr. Gaffney is a domiciliary of the State of New Jersey.

10.      Defendant MAE is a New York limited liability company with a business address at 650 Madison Avenue, Fifteenth Floor, New York, New York 10022.  Upon information and belief, MAE has directly and intentionally engaged in infringing conduct within the jurisdiction of this Court.

11.     Defendant ABG is also a New York limited liability company with a business address at 1411 Broadway, New York, New York 10001.  Upon information and belief, ABG has directly and intentionally engaged in infringing conduct within the jurisdiction of this Court.

12.     MAE is a wholly-owned subsidiary of ABG.

### FACTUAL BACKGROUND

13.     Mr. Gaffney began his career as a news photographer in 1972.  He was chosen by Muhammad Ali and became his personal photographer from 1977 to 1978.  During that time, Mr. Gaffney travelled the world with Ali, covered three major boxing matches and took, authored and created thousands of photographs of Ali who is known the world over simply as "The Greatest."

14.     With Mr. Gaffney's authorization, the images in the Michael Gaffney Photographs have been published in magazines and newspapers worldwide and there is significant value and continued historic interest and demand for limited edition fine art prints and exhibitions of the images in Plaintiff's collection.

15.     A collection of Michael Gaffney's rare photographs of Ali was published in 2012 as a documentary book based on his experience entitled, "The Champ-My Year With Muhammad Ali."  This photo collection has been featured on ESPN and in exhibitions at The Morris Museum in New Jersey, The London Olympics, The San Francisco Art Exchange, Saatchi Art, Proud Gallery, Chelsea London, Proud Gallery, Camden London, The London O2-"I AM THE GREATEST" exhibition, The Harlem Fine Arts Show and at Richard Beavers Gallery, Brooklyn, New York.  The following is a true and correct image of the front cover of Plaintiff's book:



16.     In 2011, Michael Gaffney entered into a contractual relationship with MAE by signing the Muhammad Ali Enterprises, LLC License Agreement effective February 1, 2011 through January 31, 2015 for the purpose of licensing the Michael Gaffney Photographs (the "Agreement").   MAE is a marketing and media services company.   The company's services include global licensing, merchandising, television, film, video, and internet projects.   MAE specializes in the promotion of boxing and Muhammad Ali entertainment and merchandise.  Under the Agreement Michael Gaffney granted MAE an exclusive license to: a) license to selected third parties the Michael Gaffney Photographs on or in connection with the manufacture, sale, marketing and distribution of the items of merchandise associated with Muhammad Ali and/or an advertisement which features an endorsement of a good or service by Ali.; b) license the Michael Gaffney Photographs for promotional and marketing purposes such as marketing, promotion and advertising of MAE, Muhammad Ali, as well for MAE's future displays, trade shows, and exhibits, and for display within any third party brick and mortar retail store that feature Muhammad Ali

licensed products or any Muhammad Ali themed real estate projects, such as a display in restaurants and/or hotels, in any and all forms of media now existing or hereafter developed.; and c) license to selected third parties the Michael Gaffney Photographs for editorial purposes such as news programming, documentaries, magazines, books, newspapers, online counterparts of the foregoing, all of which must be primarily editorial in nature. Attached hereto as Exhibit B is a true and correct copy of the first page of the Agreement dated January 24, 2011 which has been redacted and by its terms is confidential.

17.     In the Agreement, MAE specifically acknowledges that Mr. Gaffney owns the copyrights to certain photographs of Muhammad Ali. MAE was only permitted to use the Michael Gaffney Photographs, which were annexed to the Agreement as Exhibit A, subject to, and in strict compliance with the terms and conditions of the Agreement.

18.     Under the Agreement, Mr. Gaffney licensed the Michael Gaffney Photographs to MAE and permitted MAE to list them on MAE's client website and further allowed them to be licensed to clients of MAE, but only during the term of the Agreement.

19.     Pursuant to Paragraph 7.1 of the Agreement, Defendants were required, when using the Michael Gaffney Photographs, to display the following Copyright Management Information ("CMI") on each and every instance of use, namely: "Photographs © Michael Gaffney All Rights Reserved."

