Jessica S. Rutherford, Esq.
FERDINAND IP, LLC
450 Seventh Avenue
Suite 1300
New York, NY 10123
Phone: (212) 220-0523
Fax:    (203) 549-2339
jrutherford@fiplawgroup.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL GAFFNEY,<br><br>    Plaintiff,<br><br> -against -<br><br>MUHAMMAD ALI ENTERPRISES LLC,<br>a New York Limited Liability Company,<br>AUTHENTIC BRANDS GROUP LLC,<br>a New York Limited Liability Company,<br>ROOTS OF, INC., a California corporation<br>d/b/a "ROOTS OF FIGHT;" and DOES 1-10,<br><br>    Defendants. | Civil Action Nos. 1:18-cv-08770-GBD-OTW;<br>    1:20-cv-07113-GBD-OTW |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANTS**
**MUHAMMAD ALI ENTERPRISES LLC AND AUTHENTIC BRANDS GROUP LLC**

**TABLE OF CONTENTS**

I. GAFFNEY DOES NOT DISPUTE THAT THE MUHAMMAD ALI ENTITIES ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON SEVERAL ISSUES ............1

II. THE UNDISPUTED EVIDENCE SHOWS GAFFNEY HAS NOT OWNED EXCLUSIVE COPYRIGHT IN PHOTOGRAPHS I04 AND I06 SINCE 1977 ...............2

III. THE MUHAMMAD ALI ENTITIES HAVE ESTABLISHED BY UNDISPUTED EVIDENCE THAT GAFFNEY KNEW PHOTOGRAPHS I01, I02, I05 AND I08 HAD BEEN PUBLISHED WHEN HE FALSELY CERTIFIED THAT THEY WERE PREVIOUSLY UNPUBLISHED ...................................................................................4

IV. THE '740 REGISTRATION IS NOT VALID REGISTRATION OF PREVIOUSLY PUBLISHED PHOTOGRAPHS AS A MATTER OF LAW ............................................7

V. GAFFNEY HAS ADDUCED NO NON-SPECULATIVE EVIDENCE OF ACTUAL DAMAGES ....................................................................................................................9

VI. GAFFNEY HAS NO CLAIM TO THE MUHAMMAD ALI ENTITES' PROFITS...... 12

CONCLUSION ...............................................................................................................14

**TABLE OF AUTHORITIES**

*Cases:*

*Archie MD, Inc. v. Elsevier, Inc.*,
261 F.Supp.3d 512 (S.D.N.Y. 2017) ...................................................................................5, 9

*Baker v. Urban Outfitter, Inc.*,
254 F.Supp.2d 346 (S.D.N.Y. 2003) .......................................................................................11

*Bayoh v. Afropunck LLC*,
2020 WL 6269300 (S.D.N.Y. Oct. 26, 2020) ........................................................................12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...............................................................................................................13

*Cooney v. Consol. Edison*,
220 F.Supp.2d 241 (S.D.N.Y. 2002), *aff'd*, 63 F. App'x 579 (2d Cir. 2003) ................................10

*Craig v. UMG Recordings, Inc.*,
380 F.Supp.3d 324 (S.D.N.Y. 2019) ......................................................................................13

*Davis v. Gap. Inc.*,
246 F.3d 152 (2d Cir. 2001) ............................................................................................. 10-11

*Eckes v. Card Prices Update*,
736 F.2d 859 (2d Cir. 1984) .....................................................................................................9

*Enzo Biochem, Inc. v. Amersham PLC*,
981 F.Supp.2d 217 (S.D.N.Y. 2013) ......................................................................................12

*First Am. Title Ins. Co. v. Lawson*,
177 N.J. 125 (2003) ..................................................................................................................4

*Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*,
807 F.2d 1110 (2d Cir. 1986) ...................................................................................................9

*Fournier v. McCann Erickson,*
242 F.Supp.2d 318 (S.D.N.Y. 2003) ......................................................................................13

*Ginns v. Towle*,
361 F.2d 798 (2d Cir. 1966) .....................................................................................................8

*Goldsmith v. Max*,
1981 WL 1428 (S.D.N.Y. Mar. 31, 1981) ............................................................................ 2-3

*Graham v. Prince*,
265 F.Supp.3d 366 (S.D.N.Y. 2017) .................................................................................. 13

*Kargo, Inc. v. Pegaso PCS, S.A. de C.V.*,
2008 WL 4579758 (S.D.N.Y. Oct. 14, 2008) ....................................................................... 4

*Laspata DeCaro Studio Corp. v. Rimowa GmbH*,
2018 WL 3059650 (S.D.N.Y. June 20, 2018) .................................................................... 13

*McLaren v. Chico's FAS, Inc.*,
2010 WL 4615772 (S.D.N.Y. Nov. 9, 2010) ........................................................................ 5

