UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICHAEL GAFFNEY,                                       :        MEMORANDUM DECISION
                                                       :             AND ORDER
                              Plaintiff,               :
                                                       :        20 Civ. 7113 (GBD)(OTW)
              -against-                                :        18 Civ. 8770 (GBD)(OTW)
                                                       :
MUHAMMAD ALI ENTERPRISES LLC;                          :
AUTHENTIC BRANDS GROUP LLC; ROOTS OF,                  :
INC., d/b/a ROOTS OF FIGHT; and DOES 1-10,             :
                                                       :
                              Defendants.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

Plaintiff Michael Gaffney brings these two actions against Defendants Muhammad Ali

Enterprises LLC ("MAE"), Authentic Brands Group LLC ("Authentic"), Roots Of, Inc. ("Roots"),

and Does 1-10 (collectively "Defendants") alleging violations of the Copyright Act of 1976

pursuant to 17 U.S.C. § 501, and the Digital Millennium Copyright Act ("DMCA") pursuant to

17 U.S.C. § 1202.[1] (See Second Amended Complaint ("SAC"), ECF No. 58.) Specifically,

Gaffney claims Defendants copied photographs (referred to as Photographs 101-132) that he took

of the boxer Muhammad Ali without his authorization in violation of his rights under 17 U.S.C. §

106 and 17 U.S.C. § 1202.[2] (See Id.) Gaffney is demanding statutory damages, actual damages, and

---

[1] Michael Gaffney v. Muhammad Ali Enterprises LLC, et al., No. 18-cv-8770 (hereinafter the "First Action");
Michael Gaffney v. Muhammad Ali Enterprises LLC, et al., No. 120-cv-7113 (hereinafter "Second Action"). The
actions are consolidated. (Order, ECF No. 109.)

[2] Plaintiff's complaints describe infringement of at least 28 photographs in total. However, the complaint in the
First Action states that "there are many more, but the information required to identify all of Defendants'
unauthorized uses of the Photographs are solely in Defendants' possession and control." (Second Amended
Complaint ("SAC"), Case No. 18-cv-8770, ECF No. 58, ¶ 39.) In a letter dated March 3, 2022, Plaintiff's counsel
listed 32 photos that came into question (Photographs 101-132). (Letter, Case No. 18-cv-8770, ECF No. 151.)
Defendant takes issue with the addition of these four additional photographs. But the complaint directly accounts for
the infringement of additional Photographs discovered during the course of the litigation. Thus, Plaintiff properly
pleaded infringement and DMCA allegations that went beyond the specific photographs Plaintiff knew about at the
time of the complaint. Adding additional photographs produced during discovery is not akin to adding claims at
summary judgment, it is similar to merely adding facts to support the already pleaded claims in the complaint.

Attorneys' Fees. The parties now cross move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 (a).

Defendants' motion for partial summary judgment is DENIED to the extent that it seeks dismissal of Claim I for direct copyright infringement in the First Action as to a subset of Photographs[3] on grounds that Gaffney does not have a valid copyright Registration, and because there is a judgment barring Gaffney from actual damages.[4] Defendants' motion is GRANTED to the extent that it seeks dismissal of Claim I as to nine of the Photographs in the First Action and one Photograph in the Second Action;[5] Claims II and III in both Actions for vicarious or contributory infringement as to any infringement committed by fan sites of Muhammad Ali,[6] Claim IV in both Actions for direct DMCA violations;[7] Claim V in the Second Action for vicarious DMCA violations;[8] and partial denial of statutory damages.[9] Gaffney's motion for summary

---

[3] Photographs 101, 104-105, 107-112, 114-117, 122, 125, and 127.

[4] It is extremely speculative to bar Plaintiffs from obtaining actual damages prior to a determination of whether and how Defendant is liable. In addition, Plaintiff's expert reports place actual damages in genuine dispute. Therefore, summary judgment is improper.

[5] Defendants seeks summary judgment as to Photographs 102, 106, 113, 118-121, 124, and 128. Gaffney voluntarily agrees to dismiss any claims pertaining to these photographs. (*See* Pls. Ltr., ECF No. 151.)

[6] At oral argument, Gaffney conceded that there is no evidence of infringement related to any uses of the Photographs by fan-sites. (Tr., ECF No. 152, at 29:24-5 and 30:1-9.) Thus, this part of Defendant's motion is granted.