20.     In 2014, ABG purchased MAE and executed a supplemental Contract with Mr. Gaffney on January 24, 2014 that confirmed that ABG was bound by all of the terms and conditions of the Agreement. Attached hereto as Exhibit C is a true and correct copy of the first page of the supplemental Contract dated January 24, 2014 which has been redacted and by its terms is confidential.

21.     ABG is an American brand development and licensing company based out of New York, New York with extensive experience in licensing and managing copyrights.  ABG acquires, manages and builds long term value in consumer brands on a worldwide basis by digital marketing and social media. ABG owns such consumer brands as Juicy Couture, Jones New York, Elvis Presley, Marilyn Monroe, Prince Tennis, Tapout, Hickey Freeman, Judith Leiber, Aeropostale, and others.  On its website, ABG claims to own and have "33 brands, 702 partners, 4606 stores, 236 Million followers and Annual Retail Sales of $7.6 Billion."   See ABG Website: www.authenticbrandsgroup.com.

22.     ABG's business model is to purchase brands in the sports, celebrity, men's fashion and women's fashion categories and license the intellectual property including copyrights to retailers, wholesalers, manufacturers and direct-to-consumer channels worldwide for marketing and advertising.  See ABG Website at:  www.authenticbrandsgroup.com.

23.     As described in a December 28, 2017 article in the _Robin Report_, ABG President and Chief Marketing Officer Nick Woodhouse described ABG's business and was quoted as saying: "Given the scope of the brand portfolio, harnessing digital intelligence and using it is increasingly an ABG competitive advantage.  Our digital innovation group manages over 20 branded social media accounts in-house with a combined following of more than 211 million." Attached hereto as Exhibit D is a true and correct copy of the _Robin Report_ article.

24.     Woodhouse further explained, "We are becoming a full-content machine with music, movies, television shows.  We believe content is the biggest driver in brand development." Id.

25.     The term of the Agreement between MAE/ABG and Gaffney was set to expire on January 31, 2015.

26.     Between January 14, 2015 and March 3, 2015, Mr. Gaffney communicated with Jasen Wright, Vice President of Sports at ABG by phone and email, to renegotiate the terms of the Agreement.  Attached hereto as Exhibit E are a true and correct copies of the email correspondence with ABG dated January 14, 2015 and February 11, 2015.

27.     After they failed to reach agreement on new terms, Mr. Gaffney sent a letter by email on March 4, 2015 to ABG which terminated the Agreement and forbade any further use of the Michael Gaffney Photographs.  Attached hereto as Exhibit F is a true and correct copy of the letter sent by Michael Gaffney to ABG via email on March 4, 2015.

28.     Defendants' infringing conduct began the same day the Agreement was terminated when MAE/ABG unlawfully published three images from the Michael Gaffney Photographs on March 4, 2015 without Plaintiff's authorization.

29.     Gaffney recently learned that contrary to his termination notice, MAE/ABG continued to use the Michael Gaffney Photographs which began appearing on March 4, 2015, on MAE/ABG social media sites of Facebook, Instagram and Twitter.  Defendants initially improperly published a total of 60 images by simultaneously publishing 20 images from the Michael Gaffney Photographs on three different social media platforms after the termination letter was sent to ABG.  Attached hereto as Exhibit G is a true and accurate list of the images and their dates of release on each of Defendants' social media platforms.  Each one of the 60 published images were used without authorization after the MAE/ABG Agreement expiration date of January 31, 2015.  The following images depict the Defendants' unauthorized publication of Plaintiff's copyrighted photographs on August 31, 2015 on their three social media platforms:

**Defendants' Facebook Account**



**Defendants' Instagram Account**



**Defendants' Twitter Account**



30.    The infringing conduct has continued for over three and one-half years and continues through the present time.  For example, MAE/ABG just published without authorization

another one of the Michael Gaffney Photographs on August 23, 2018. It was unlawfully published on each of MAE/ABG's social media platforms. The following images depict the Defendants' unauthorized publication of Plaintiff's copyrighted photographs on August 23, 2018 on their three social media platforms:

### Defendants' Facebook Account



### Defendants' Instagram Account



### Defendants' Twitter Account



31.   Upon information and belief, on a separate Instagram site named "muhammadali_the_greatest" owned and operated by MAE/ABG, an additional 38 images from

the Michael Gaffney Photographs appear unlawfully and are being used extensively without Michael Gaffney's authorization.  Attached hereto as Exhibit H is a true and accurate list of Plaintiff's photographs and dates of Defendants' unlawful publication and release of same.