*Ortiz v. Nieto Enterprises, LLC*,
2014 WL 12569380 (D. N.M. Dec. 4, 2014) ........................................................................ 6

*Palmer/kane LLC v. Gareth Stevens Publ'g*,
2016 WL 6238612 (S.D.N.Y. Oct. 24, 2016) ....................................................................... 9

*Rodriguez v. Mod. Handling Equip. of NJ, Inc.*,
604 F.Supp.2d 612 (S.D.N.Y. 2009) ..................................................................................... 1

*Schatt v. Curtis Mgmt. Grp., Inc.*,
764 F.Supp. 902 (S.D.N.Y 1991) ...................................................................................... 5-6

*Silberman v. Innovation Luggage, Inc.*,
2003 WL 1787123 (S.D.N.Y. Apr. 3, 2003) ...................................................................... 13

*Structured Asset Sales, LLC v. Sheeran*,
433 F.Supp.3d 608 (S.D.N.Y. 2020) .................................................................................. 13

*Trouble v. Wet Seal, Inc.*,
179 F.Supp.2d 291 (S.D.N.Y. 2001) .................................................................................... 1

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
141 S.Ct. 2698 (2021) ........................................................................................................... 6

**Statutes, Rules, and Other Authorities:**

17 U.S.C. §101 ......................................................................................................................... 5

17 U.S.C. § 411 .................................................................................................................... 6, 9

17 U.S.C. § 504 ....................................................................................................................... 10

37 C.F.R. §202.3 ....................................................................................................................... 7

Compendium of U.S. Copyright Office Practices (3d ed. 2021).................................................. 6-8

Defendants, Muhammad Ali Enterprises LLC ("MAE") and Authentic Brands Group LLC ("ABG") (collectively, "the Muhammad Ali Entities"), respectfully submit this Reply Memorandum of Law in support of their Motion for Partial Summary Judgment (the "Motion").

### I. GAFFNEY DOES NOT DISPUTE THAT THE MUHAMMAD ALI ENTITIES ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON SEVERAL ISSUES

Gaffney's brief in opposition to summary judgment does not dispute four grounds on which the Muhammad Ali Entities have moved for partial summary judgment. Consequently, summary judgment should be granted on each of these grounds.

First, Gaffney does not dispute The Muhammad Ali Entities are entitled to summary judgment finding that they bear no liability for the alleged conduct of Instagram Fan Sites "Muhammadali_the_greatest" and "Muhammadali_Goat," and he concedes that he has identified *no* allegedly infringing use on any Muhammad Ali Entity-controlled site, or any site of their licensees, of the following Photographs: I02, I06, I13, I18, I19, I20, I21, I24 and I28.[1] Plaintiff CntrStmt., Dkt No. 140[2], ¶¶ 62-65. *See* Defendants' Brief, Dkt. No. 112, pp. 17-18.

Second, Gaffney does not contest that the Muhammad Ali Entitles are entitled to summary judgment dismissing claims under the DMCA on the ground that there is no evidence of direct liability for DMCA violations in either action, or of vicarious liability for DMCA violations in the Second Action. Plaintiff CntrStmt. ¶66. *See* Defendants' Brief, pp. 18-19.

---

[1] Gaffney disputes that there is no evidence of infringing use of Photographs I05, I08 and I10 on the basis that he claims to have identified non-social media use of these images. Plaintiff CntrStmt. ¶ 65. However, when specifically asked in discovery to identify all allegedly infringing uses, Gaffney identified no use of I05, I08 or I10 *at all*, in either his "Table of Infringing Uses" or in any other documents referenced in his Interrogatory Responses. 1:18-cv-8770, Dkt. No. 133, Defendants' Rule 56.1 CntrStmt. ("DR 56.1 CntrStmt") ¶ 55. Gaffney now seeks to introduce inadmissible hearsay evidence, *i.e.,* unsworn statements made by Gaffney to his counsel and repeated by counsel in a chart prepared for litigation. *Id. See Trouble v. Wet Seal, Inc.,* 179 F.Supp.2d 291, 300 n. 5 (S.D.N.Y. 2001) (data compiled for use in litigation are not admissible as business records); *Rodriguez v. Mod. Handling Equip. of NJ, Inc.*, 604 F.Supp.2d 612, 622 (S.D.N.Y. 2009) (double hearsay not admissible unless each level of hearsay is covered by a hearsay exception). Consequently, summary judgment should also be granted finding no liability by the Muhammad Ali Entities for any alleged use of Photographs I05, I08 and I10.

[2] Unless otherwise specified, all Docket Number references are to the Docket in Case No. 1:18-cv-8770.