[7] Gaffney failed to dispute that there is no evidentiary basis of liability for direct violations of the DMCA. Therefore, he has abandoned any challenge to this portion of Defendant's summary judgment motion. *See Mori Lee, LLC v. Sears Holdings Corp.*, 2015 WL 5451221, at *2 (S.D.N.Y. Sept. 15, 2015) (holding summary judgment is proper on all claims that nonmoving party failed to address in opposition papers.).

[8] Gaffney failed to dispute that there is no evidentiary basis for Claim V in the Second Action. Therefore, Claim V is dismissed. *See Mori Lee, LLC*, 2015 WL 5451221 at *2.

[9] Pursuant to 17 U.S.C. § 412, "a plaintiff may not recover statutory damages or attorney's fees for any infringement 'commenced' before the effective date of a copyright's registration." *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158 (2d Cir. 2007). Defendants demonstrate, and Gaffney does not rebut, that there were no infringing uses of Photographs 101-102, 104-106, 108, 110-I22 and I24-I26 before June 12, 2018, the effective date of the relevant Registration. Therefore, Plaintiff is precluded from seeking statutory damages and attorneys' fees as to these photographs. *See Solid Oak Sketches, LLC v. 2K Games*, Inc., 2016 WL 4126543, at *3 (S.D.N.Y. Aug. 2, 2016).

judgment is DENIED to the extent it seeks judgment as to Claim I in both Actions that Defendants

willfully committed direct copyright infringement as to a subset of Photographs.  Gaffney's motion

is GRANTED to the extent that it seeks partial statutory damages.[10]

## I.   RELEVANT FACTUAL BACKGROUND

Authentic is a brand development and licensing company that acquires, manages, and

builds long-term value in prominent consumer brands.  (*See* Pl.'s Ctr Statement of Facts, ECF No.

140, at ¶11.)[11]  MAE is a subsidiary of Authentic that owns the intellectual property rights and

rights of publicity in the name, likeness, and other indicia of the personal identity of Muhammad

Ali.  (*Id*. at ¶¶ 10, 12.)  Gaffney is a is a professional photographer.  (*Id*. at ¶ 13.)

From 1977 to 1978, the celebrated boxer Muhammad Ali hired Gaffney to take

photographs of him as he traveled to box and make public appearances.  (*Id.*)  During this time,

Gaffney took Photographs 101-132 at issue in this case.  Gaffney holds copyright registrations for

all 32 Photographs.  (*See* Defs.' Ctr Statement of Fact, ECF No. 133, at ¶¶ 42-44.)  The registrations

effectively fall into three different groups.  Gaffney obtained copyright registration VAu 964-300

(the '300 Registration) on February 22, 2008, for a collection of 15 photographs purportedly

unpublished prior to registration, 11 of which are at issue in this action (Photographs 101-103,

105, 107-109, 129-132).  (ECF No. 133 ¶ 42; ECF No. 151.)  Gaffney obtained copyright

registration TX 8-550-740 (the '740 Registration) on June 12, 2018, for his book, *The Champ: My

Year with Muhammad Ali*.  (ECF No. 140 ¶ 43.)  Gaffney first published the book on June 12,

---

[10] Plaintiff alleges that the infringing uses of Photographs 101, 103, 105, 107-109, 129-132 took place after the effective date of the relevant Copyright Registration.  Thus, if Defendants are found to have improperly copied these photographs, then statutory damages are available.

[11] All citations refer to the First Action, unless stated otherwise.  The facts come from the parties' Rule 56.1 statements and counterstatements, with references to exhibits when necessary.

2012. The '740 Registration covers Photographs 101-22 and 124-126 that were purportedly first published with the book. (*See* ECF No. 133 at ¶ 23.) Gaffney obtained three different registrations on April 30, 2020, for the Photographs at issue in the Second Action: VA 2-201-463 for Photograph 123; VA 2-201-464 for Photograph 127; and VA 2-201-462 for Photograph 128. (ECF No. 133 at ¶ 44.). However, prior to obtaining any of these three sets of Registrations, Gaffney had provided copies of Photographs 104 and 106 to the Daily Record newspaper around November 1977; entered into a licensing agreement in 1997 with a third party, League of Legends, to sell copies of a subset of the Photographs; and displayed for sale copies of certain Photographs at exhibitions from 2009 to 2012.