32.     Upon information and belief, on another separate Instagram site named "muhammadali_goat" owned and operated by MAE/ABG, an additional 13 images from the Michael Gaffney Photographs appear unlawfully and are being used extensively without Michael Gaffney's authorization.  Attached hereto as Exhibit I is a true and accurate list of Plaintiff's photographs and dates of Defendants' unlawful publication and release of same.

33.     To date, Plaintiff has discovered that MAE/ABG has misused without authorization at least 111 of Plaintiff's copyrighted photographs.

34.     Additionally, upon information and belief, a Twitter hashtag "#RememberAli" was created, promoted and extensively used on Twitter by MAE/ABG and Defendants improperly associated images from the Michael Gaffney Photographs without authorization from Gaffney.

35.     Mr. Gaffney also recently learned that the constant and extensive public display of the Michael Gaffney Photographs across multiple social media platforms by MAE and ABG allowed for further infringement by national mass media outlets.  Displayed below and attached hereto as Exhibit J is a true and correct copy of the <u>Parade Magazine</u> article dated July 4, 2016 displaying the Michael Gaffney Photographs without Gaffney's authorization:



36.     As the Agreement was terminated, MAE/ABG had no lawful right to use any of the Michael Gaffney Photographs at any time after January 31, 2015.

37.     The continued use by ABG and MAE in their digital marketing generally as well as their on their social media sites of Facebook, Instagram and Twitter of the Michael Gaffney Photographs without permission and without a signed agreement is a violation of Copyright law as well as Gaffney's rights when Defendants had full knowledge of Plaintiffs' ownership and copyrights to the photographs.

38.     As the Agreement had been lawfully terminated, MAE/ABG's infringement of Gaffney's rights was done willfully and knowingly.

39.     In addition to the unlawful publication and misuse of the Michael Gaffney Photographs detailed above, MAE/ABG unlawfully altered the Photographs, without authorization or approval, by removing Michael Gaffney's Copyright Management Information ("CMI") from

public display, or in any event not identifying Michael Gaffney as the copyright owner of the images.

40.     In an extraordinary display of their knowing, willful and egregious conduct, MAE/ABG not only failed to display Gaffney's CMI on the images they distributed through their social media platforms, they replaced Gaffney's CMI with their own CMI which would mislead viewers of the Photographs not to Gaffney but to MAE/ABG.  Attached hereto as Exhibit K is a true and correct copy of an image illustrating the removal and or replacement of CMI. The following images also depict how Plaintiffs' CMI is shown on his photographs and how Defendants' displayed the same photograph after adding their own CMI:

**Plaintiff's Photograph**                    **Defendants' add their own CMI**

  

© Michael Gaffney 1978

41.     MAE/ABG's willful and egregious conduct caused further damage to Plaintiff because the failure to add Mr. Gaffney's CMI to his photographs upon distribution, enabled downstream viewers who viewed the MAE/ABG digital marketing and social media platforms to

add their own or other CMI to the Michael Gaffney Photographs.  Attached hereto as Exhibit L is a true and correct copy of an example of unauthorized downstream infringement.

42.     Based on the publically available digital intelligence for some of Defendants' social medial platforms, the scope and extent of MAE/ABG's willful infringement of the Michael Gaffney Photographs as well as the infringement created by MAE/ABG's downstream customers and others is staggering, widespread and global.  ABG claims to have 236 Million followers on its social media platform enabling it to create immediate global dissemination of images and photographs such as Plaintiff's.