1

Third, Gaffney does not dispute that the Muhammad Ali Entities are entitled to summary judgment precluding an award of statutory damages and attorneys' fees for all claims of infringement of Photographs not covered by the '300 Registration. Defendants' Brief, pp. 19-20; Plaintiff's Brief, p. 20 (conceding that only Photographs covered by the '300 Registration are eligible for such damages). Consequently, summary judgment should be granted dismissing all remaining claims for statutory damages and attorneys' fees for all Photographs not covered by the '300 Registration (I04, I06, I10-I22, I24-I26).[3] *See* Defendants' Brief, pp. 19-20.

Fourth, Gaffney does not contest that summary judgment should be granted limiting any award of damages to those incurred within three years of the filing of actions. Summary judgment should therefore be granted barring any claim in the First Action for damages incurred prior to September 25, 2015 and any claim in the Second Action for damages incurred prior to September 1, 2017. *See* Defendants' Brief p. 21 n. 9.

## II. THE UNDISPUTED EVIDENCE SHOWS GAFFNEY HAS NOT OWNED EXCLUSIVE COPYRIGHT IN PHOTOGRAPHS I04 AND I06 SINCE 1977

Gaffney contends that Photographs I04 and I06 were not injected into the public domain through their 1977 publication in the *Daily Record* because he had an "oral agreement" that these Photographs were to be published with "copyright notification." Relying solely on inadmissible hearsay evidence of such a purported agreement, he fails to raise a genuine issue of material fact precluding summary judgment.

This case is remarkably similar to *Goldsmith v. Max*, 1981 WL 1428 (S.D.N.Y. Mar. 31, 1981), which both parties agree is the relevant precedent. In *Goldsmith*, the plaintiff's work was published without copyright notice, despite her request that she receive "appropriate photo

---

[3] If the court finds that the '300 Registration is invalid with respect to Photographs I02, I05, I08 and I10 due to their prior publication, statutory damages and attorneys' fee claims for these Photographs should also be dismissed.

2

credit." *Id.* at *4. When the work was published without such notice, however, she took no action to allege breach of contract or failure to provide copyright notice. *Id.* at *5.  The court concluded:

> Lacking the presumption of copyright validity, the plaintiff must demonstrate that the publication of her work . . . without copyright notice was unauthorized. The Court finds that the plaintiff has not carried that burden. [Plaintiff] offered evidence to show that [she] intended to protect her rights in the photo, yet the record is devoid of evidence from which it can be concluded that she in fact protected those rights.

*Id.* at *6. *Goldsmith* compels the same conclusion here: Although Gaffney has testified that he asked that "copyright notification" be included, he has adduced no admissible evidence that the *Daily Record* agreed to publish the Photographs with proper copyright notice. Instead, he relies solely on unreliable hearsay inadmissible under Federal Rule of Evidence 801, i.e., Gaffney's own testimony that the author of the *Daily Record* article *may* have told him he would include a "copyright notification": "I guess his response was, 'sure,' or, 'that's standard,' or, you know, I have no idea," and "I don't remember him – exact words - over 30 years ago. But I asked him; he said he would." Burke Decl. Ex. 13 (Gaffney Dep. Tr. at 108:23-24; 112:11-15).

Furthermore, as in *Goldsmith,* Gaffney took no action to contact the *Daily Record* to restrict further distribution upon learning that the publication lacked copyright notices (DR 56.1 CntrStmt., Dkt. No. 133 ¶ 61), and he has offered no evidence of asserting a breach-of-contract claim against the Daily Record for publishing the photographs without copyright notices.  The record is therefore wholly "devoid of evidence from which it can be concluded that [Gaffney] in fact protected [his] rights" in Photographs I04 and I06.[4] *Goldsmith, supra* at 6.

---

[4] Gaffney also disputes that the Copyright Office advised him that these Photographs would be in the public domain and ineligible for registration, absent evidence that the works were first published with proper copyright notice. Plaintiff CntrStmt. ¶ 31. He suggests that it was simply too late to make an original term copyright registration but that he may have been able to register a renewal term. *Id.* This is correct, but *only if* he responded to the Copyright Office Examiner with evidence of publication with proper copyright notice. Oct. 15, 2021 Rutherford Dec., Dkt. No. 114, ¶ 5, Ex. D  ("One important and possibly fatal requirement, however, is that you must provide us with copies of the works as they were first published in 1977, so that we can confirm that the works bore acceptable copyright notices."). There was no such evidence, and consequently, no such response to the Examiner.

3

Moreover, Gaffney is estopped from invoking MAE's prior agreement not to contest Gaffney's rights in the Photographs, because that agreement was made in reliance on Gaffney's express warranty that he owned copyright in the Photographs. DR 56.1 CntrStmt. ¶ 24; *Kargo, Inc. v. Pegaso PCS, S.A. de C.V.,* 2008 WL 4579758, at *13 (S.D.N.Y. Oct. 14, 2008).