In February 2011, Gaffney entered into an agreement with the Defendants (the "Agreement") to license Photographs 101-132. (*See* ECF No. 133 ¶13; The Agreement, ECF No. 130-1, at 150-157.) Paragraph 1.1 of the agreement provided "MAE an exclusive license" for three different uses listed as subclauses 1.1.1 to 1.1.3. The three uses were the following: (1) the manufacture, sale, marketing, and distribution of products associated with Muhammad Ali and/or advertisements which feature an endorsement of a good or service by Ali; (2) for promotional and marketing purposes, including on social media; and (3) for editorial purposes. (*Id.* at 150-151.) Use (1) required Gaffney's prior approval. (*Id.* at 151.) MAE also had to pay royalties for the sale of licensed products bearing the Photographs, the licensing of the Photographs for use exclusively in advertising campaigns, and licensing of the Photographs for editorial purposes. (The Agreement at 152.) However, MAE had a license to freely use Photographs for promotional and marketing purposes. (*Id.*) The Agreement expired in 2015. Upon expiration, Defendants maintained the right "to exercise the license rights granted to it in Paragraph 1.1 with respect to all licenses and/or

agreements made prior to the date of termination," granted Defendants paid the appropriate royalties to Gaffney. (The Agreement at 155.)

It is uncontested that after expiration of the Agreement, Defendants continued to use the Photographs on their social media accounts for promotional and marketing purposes. (*See* ECF No. 133 at ¶ 36.) Defendants also allowed sublicensees, such as Tag Heuer and Bombas, to continue copying the Photographs after the expiration of the Agreement.[12] (*See* ECF No. 140 at ¶ 71-72.) It is not clear whether these sublicenses existed prior to the Agreement expiring. Gaffney alleges that the infringement started with unauthorized non-social media uses on February 1, 2015, when Defendant distributed a copy of a Photograph to one of their customers. (ECF No. 133 at ¶ 57.) On March 4, 2015, Gaffney sent a letter to Authentic seeking to forbid any further use of the Photographs. Defendants continued to use the Photographs until April 30, 2019, when Defendants last posted Photograph 109 on their social media sites. (ECF No. 133 at ¶ 53.) Notwithstanding these extended uses, Defendants paid Gaffney royalties in accordance with the provisions of the Agreement up until 2018. (ECF No. 140 at ¶ 103.)

---

[12] Defendants object to any claims made about non-social media uses of Photographs 129-132 on grounds that Gaffney did not put these photographs at issue in his operative complaint nor during discovery and the chart listing these uses are hearsay. Defendants' contentions are uncorroborated both on the facts and the law. First, the complaint clearly alleges unauthorized non-social media uses of certain Photographs. (*See* Second Amended Complaint, ECF No. 58, at ¶¶ 53-54, 82-83) ("MAE and/or ABG also purported to license the right to Copy Photographs to Licensees for use after the Term, even though they had no right to do so.") The failure of Defendants to provide arguments on the merits as to unauthorized licenses was at their own peril. Second, failure to disclose facts during discovery does not necessarily preclude a ruling based on those facts, especially here when the non-disclosure is harmless. *See Donohue v. New York*, 347 F. Supp. 3d 110, 145 (N.D.N.Y. 2018) (stating that information not disclosed in discovery is permitted, if the failure to disclose was substantially justified or harmless). Defendants were on notice that Gaffney alleged Defendants entered unauthorized sublicenses therefore the evidence is harmless. Lastly, to determine whether evidence is admissible on summary judgment depends on whether the "fact cannot be presented in [any] form that would be admissible in evidence" at trial. Fed. R. Civ. P. 56(c)(2); *see also, Selvam v. Experian Info. Sols., Inc.*, 651 F. App'x 29, 31 (2d Cir. 2016). Here, the chart itself may be hearsay, but the evidence of infringement may be introduced as business records or some hearsay exception. Therefore, the charts may be properly considered. *See also, Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) ("a district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence") (quotations omitted).

In September 2018, Plaintiff filed the First Action against Defendants alleging copyright infringement and DMCA violations stemming from Defendants unauthorized copying of Photographs 101-132. (*See* Compl., ECF No. 1; *see* ECF No. 151.) The First Action originally included the subset of three Photographs now subject of the Second Action, Photographs123, 127, and 128. Plaintiff, however, had not previously obtained copyright registration for these Photographs. On September 1, 2020, having obtained copyright registrations and amended his complaint in the First Action to remove the three Photographs, Plaintiff then filed the Second Action once again alleging that Defendants infringed his copyright in the three Photographs and committed DMCA violations regarding the same. (*See* ECF No. 1, Second Action.)