43.     MAE has over 800,000 followers on Twitter with a timeline that is open and viewable to the public on a worldwide basis.  Mr. Gaffney's subject photographs that were unlawfully copied and shared by MAE received at least 330,247 "likes" and at least 283,210 "retweets" on Defendants' account.  Each "retweet" means that another Twitter user had viewed and tweeted one of Plaintiff's photographs and is an additional instance of unlawful copying and distribution of the Michael Gaffney Photographs in violation of Gaffney's rights under Copyright law.

44.     MAE has over 11.3 million followers on Facebook with a profile that is open and viewable by the public.  The Michael Gaffney Photographs received over 3 million "likes" and over 1 million "shares" on Defendants' account.   Each "share" means that another Facebook user had viewed and shared one of Plaintiff's photographs and is an additional instance of unlawful copying and distribution of the Michael Gaffney Photographs in violation of the Gaffney's exclusive rights under Copyright law.

45.     MAE has over 2.7 million followers on Instagram, and the Instagram feed is open and viewable by the public.  The Michael Gaffney Photographs received over 1.2 million "likes" on Defendants' account further violating Plaintiff's copyrights.

46.     Mr. Gaffney first learned of MAE/ABGs' infringement of the Michael Gaffney Photographs in or about March 2018 when he began to create a digital presence for his photographs and book.

47.     The Michael Gaffney Photographs are highly creative, distinctive, and valuable. Because of the quality and visual appeal of the Michael Gaffney Photographs, Gaffney stood to gain substantial revenue from owning and controlling his copyrighted works.

48.     MAE/ABG's willful and knowing unauthorized use harms the existing and future market value of the Michael Gaffney Photographs.  MAE's Instagram and Facebook posts as well as Twitter tweets made the Michael Gaffney Photographs immediately available to their 14.8 million combined followers and others, who are consumers of entertainments news who would otherwise be interested in viewing the Michael Gaffney Photographs on other platforms.

49.     These unlawful public displays of the Michael Gaffney Photographs after the termination of the Agreement were and continue to be willful and harmful infringements of Mr. Gaffney's copyrights as MAE/ABG was aware of his rights and that they no longer had any right or permission to use the Michael Gaffney Photographs.

50.     MAE/ABG's unauthorized use is commercial in nature.  MAE uses their Instagram, Facebook and Twitter feeds for the purpose of promotion - specifically to promote MAE's and ABG's business interests, products and ventures and to maintain and increase visibility and desirability of the MAE brands.  Every one of MAE's Instagram posts, Facebook posts or Twitter tweets is fundamentally promoting something to their 14.8 million followers.

51.     Further magnifying the scope of the injury to Mr. Gaffney, MAE's Instagram and Twitter accounts also promote existing MAE and ABG partnerships using the Michael Gaffney Photographs.  For example, the profile of their accounts contain links to various web pages promoting merchandising partnerships with worldwide apparel retailers such as Tag Heuer,

Bombas and Roots of Flight using the Michael Gaffney Photographs.  As a result, MAE/ABG's willful, infringing conduct generates significant revenue for them while unlawfully using Gaffney's copyrighted works.  Attached hereto as Exhibit M is a true and correct copy of screenshots of MAE/ABG's social media sites unlawfully using Plaintiff's photographs to promote their commercial partnerships.  Additionally, the following is a true and correct image illustrating the depth of the Defendant's infringement to the extent that they authorized Tag Heuer to use one of the Michael Gaffney Photographs on their own social media site to promote its brand and placed their own CMI on the Plaintiff's photograph:



52.    MAE/ABG's conduct is particularly egregious because they work in an industry where copyright is prevalent and they have extensive experience with copyright ownership.

53.    MAE/ABG engaged in willful copyright infringement with the full knowledge that they did not have authorization or permission to use the Michael Gaffney Photographs.

54.     MAE/ABG did not disclose their unauthorized use of the Michael Gaffney Photographs or seek permission to use the Michael Gaffney Photographs. But for Mr. Gaffney's discovery of the MAE/ABG's unauthorized uses, their knowing and willful infringement and unlawful conduct would still be ongoing and expanding.

## CLAIM ONE

### (For Copyright Infringement – Against All Defendants)

55.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth here.