### III. THE MUHAMMAD ALI ENTITIES HAVE ESTABLISHED BY UNDISPUTED EVIDENCE THAT GAFFNEY KNEW PHOTOGRAPHS I01, I02, I05 AND I08 HAD BEEN PUBLISHED WHEN HE FALSELY CERTIFIED THAT THEY WERE PREVIOUSLY UNPUBLISHED

Gaffney contends that Photographs I01, I02, I05 and I08 were not published prior to the effective date of the '300 Registration, and that Gaffney did not know of any such publication at the time. These contentions are not supported by the record or the law.

First, Gaffney posits that the distribution of these Photographs to Land of Legends did not constitute "publication," because the distribution license was void *ab initio* under New Jersey law of equitable fraud. However, the doctrine of equitable fraud requires, *inter alia,* proof of a material misrepresentation and detrimental reliance on that misrepresentation. *First Am. Title Ins. Co. v. Lawson*, 177 N.J. 125, 136-37 (2003). Gaffney has cited no evidence of any such misrepresentations or reliance thereon, asserting only that there was "bad will" and "fraud involved," and that Land of Legends' owner Bill Debrot "failed on the promotion, and the marketing" and was "unresponsive." Burke Decl. Ex. 13 (Gaffney Dep. Tr. at 123:18-124:2; 127:12-14). Even if one were to read into this testimony some sort of misrepresentation by Debrot about marketing efforts he would undertake, any such statements by Debrot to Gaffney would be inadmissible hearsay under FRE 801.[5] Further, Gaffney adduces no evidence of detrimental reliance on whatever these purported misrepresentations may have been.

---

[5] Notably, although Gaffney drafted the written agreement with Land of Legends himself, he failed to include any such obligations in the contract.

4

Gaffney also contends that his delivery of Photographs to Land of Legends for further distribution was not "publication" under the distribution prong of 17 U.S.C. §101's publication test. Citing *Schatt v. Curtis Mgmt. Grp., Inc.*, 764 F.Supp. 902, 908 (S.D.N.Y 1991), he argues that granting Land of Legends a license to publish his work would not constitute a "distribution" until Land of Legends exercised its license rights.  Land of Legends, however, did in fact exercise these rights by creating sales sheets that contained copies of Photographs I01, I02, I05 and I08. Oct. 15, 2021 Rutherford Decl., Dkt. No. 114, ¶ 7 Ex. F.

Moreover, *Schatt* involved a copyright claim brought under the 1909 Copyright Act, *see id.* at 908 n.9, and is inconsistent with modern case law under the 1976 Copyright Act. In *Archie MD, Inc. v. Elsevier, Inc.*, 261 F.Supp.3d 512 (S.D.N.Y. 2017), the court held that the distribution prong of the publication test was satisfied by the licensing and delivery of a work to a single entity with an expectation of further distribution:

> The Court…concludes that [plaintiff's] licensing and delivery of the Work to [defendant] pursuant to [an animation license agreement] satisfies the "distribution" prong… Here, [plaintiff] provided [defendant] with a copy of the Work along with a license… While [defendant] had not yet undertaken further distribution of the work at the time [plaintiff] sought [copyright] registration, the intitial transfer of a copy in anticipation of further distribution may nonetheless amount to publication…
>
> [Plaintiff] elected to exploit the work at the time it executed the [license], and it need not take any further steps to effect the Work's broader distribution.  It is therefore appropriate to find that publication occurred at that time.

*Id.* at 517-518. *See also McLaren v. Chico's FAS, Inc.*, 2010 WL 4615772, at *2 (S.D.N.Y. Nov. 9, 2010) ("By licensing the mannequin illustration to Pucci so that Pucci could produce and sell mannequins based on that drawing, McLaren 'published' the drawing within the meaning of the Copyright Act.)

Gaffney's delivery of slides to Land of Legends for further distribution was also a publication under 17 U.S.C. § 101's second "offer to distribute copies" prong.  Gaffney cites no

case to the contrary. Instead, he relies heavily on *Schatt*, which did not analyze the statutory scheme at issue in this case.[6] Further, the U.S. Copyright Office Compendium's directive that "publication occurs when *one* or more copies or phonorecords are offered to wholesalers, retailers, broadcasters, aggregators or similar intermediaries for the purpose of distributing the work to the public," Compendium III § 1906.1 (emphasis added), implies that an offer of a single copy can constitute publication.  In addition, copies of the Photographs were "in existence" as required by Compendium III § 1906.3, both in the form of slides copied from negatives and delivered to Land of Legends, and as images on the sales sheets created for distribution to the public. Burke Exh. 13, (Gaffney Dep. Tr. 129:8-10); Oct. 15, 2021 Rutherford Decl. ¶ 7 Ex. F.