Defendants now seek partial summary judgment ("Defs.' Motion") for the dismissal of Claims I-III in the First Action to the extent that there was no infringement of 25 Photographs, dismissal of Claims IV in both Actions for there being no direct DCMA violations, dismissal of Claim V in the Second Action for there being no vicarious DMCA violation, and a finding that Plaintiff cannot obtain statutory damages or Attorneys' Fees for the alleged infringement of 12 photos at issue in the First Action. (Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 112.) Gaffney also seeks partial summary judgment ("Pl.'s Motion") to the extent that Defendants willingly infringed (Claim I in both Actions) as to twenty Photographs in the First Action and two Photographs in the Second Action. He also seeks a finding that he can obtain statutory damages for the infringement of ten Photographs at issue in the First Action. [13] (Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 125.)

---

[13] Given Gaffney's March 3, 2022 letter, any summary judgment claims regarding Photographs 102, 106, 113, 118-121, 124, and 128 are now moot. (ECF No. 151.)

## II.   LEGAL STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when "it 'might affect the outcome of the suit under the governing law.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson*, 411 U.S. at 248).

The burden is on the moving party to demonstrate that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). To defeat a motion for summary judgment, the opposing party must raise an actual genuine issue of material fact. This requires "more than simply show that there is some metaphysical doubt as to the material facts." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). In addition, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). While "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013), the trial court must determine if a fact can be presented in any form that would be admissible in evidence at trial. *See Selvam*, 651 F. App'x 29 at 31 (2d Cir. 2016).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *See Niagara*, 315 F.3d at 175. However, "a court must not weigh the evidence, or assess

the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (internal citations omitted).

## III.   THE '300 and '740 REGISTRATIONS ARE VALID.

The primary contention between the parties at summary judgment is whether Registrations '300 and '740 are invalid. The Copyright Act of 1976 provides the author of an original work "the exclusive right to…reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17 U.S.C. § 106). To successfully bring an infringement claim a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Arista Records*, 604 F.3d at 117 (quoting *Feist Publ'n, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991)) (internal quotation marks omitted). The statute in fact requires a Plaintiff to have "a preregistration or registration of the copyright claim" to bring a civil action in federal court. 17 U.S.C. § 411.

A certificate of registration is invalid if the owner included an inaccuracy "with knowledge" and the inaccuracy "would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). This is a conjunctive test, requiring both (1) an inaccuracy and (2) the Plaintiff to know about the inaccuracy at the time of the registration. *See Palmer/Kane LLC v. Gareth Stevens Publ'g*, 2017 WL 3973957, at *14 (S.D.N.Y. Sept. 7, 2017) (quotations omitted). The Supreme Court recently held that "[l]ack of knowledge of either *fact or law* can excuse an inaccuracy in a copyright registration." *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941, 945 (2022). This requires that the owner of the registration have actual knowledge about the specific inaccuracy. *See Id.*, 142 S. Ct. at 948.

Defendants argue that the Record supports finding Gaffney prematurely published Photographs 101-122 and 124-126 in direct contravention of the information included in his '300 and '740 copyright Registrations.[14] (ECF No. 112 at 8-17.) Plaintiff argues that none of the actions Defendants take issue with amounted to legal publication as defined by the relevant Copyright laws.[15] There is no need, however, to determine whether Gaffney legally published any Photographs prior to obtaining the relevant Registrations.[16] This is because Gaffney rightfully asserts that he lacked the requisite knowledge of any purported inaccuracies.

## A. The '300 Registration

The 300' Registration purports to register previously unpublished Photographs, including Photographs 101-103, 105, 107-109, and 129-132 (ECF No. 140 ¶ 23; ECF No. 151.) *See* 37 C.F.R. 202.2 (c)(4)(1) ("[A] group of unpublished works may be registered in Class TX, PA, VA, or SR with one application...if...[a]ll the works in the group [are] unpublished."). Defendants contend that in 1997 Gaffney published Photographs 101, 102, 105 and 108 when he entered into

[14] The parties make arguments related to Defendants waiving their right to challenge the validity of Gaffney's copyrights in the Agreement. (*See* ECF No. 125 at 18.) That waiver is not controlling. In interpreting the waiver, it restricts Defendants ability to challenge Gaffney's rights in the Photographs as it relates to the Agreement. Defendants have not challenged that Gaffney should not have received royalty payments because he has no rights in the Photographs. To the contrary, they argue they paid royalty payments as required. Defendants simply contest whether Gaffney can bring an infringement claim in federal court.