56.     The foregoing acts of Defendants constitute infringement of Plaintiff's copyrights of The Michael Gaffney Photographs in violation of 17 U.S.C. §501 *et seq*.

57.     Plaintiff suffered monetary damages and other harm as a result of Defendants' unauthorized use of The Michael Gaffney Photographs.

58.     Plaintiff is informed and believes that Defendants' acts of copyright infringement, as alleged above, were willful, intentional and malicious, which subjects Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to $150,000 per infringement. Within the time permitted by law, Plaintiff will make his election between actual damages and statutory damages.

## CLAIM TWO

### (For Vicarious and/or Contributory Copyright Infringement – Against All Defendants)

59.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth here.

60.     Plaintiff is informed and believes that Defendants knowingly induced, participated in, aided and abetted in and profited from the unauthorized reproduction and/or subsequent distribution of the subject photographs.

{0781-4291/00486135-1}                     -17-

61.     Defendants, and each of them, are vicariously liable for the infringements alleged above because, on information and belief, they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

62.     By reason of each of the Defendants' acts of contributory and vicarious copyright infringement as alleged above, Plaintiff has suffered and will continue to suffer substantial damages to his business in an amount to be established at trial, as well as additional general and special damages in an amount to be established at trial.

63.     Plaintiff is informed and believes that Defendants acts of copyright infringement, as alleged above, were willful, intentional, and malicious, which further subjects Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to $150,000 per infringement.  Within the time permitted by law, Plaintiff will make its election between actual damages and statutory damages.

## CLAIM THREE

**(For Removal of Copyright Management Information in Violation of DMCA 17 U.S.C. §1202 – Against All Defendants)**

64.     Plaintiff realleges and incorporated by reference the allegation contained in the preceding paragraphs of this Complaint as if fully set forth here.

65.     On information and belief, Defendant, removed Plaintiff's CMI from the Michael Gaffney Photographs without authorization of Plaintiff and then distributed the subject photographs, with the CMI removed.

66.     Defendants' actions alleged above constitute a violation of 17 U.S.C. §1202.

67.     Plaintiff has suffered damages as a result of Defendants' violation of 17 U.S.C. §1202.

68.     On information and belief, the Defendants' removal of the CMI from the Michael Gaffney Photographs was intentional, and Defendants' distribution of the subject photographs was with knowledge that the CMI had been removed without authorization, which further subjects Defendants to liability for statutory damages under 17 U.S.C. §1203 in the amount of up to $25,000 per infringement.  Within the time permitted by law, Plaintiff will make his election between actual damages and statutory damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff hereby demands judgment against the Defendants, jointly and severally, and requests the following:

A.  For a preliminary and permanent injunction against Defendants, and anyone working in concert with them, from further copying, displaying, distributing, selling, or offering to sell The Michael Gaffney Photographs described in the Complaint;

B.  For an order requiring Defendants to account to Plaintiff for their profits and any damages sustained by Plaintiff arising from the acts of infringement;

C.  Under 17 U.S.C §503, for impoundment of all copies of the subject photographs used in violation of Plaintiff's copyrights – including digital copies or any other means by which they could be used again by Defendants without Plaintiff's authorization – as well as all related records and documents;

D.  For actual damages, punitive damages and all profits derived from the unauthorized use of the subject photographs or, where applicable and at Plaintiff's election, all statutory damages provided under the Copyright Act;

E.  Under 17 U.S.C. §1203, for actual damages for the unauthorized alteration or removal of copyright information or, where applicable and at Plaintiff's election, statutory damages of not less than $2,500 or more than $25,000 for each such instance;

F.   For an award of pre-judgment interest as allowed by law;

G.   For all reasonable attorneys' fees and all other costs allowed by law; and

H.   For such other and further relief as the Court deems necessary, just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all issues permitted by law.

Respectfully submitted,
NICOLL DAVIS & SPINELLA LLP
Attorneys for Plaintiff Michael Gaffney

By:   */s/ Anthony J. Davis*_____

Anthony J. Davis
Nicoll Davis & Spinella LLP
450 Seventh Avenue
Suite 2205
New York, NY 10123

Dated:  September 25, 2018
New York, New York