Gaffney also contends that there is a genuine issue of fact as to his knowledge of publication at the time of registration.  Regardless of whether referral under 17 U.S.C. § 411 requires only knowledge of the facts underlying publication, or knowledge that those facts amount to legal publication, *see Unicolors, Inc. v. H&M Hennes & Maurtiz, L.P.*, 141 S.Ct. 2698 (2021) (granting certiorari on whether "17 U.S.C. § 411 requires referral to the Copyright Office where there is no indicia of fraud or material error as to the work at issue in the subject copyright registration"), the record here supports referral to the Copyright Office.  Gaffney understood that providing Photographs to others for further distribution constitutes publication. Defendants' Rule 56.1 Stmt. ¶ 58.  The unsubstantiated assertion in his brief that he did not have this knowledge at the time of registration simply has no support in the record.  Similarly, his contention that he had

---

[6] *Ortiz v. Nieto Enterprises, LLC*, 2014 WL 12569380 (D. N.M. Dec. 4, 2014), also cited by Gaffney, does not analyze the second "offer to distribute copies" prong at all, but instead serves only to undercut his argument that there was no publication under the first prong.  In *Ortiz*, the court stated that delivery of photographs alone would not constitute "publication" under the first prong, until there was a "demonstrated intent to transfer ownership in the work to Defendants." *Id.* at *3. The court concluded there *would* be publication when Plaintiff "distributed final versions of the Photographs . . .accompanied by his agreement that Defendants could use or redistribute the images pursuant to their agreed-upon purpose." *Id.*  That is precisely what the undisputed evidence shows occurred here: Gaffney delivered slides of final versions of Photographs I01, I02, I05 and I08 to Land of Legends, accompanied by a signed contract authorizing them to make further prints for sales to others. Defendant's Rule 56.1 Stmt. ¶¶ 44-47.

"forgotten" about the Land of Legends agreement at some point before the commencement of this litigation in 2018 does not establish lack of knowledge in 2008, at the time he certified the '300 Registration. In light of his acknowledgments that he 1) personally drafted and signed a license agreement with Land of Legends in 1997 (Defendants' Rule 56.1 Stmt. ¶¶ 47-48), and 2) maintained the agreement and a sales sheet in his files (Burke Exh. 13 (Gaffney Dep. Tr. 126:3-5)), there can be no genuine issue of fact that he knew of the license and delivery for purposes of further distribution or that he had any good faith misunderstanding of the law in 2008. The record therefore establishes that Gaffney actually knew (or was willfully blind to the fact that) Photographs I01, I02, I05 and I08 had been published when he falsely certified they were unpublished.

### IV. THE '740 REGISTRATION IS NOT VALID REGISTRATION OF PREVIOUSLY PUBLISHED PHOTOGRAPHS AS A MATTER OF LAW

Gaffney does not dispute that his book *The Champ My Year With Muhammad Ali* (the "Book") fails to meet 37 C.F.R. §202.3(b)(4)'s narrow "unit of publication" exception to the general copyright registration rule that "an applicant should prepare a separate application, filing fee, and deposit for each work that is submitted for registration." Compendium of U.S. Copyright Office Practices (3d ed. 2021) ("Copyright Compendium III") § 1103.1(A). Rather, he argues that the '740 Registration is a proper registration of a "literary monograph." This is inapposite. Previously published photographs are not properly registered as part of a single "literary monograph."

Consistent with § 202.3(b)(4)'s limitation on the registration of multiple published works in a single application, the Copyright Compendium's guidance on "literary monographs," cited favorably by Gaffney, advises:

> A literary monograph may be considered a collective work if it contains 'a number of contributions, constituting separate and independent works in themselves, [that] are assembled into a collective whole.' 17 U.S.C. § 101 (definition of "collective work")…
>
> As with any other type of collective work, *an applicant may register a monograph together with the separate and independent works contained therein,* (i) if the claimant owns the copyright in the monograph and the contributions, and (ii) *if those contributions have not been previously published or registered.*

Copyright Compendium III § 712.1(A). Therefore, the separate and independent works contained within the Book are entitled to copyright registration as part of a "literary monograph" only if they have not been previously published or registered.

Gaffney disputes that Photographs I01-I22 and I24-I26 were all published prior to the publication of the Book, stating in his brief that "a few of the Photographs may have been published prior to the Book publication (I12, I18, I21, I22, I24 and I26)" and that "Defendant has presented no proof that any of them were actually sold prior to the Book's publication." Plaintiff Brief, p. 18.  In his Counterstatement of Facts, however, he concedes that Photographs I01, I02, I07, I09, I12, I17, I18, I21, I22, I24, I25, I26 were in fact published prior to the Book via sales at exhibitions. Plaintiff CntrStmt. ¶¶ 50-54. In addition, until the evening before Summary Judgment motions were filed,[7] Gaffney also maintained that I04 and I06 were published in 1977.[8] *See* Oct. 15, 2021 Rutherford Decl. Ex. A Exh 11 (MG-MAEABG000768 rows 5 and 7).