[15] Under the Copyright Act, "publication" occurs when there is a "distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership" or "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." 17 U.S.C. § 101. The Copyright Act of 1976 does not provide copyright protections for any works that entered the public domain prior to January 1, 1978. See Brown v. Tabb, 714 F.2d 1088, 1089, 220 U.S.P.Q. 21 (11th Cir. 1983); Goldsmith v. Max, No. 79 CIV. 6926, 1981 WL 1428, at *3 (S.D.N.Y. Mar. 31, 1981). Instead, the Copyright Act of 1909 would apply. *See Goldsmith*, 1981 WL 1428 at *4. Under the Copyright Act of 1909, a piece of work entered the public domain "when copies are placed on sale, sold, or publicly distributed by the proprietor of the copyright or under her authority...without the requisite notice." *Id.*

[16] Two instances are clearly publication. It is incontrovertible Gaffney displayed and published by sales to the public the following Photographs at exhibitions held between February 2009 to January 2012: Photographs 101, 107, 109, 112, 118, 117, 121, 122, 124, 125 126. (*See* ECF 140 at ¶¶ 50-54.) It is also indisputable that the Agreement providing Defendants a license to distribute Photographs and the subsequent delivery of the Photographs amounted to publication. *See Archie MD, Inc. v. Elsevier, Inc.*, 261 F.Supp.3d 512, 517 (S.D.N.Y. 2017) ("The Court, however, concludes that Archie's licensing and delivery of the Work to Elsevier pursuant to the ALA satisfies the 'distribution' prong.").

an agreement with a third party, the League of Legends, authorizing them to copy and sell the Photographs. This supposedly constituted publication and was not accurately reported on Gaffney's '300 Registration. However, Gaffney asserts that he believed the licensing agreement with the League of Legends was fraudulent and therefore any action made in connection to the agreement never amounted to a legal publication.

*Unicolors* does not require that "courts… automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law." *See Unicolors*, 142 S. Ct. at 948. Courts must look at the Record to evaluate whether an owner of a copyright registrations lacks the requisite knowledge. *Id.* ("[c]ircumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters, may also lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information."). On the Record, Gaffney not only avers he voided his agreement with the League of Legends, but he states that he took necessary recourse to rescind any authorization to publish the Photographs. (*See* Dec. of Jessica Rutherford, Ex. A, ECF No. 114-1 at 34-35.) He states that he promptly retrieved the slides of Photographs from the League of Legends and thought the agreement "didn't amount to anything." (*See Id.*) Plainly, Gaffney sufficiently avers that he believed the Photographs were never legally published. Defendants fail to rebut Gaffney's lack of actual knowledge.[17] This failure is critical under *Unicolors* to finding an otherwise valid registration to be invalid. Therefore, the '300 Registration is valid.

---

[17] Defendants place emphasis on the fact that Gaffney allegedly drafted and signed the license agreement with Lands of Legends. They also place emphasis on Gaffney's general knowledge about what publication means. However, this fact does not dispute Gaffney's position that he rescinded the contract, which is what his knowledge was based upon.

**B. The '740 Registration**

The '740 Registration is for Gaffney's book, *The Champ: My Year with Muhammad Ali*, which was first published on July 20, 2012. (ECF No. 140 ¶ 40.) The '740 Registration covers Photographs 101-22 and 124-126 that were purportedly first published with the book. (*See* ECF No. 133 at ¶ 23.) Defendants assert that this is inaccurate, because Gaffney published Photograph 104 in 1977 when he provided it to the *Daily Record* newspaper for their November 23, 1977 newspaper edition; Photographs 101, 102, 107, 109, 112, 117-118, 121-122, and 124-126 when he displayed and sold them at exhibitions; and Photographs 101-122 and 124-126 when he entered into the Agreement with Defendants.