---

[7] At 6:59pm on October 14, 2021, counsel for Gaffney sent Defendants' counsel an email in which he claimed to "attach[] and serve[] an updated/corrected copy" of Gaffney's Table of Infringed Photographs, which was previously produced in response to Interrogatories on June 19, 2020.  Nov. 19, 2021 Rutherford Decl .¶3 Ex. B. When service was declined by Defendants on the ground that fact discovery had closed on March 1, 2021, Gaffney's counsel responded that Defendants' forwarding of *Gaffney's own table to his counsel* earlier that day to ensure there was no request for redaction before its filing as exhibit "alerted us that it was incorrect." *Id.* Such tactics undermine "[t]he basic purpose of the federal rules, particularly those concerning discovery and disclosure, [which is] to eliminate trial by ambush[.]" *Ginns v. Towle*, 361 F.2d 798, 801 (2d Cir. 1966). The Muhammad Ali Entities therefore object to any reference by Gaffney to this "updated" Table in his brief or Counterstatement of Facts (*see* ¶¶ 32. 90) on the ground that it was not produced in discovery and is not properly part of the record in this case.

[8] Gaffney now contends, contrary to his own interrogatory answer made under oath, that I04 and I06 were not published in 1977 because he did not authorize publication in the *Daily Record* without copyright notice. As discussed in Section II, *supra*, this argument is wholly unsupported by the evidence.

8

Moreover, Gaffney's license and delivery of the Photographs to MAE pursuant to the Agreement, not to mention MAE's subsequent further distribution of the Photographs constitutes publication. *See Archie MD, Inc.*, 261 F.Supp.3d at 517 and Section III, *supra*.[9]

Finally, Gaffney testified that he knew sales of photographs at exhibitions constitute publication, and that providing a photograph to others for further distribution would be a publication. Defendants' Rule 56.1 Stmt. ¶¶ 58-59.  There is no evidence in the record from which to conclude that this knowledge was only obtained in the course of litigation, or that Gaffney did not know of his own conduct in publishing these photographs at the time he certified and submitted the information to the Copyright Office on June 4, 2018.[10]

### V.  GAFFNEY HAS ADDUCED NO NON-SPECULATIVE EVIDENCE OF ACTUAL DAMAGES

In his opposition, Gaffney complains that the Muhammad Ali Entities have "focus[ed] too narrowly on the injury to the market value of the Photographs," suggesting that such a focus is "myopic" and "inaccurate." Plaintiff's Brief p. 20.  The Second Circuit has held, however, that the "primary measure" of actual damages is the "extent to which the market value of the copyrighted work at the time of infringement has been injured or destroyed by the infringement." *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1118 (2d Cir. 1986) (citing *Nimmer on Copyright* § 14.02 at 14-6).

It is not surprising that Gaffney attempts to deflect attention away from an examination of

---

[9] Gaffney's contention that there is no evidence that Gaffney had approved any of MAE's uses of the Photographs prior to the publication of the Book is specious. Under the terms of the Agreement, promotional and marketing use does not require Gaffney's approval.  Oct. 15, 2021 Rutherford Decl. ¶ 2 Ex. A Exh 11, §§ 1.1.1, 1.1.2, 1.2.1.
[10] Gaffney's reliance on *Eckes v. Card Prices Update*, 736 F.2d 859 (2d Cir. 1984) and its progeny citing to a fraud requirement is misplaced, as they were not decided based on 17 U.S.C. § 411(b).  Gaffney's reliance on *Palmer/kane LLC v. Gareth Stevens Publ'g*, 2016 WL 6238612 (S.D.N.Y. Oct. 24, 2016) is also misplaced.  In *Gareth Stevens*, which expressly declined to read a fraud requirement into § 411(b), the plaintiff had submitted a declaration explaining that her multiple conversations with the Copyright Office about her application gave her a good-faith basis for believing it was accurate. *Id.* at *3-4.  Gaffney has submitted no such evidence here.

injury to market value. There is simply no evidence in the record that the market value of the Photographs declined after the alleged infringement commenced, much less that any such decline was "the result of the [alleged] infringement," 17 U.S.C. § 504(b). Notably, Gaffney's damages expert Jeffrey Sedlik was not even asked to opine on the loss of any market value in the Photographs, and conceded that to his knowledge, Gaffney has not made any such assertion. Nov. 19, 2021 Rutherford Decl. ¶ 2 Ex. A (Sedlik Deposition Tr. pp. 190:22-193:3).