Yet, Gaffney clearly asserts that he was ignorant of any knowledge that his actions amounted to legal publication. *Unicolors* makes this ignorance excusable. Defendants assert that because Gaffney testified to what it means to publish a piece of work, Gaffney must have known at the time of registration the facts precluding the ostensible inaccuracies. Gaffney opposes that he had any knowledge at the time of the Registration and purports that he learned about legal publication during this litigation. Accordingly, he argues that his current knowledge cannot be used to support a finding that the Registration is invalid. Gaffney's deposition clearly supports his position. He states that his agreement with the *Daily Paper* was fraudulent, and so he thought there could be no valid publication. (ECF No. 114-1 at 10.) When discussing the display for sale of Photographs at exhibitions Gaffney stated, "If it wasn't sold in an exhibition, and it's not marked down there, then it's included in my 20 book as a publication." (*See* ECF No. 114-1 at 103.) This statement indicates that Gaffney thought there was a discernable legal difference between offering the Photographs for sale and actually selling a Photograph. Second, the law on whether granting an exclusive  license amounted to publication is relatively new law only established by a district

court in 2018. *See Archie MD, Inc.*, 261 F.Supp.3d at 520 (holding claimant had no knowledge of inaccuracy because it was unsettled law whether licensing a piece of work constituted publication). Therefore, Gaffney has a legitimate excuse for any purported inaccuracy. Gaffney rightfully avers that he lacked actual knowledge. The '740 Registration is also valid.

## IV.   IT IS IN DISPUTE WHETHER DEFENDANTS' SOCIAL MEDIA USE OF THE PHOTOGRAPHS WAS AN INFRINGEMENT

Gaffney seeks summary judgment to the extent that Defendants infringed on his copyrights as to Photographs 101, 104-105, 107-112, 114, 116, 117, 122, 123, 125-127, and 129-132. (ECF No. 125 at 120.). Gaffney must first prove he has a valid copyright in the Photographs. *See Arista Records*, 604 F.3d at 117. A certificate of registration with the Copyright Office obtained "within five years after first publication of the work" constitutes prima facie evidence of valid copyright ownership. 17 U.S.C. § 410(c). The "evidentiary weight" given to any Registration obtained beyond five years of first publication is "within the discretion of the court." *Id.* The Photographs are covered by Registrations '300, 740, VA 2-201-463, and VA 2-201-464. Gaffney obtained Registrations '300 and VA 2-201-464 within the first five years of purported first publication, but not the other Registrations. However, Defendants only dispute the validity of Registration '300 and '740. Given the discussion above and lack of dispute as to the others, all of Gaffney's Registrations are valid and constitute prima facie evidence of valid copyright ownership.

Next, Gaffney must prove that Defendants engaged in unauthorized copying of the Photographs. *See Arista Records*, 604 F.3d at 117. Gaffney alleges Defendants improperly copied the Photographs through posting them on their social media accounts, such as Facebook, Instagram, and Twitter. Gaffney also alleges Defendants distributed certain photographs to sublicenses and customers after the expiration of the agreement. Defendants do not rebut that they

used the Photographs on their social media sites or that sublicenses continued to use the Photographs after the expiration of the Agreement. The gravamen of the dispute between the parties is whether the expiration rights provided by the Agreement authorized Defendants uses of the Photographs. A valid copyright license "immunizes the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor." *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir.2007). Therefore, the burden is on Gaffney to prove that Defendants copying was outside the scope of its license. *See Sohm v. Scholastic Inc.*, 959 F.3d 39, 49 (2d Cir. 2020) ("Because [the Photographer] pleaded in his complaint that licenses exist – a fact that [Defendant] admits – [the Photographer] bore the burden of proving that [Defendant]'s copying was unauthorized, a burden he failed to satisfy.)

Upon expiration of the Agreement, MAE maintained the right "to exercise the license rights granted to it in Paragraph 1.1 with respect to all licenses and/or agreements made prior to the date of termination," but Defendants had to continue to pay Gaffney the required royalties. (The Agreement at 155.) The non-social media uses of Photographs that Gaffney complains of were clearly a license granted in 1.1. Gaffney also continued to receive and accept royalty payments up until 2018 for any profits generated from these non-social media uses. The issue, however, is that no party put forth evidence demonstrating when Defendants entered into the sublicenses and customer agreements that Gaffney takes issue with. If the non-social media uses relate to "licenses and/or agreements made prior to the date of termination," then Defendants were well within the license Gaffney granted them. If they were new licenses and agreements entered after expiration, then no matter the royalty payments this was beyond the scope of the Agreement. The lack of undisputed evidence precludes granting summary judgment in Gaffney's favor.