Given the complete absence of any evidence of declining market value or lost sales attributable to the alleged infringement, Gaffney relies entirely on Sedlik's attempted calculation of a hypothetical license fee for the allegedly infringed works. This calculation is deeply flawed, unduly speculative and unreliable, and is therefore insufficient to defeat summary judgment. *On Davis v. Gap. Inc.*, 246 F.3d 152, 162, 165-72 (2d Cir. 2001) (damages based on hypothetical license must not be "unduly speculative").

Sedlik calculates a hypothetical license fee based in large part on a hypothetical license for use on retail products and packaging of prints, posters, and apparel (Burke Exh. 14, p. 18), uses not alleged in either Action. 1:18-cv-8770 Second Amended Complaint, Dkt. 58, ¶¶ 35-78; 1:20-cv-07113 Second Action Complaint, Dkt. No. 1, ¶¶ 35-71. Similarly, Sedlik's damages calculation includes four photographs that Gaffney did not allege were infringed in either Action. *See* Defendant's Rule 56.1 Stmt. ¶¶ 4, 6, 23; Burke Ex. 14 Exh F (including Ali-001, Ali-004, Ali-005 and Ali-007 as "I29-I32"). His entire calculation therefore rests on a faulty foundation of putative infringements that were never properly pled and are not properly before the court on summary judgement. *Cooney v. Consol. Edison*, 220 F. Supp. 2d 241, 253 (S.D.N.Y. 2002), *aff'd,* 63 F. App'x 579 (2d Cir. 2003) ("A party may not raise new claims for the first time in response to a motion for summary judgment.").

Further compounding his errors, Sedlik neglected to use the Agreement's zero-fee rate for marketing and promotional use as a benchmark in calculating his hypothetical license fee. Burke Exh. 14, p. 18; Nov. 19, 2021 Rutherford Decl. ¶ 2 Ex. A (Sedlik Tr. 228:8-16). *See Baker v. Urban Outfitter, Inc.*, 254 F.Supp.2d 346, 359 (S.D.N.Y. 2003) (prior license agreement between parties is appropriate benchmark). Gaffney contends this agreement is not relevant, because he anticipated earning additional revenue through royalties from the sale of products being promoted and marketed. This argument entirely ignores that Gaffney was in fact paid all royalties owed on products bearing the Photographs sold during and after the Agreement's expiration. *See* Plaintiff 56.1 CntrStmt ¶ 98 (not disputing amount of royalties paid; only whether "the uses on which Defendants paid royalties were authorized uses"). He got exactly what he bargained for, and the fact that he may have been unhappy with the Agreement does not nullify its relevance as a benchmark. In fact, his post-expiration failure to extract a higher royalty rate for merchandise and advertising merely establishes that there was no "willing buyer" for such a rate.[11] *See On Davis*, 246 F.3d at 167 ("actual damages may include in appropriate cases the reasonable license fee on which a willing buyer and a willing seller would have agreed").

In addition, in his expert report, Sedlik claims to have generated his hypothetical license fees "by obtaining reference fee quotes reasonably matching the alleged unauthorized uses to the greatest extent possible." Burke Exh. 14, p. 18. In other words, Sedlik crafted his hypothetical license fee for Gaffney's Photographs by seeking license fee quotes from third parties for

---

[11] Gaffney also makes oblique reference to the Muhammad Ali Entities' revenue from agreements with various licensees as potential grounding for Sedlik's inflated hypothetical fee, and suggests that licensees' use of Photographs on social media resulted in direct income to Defendants. Plaintiff's Brief at p. 23; Plaintiff CntrStmt. ¶ 106. These agreements, however, do not license rights in individual images. Rather, each of these agreements confer licensees with broad rights to utilize a host of intellectual property, including rights to use Muhammad Ali's image and likeness, trademarks, audio and video recordings, and thousands of other photographs of Muhammad Ali in which Gaffney has no rights. *See* Burke Decl. Exs. 17-19. They therefore provide no touchstone for an appropriate license fee here, and in fact Sedlik does not rely upon them in his expert report. *See* Burke Decl. Ex. 14.

photographs of Ali taken by other people, at other times, in different contexts. In fact, in his deposition, he conceded that for the majority of the Photographs, "there aren't comparable images available for licensing," Nov. 19, 2021 Rutherford Decl. ¶ 2 Ex. A (Sedlik Tr 206:17-18), adding yet another layer of speculation to his calculations.

Consequently, Sedlik's flawed license fee calculation fails to provide any non-speculative evidentiary basis for an award of actual damages, and any claims for actual damages should be denied as a matter of law.