13

Propriety of the social media uses turn on contract interpretation. Interpretation of an unambiguous contract is a question of law, while disputes over ambiguous contract terms is a question of fact that a court must leave to a jury. *See Bourne v. Walt Disney Co.*, 68 F. 3d 621, 629 (2d Cir. 1995). Upon expiration of the Agreement, MAE maintained the right "to exercise the license rights granted to it in Paragraph 1.1 with respect to all licenses and/or agreements made prior to the date of termination." (The Agreement at 155.) This contract clause is ambiguous on its face as to social media uses and Gaffney's arguments do not prove otherwise. Defendants contend that promotional and marketing use of the Photographs is one of the licenses granted by paragraph 1.1, so they had authorization to use the Photographs on their social media platforms. Gaffney finds this argument untenable because it would provide Defendants the license to use the Photographs on their social media sites to no end.

It is not clear whether the Agreement permitted this use upon expiration. Paragraph 1.1 of the Agreement grants a license for promotional and marketing uses. However, the clause providing rights upon termination qualifies that Gaffney grants Defendants a continued license "with respect to all licenses and/or agreements made prior to the date of termination." The promotional and marketing uses by Defendants are not related to any licenses or agreements. Ostensibly, the Agreement precluded postings on social media once it expired.

In examining the entire contract, however, there is also a reasonable interpretation that the clause allows for continued promotional and marketing uses. Gaffney only receives royalties on revenues gained from Defendants entering into sublicenses and agreements to sell licensed products. Gaffney, in fact, continued receiving royalties upon expiration of the Agreement. Promotional and marketing uses of the Photographs increases brand awareness, which in turn may generate additional licenses and agreements for products bearing the Photographs. For example,

if Nike grants a sneaker store license to sell its sneakers in exchange for a royalty, it may make sense for Nike to allow the free use of the Nike trademark in the sneaker store's promotional and marketing materials. This will bring patrons into the store, and it does not matter if sometimes the patrons leave with a pair of Adidas sneakers instead. Therefore, it was in fact Gaffney's best interest to continue to allow for these uses to help generate royalties for himself. In addition, given that there was no timeframe for when Defendants needed to terminate "all licenses and/or agreements made prior to the date of termination," it makes sense Defendants continued promotional and marketing license had no end.

There are reasonable interpretations of the Agreement that both preclude and allow for social media uses. Divergent, reasonable interpretation is the epitome of an ambiguous contract clause. Thus, summary judgment as to Defendants social media uses of the Photographs is also not proper.[18]

## V. CONCLUSION

Defendants' partial summary judgment is DENIED to the extent that it seeks dismissal of Claim I in the First Action on grounds that Gaffney does not have a valid copyright Registration and that Gaffney cannot obtain actual damages. Defendants' motion is GRANTED to the extent that it seeks dismissal of Claim I as to nine of the Photographs in the First Action and one Photograph in the Second Action; Claims II and III in both Actions as to any vicarious or contributory infringement, Claim IV in both Actions for direct DMCA violations; Claim V in the Second Action for vicarious DMCA violations; and partial denial of statutory damages. Gaffney's

---

[18] If Defendants are found liable, they clearly did not infringe willfully. To prove willfulness, a plaintiff must establish "(1) that [the defendant] 'was actually aware of the infringing activity,' or (2) that [its] actions 'were the result of "reckless disregard" for or "willful blindness" to the copyright holder's rights.'" *Heritage Lace, Inc. v. Fresh Finds LLC*, 2012 WL 345904 (S.D.N.Y. Feb. 1, 2012) (quoting Island *Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005). Given that the contract is ambiguous, Defendants could not have been aware of or acted in reckless disregard of the infringing activity.

15

motion for partial summary judgment is DENIED to the extent it seeks judgment as to Claim I in both Actions. Gaffney's motion is GRANTED to the extent that it seeks partial statutory damages.

The Clerk of Court is directed to close the motions (ECF Nos. 111 and 124, Case No. 18-cv-8770; ECF No. 30, Case No. 20-cv-7113), accordingly.

Dated: New York, New York
**SEP 0 7 2022**

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

16