### VI. GAFFNEY HAS NO CLAIM TO THE MUHAMMAD ALI ENTITES' PROFITS

Gaffney opposes summary judgment barring an award of the Muhammad Ali Entities' direct and indirect profits allegedly attributable to infringement. With respect to direct profits, Gaffney did not allege in his pleadings or in his Interrogatory responses any non-social media use of the Photographs, including the sale of any infringing products by Defendants. DR 56.1 CntrStmt., ¶ 55. He cannot now raise these allegations in opposition to a motion for summary judgment. *Enzo Biochem, Inc. v. Amersham PLC*, 981 F.Supp.2d 217, 223 (S.D.N.Y. 2013) ("It is well settled that a party may not amend its pleadings in its briefing papers."). Gaffney also concedes that the Muhammad Ali Entities' social media sites "did not sell products or services directly through the social media platforms," contending only that such sites provide a basis upon which to award indirect profits. *See* Plaintiff 56.1 CntrStmt. ¶ 105; Plaintiff Brief p. 23.

With respect to indirect profits, Gaffney utterly fails to establish the requisite nonspeculative causal link between the alleged infringement on social media sites and any alleged indirect profits. *See Bayoh v. Afropunck LLC*, 2020 WL 6269300, *3 (S.D.N.Y. Oct. 26, 2020). Gaffney incorrectly asserts that the Muhammad Ali Entities' verified social media sites "contained links to internet retailers offering products for sale." Plaintiff Brief, p.23. In fact,

these sites contained links to the official Muhammad Ali site, www.muhammadali.com, from which it may have been possible to navigate to yet another site operated by a third party and selling merchandise. Burke Decl. Ex. 20 (Kronengold Dep. Tr. at 141:16-142:4). This attenuated relationship to any actual product offered for sale stands in stark contrast to the connections at issue in the cases cited by Gaffney. *See Craig v. UMG Recordings, Inc.,* 380 F.Supp.3d 324, 335 (S.D.N.Y. 2019) (finding connection between revenues from sales of albums and photographs contained on the albums' covers); *Laspata DeCaro Studio Corp. v. Rimowa GmbH,* 2018 WL 3059650, *7 (S.D.N.Y. June 20, 2018) (permitting indirect profit evidence where allegedly infringing images in lookbook were *only* promotional images used in all of defendant's worldwide advertising and defendant's press release specifically attributed sales increase to lookbook); *Fournier v. McCann Erickson,* 242 F.Supp.2d 318, 327 (S.D.N.Y. 2003) (use of allegedly infringing photograph in print advertisement for specific Windows 2000 products); *Silberman v. Innovation Luggage, Inc.*, 2003 WL 1787123, at *10 (S.D.N.Y. Apr. 3, 2003) (use of infringing photograph in retail store where products were sold).[12]

Having failed to present the requisite evidence of a nonspeculative causal link between alleged infringement on social media and revenue, Gaffney falls back on a promise that he "*can and will* introduce evidence showing there is [such] a nexus." Plaintiff Brief p. 25 (emphasis added). But to defeat summary judgment, he must have already done that. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). He has not. Summary judgment barring Gaffney's claim to direct or indirect profits should therefore be granted.

---

[12] *Structured Asset Sales, LLC v. Sheeran*, 433 F.Supp.3d 608, 609 (S.D.N.Y. 2020) and *Graham v. Prince,* 265 F.Supp.3d 366 (S.D.N.Y. 2017) are also inapposite. *Structured Assets* involved a motion to compel and found only that a plaintiff had pled facts sufficient to entitle it to discovery of financial information. 433 F.Supp.3d at 609. *Graham* concluded only that facts sufficient to survive a motion to dismiss had been pled. 265 F.Supp.3d at 388.

## **CONCLUSION**

For the foregoing reasons, Defendants Muhammad Ali Enterprises LLC and Authentic Brands Group LLC respectfully request that the Court grant their Motion for Partial Summary Judgment.

Dated: November 19, 2021                                   Respectfully submitted,

                                                                                    /s/ Jessica S. Rutherford
                                                                                    Jessica S. Rutherford, Esq.
                                                                                    FERDINAND IP, LLC
                                                                                    450 Seventh Avenue, Suite 1300
                                                                                    New York, NY 10123
                                                                                    Phone: (212) 220-0523
                                                                                    Fax: (203) 549-2339
                                                                                    jrutherford@fiplawgroup.com

                                                                                    *Counsel for Defendants,*
                                                                                    *Muhammad Ali Enterprises LLC and*
                                                                                    *Authentic Brands Group LL*

14

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 19, 2021, a true and correct copy of the foregoing REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANTS MUHAMMAD ALI ENTERPRISES LLC AND AUTHENTIC BRANDS GROUP LLC was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                                                                              <u>/s/ Jessica S. Rutherford</u>
                                                                                                              Jessica S. Rutherford