# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MICHAEL GAFFNEY,<br><br>       Plaintiff,<br><br>  v.<br><br>MUHAMMAD ALI ENTERPRISES LLC, a New York Limited Liability Company; AUTHENTIC BRANDS GROUP LLC, a New York Limited Liability Company; ROOTS OF, INC., a California corporation d/b/a "ROOTS OF FIGHT;" and DOES 1-10,<br><br>               Defendants. | Civil Action No. 1:18-CV-08770-GBD-OTW<br><br>Civil Action No. 1:20-CV-07113-GBD-OTW |

**MEMORANDUM OF LAW IN OPPOSITION AND RESPONSE TO DEFENDANTS'
MOTION *IN LIMINE* NO. 4 TO PRECLUDE PLAINTIFF FROM INTRODUCING ANY
EVIDENCE OR ARGUMENT ABOUT ALLEGED DAMAGES BASED ON REVENUE
OR PROFIT GENERATED BY THE MUHAMMAD ALI ENTITIES**

2216843.5

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................. 1

        A.      Plaintiff's Claim for Infringer's Profits ................................................... 1

        B.      Defendants' Interrogatory No. 11 Seeking Actual Damages.................... 3

III.    ARGUMENT .......................................................................................................... 4

        A.      Plaintiff Put Defendants on Notice That He Was Seeking Infringer's Profits. ...... 4

        B.      It Is Plaintiff's Burden to Present Gross Revenue "Reasonably Related" to the
                Infringement........................................................................................... 10

                1.      Legal Standard for Infringer's Profits.......................................... 10

                2.      Defendants' Direct Profits for Products with Gaffney's Photographs.......... 12

                3.      Defendants' Indirect Profits from Third-Party Licensees............................. 13

                4.      Defendants' Indirect Profits from Use on Social Media Sites...................... 13

IV.     CONCLUSION...................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### Cases

*Agence France Presse v. Morel*,
  293 F.R.D. 682 (S.D.N.Y. 2013) ............................................................ 9

*Andreas v. Volkswagen of Am., Inc.*,
  336 F.3d 789 (8th Cir. 2003) ............................................................... 15

*Balsley v. LFP, Inc.*,
  691 F.3d 747 (6th Cir. 2012) ............................................................... 12

*Bayoh v. Afropunk LLC*,
  No. 18CV5820 (DLC), 2020 WL 6269300 (S.D.N.Y. Oct. 26, 2020) .............................. 16, 17

*Caffey v. Cook*,
  409 F. Supp. 2d 484 (S.D.N.Y. 2006) ....................................................... 12

*Cates v. Trustees of Columbia Univ. in City of New York*,
  330 F.R.D. 369 (S.D.N.Y. 2019) ............................................................ 7

*Craig v. UMG Recordings, Inc.*,
  380 F. Supp. 3d 324 (S.D.N.Y. 2019) ..................................................... 12, 16

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
  36 F.3d 1147 (1st Cir. 1994) ............................................................... 15

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir. 2006) ................................................................ 8

*ECIMOS, LLC v. Carrier Corp.*,
  971 F.3d 616 (6th Cir. 2020) ........................................................... 11, 15

*Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*,
  772 F.2d 505 (9th Cir. 1985) ............................................................... 11

*Hamil Am. Inc. v. GFI*,
  193 F.3d 92 (2d Cir. 1999) ................................................................. 6

*Howard Univ. v. Borders*,
  No. 20-CV-04716 (LJL), 2022 WL (S.D.N.Y. Aug. 17, 2022) .................................... 5

*In Design v. Lauren Knitwear Corp.*,
  782 F. Supp. 824 (S.D.N.Y. 1991) .......................................................... 16

2371461v1

*King v. Wang*,
No. 14-CV-7694 (LJL), 2021 WL 5283950 (S.D.N.Y. Nov. 12, 2021)....................................7

*Laspata DeCaro Studio Coporation v. Rimowa GmbH*,
No. 16 CIV. 934 (LGS), 2018 WL 3059650 (S.D.N.Y. June 20, 2018) ............................6, 14

*Mackie v. Rieser*,
296 F.3d 909 (9th Cir. 2002) ....................................................................................16

*Max Impact, LLC v. Sherwood Grp., Inc.*,
No. 09 CIV. 902 JGK HBP, 2014 WL 902649 (S.D.N.Y. Mar. 7, 2014) ................................7

*McNeil-PPC, Inc. v. Perrigo Co.*,
516 F. Supp. 2d 238 (S.D.N.Y. 2007) .............................................................................5

*New York City Transit Auth. v. Express Scripts, Inc.*,
588 F. Supp. 3d 424 (S.D.N.Y. 2022) ............................................................................7

*On Davis v. The Gap, Inc.*,
246 F.3d 152 (2d Cir. 2001) ..............................................................................4, 6, 10

*Polar Bear Prods., Inc. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004) ......................................................................................16

*Reed Elsevier, Inc. v. Muchnick*,
559 U.S. 154 (2010).......................................................................................................15

*Silberman v. Innovation Luggage, Inc.*,
No. 01 Civ. 7109, 2003 WL 1787123 (S.D.N.Y. Apr. 3, 2003).............................................14

**Statutes**

17 U.S.C. § 504(b) ............................................................................................. passim

iii

2371461v1

## I.        INTRODUCTION

Plaintiff Michael Gaffney hereby responds to and opposes Defendants' Motion *In Limine*

No. 4 (ECF 225-1, the "Motion") to preclude Plaintiff from introducing evidence or argument

based on revenue or profit generated by Defendant Muhammad Ali Entities ("MAE"). There are

two main issues raised by Defendants' confusing motion: (1) whether Plaintiff belatedly

disclosed a claim for damages based on MAE's profits; and (2) whether Plaintiff has shown a

"causal nexus" between MAE's profits[1] and MAE's infringement. As for (1), Plaintiff timely

disclosed a claim for damages based on MAE's profits during the discovery process, and

Defendants have already *admitted* this in the joint pretrial order. As for (2), Plaintiff must show

gross revenue "reasonably related to the infringement," and Plaintiff has done so here.

Defendants' motion should be denied.

## II.       FACTUAL BACKGROUND

### A.        Plaintiff's Claim for Infringer's Profits

In the initial complaint filed on September 25, 2018, Plaintiff demanded, among other

things, "all profits derived from the unauthorized use of the subject photographs." (ECF 1, 19.)

In the First Amended Complaint, filed June 11, 2020, Plaintiff demanded "all of Defendants'

profits derived from the unauthorized use of the Photographs." (ECF 48, 29.) In the operative

Second Amended Complaint, filed July 14, 2020, Plaintiff demanded "all of Defendants' profits

derived from the unauthorized use of the Photographs." (ECF 58, 29.) Accordingly, Defendants

have been on notice for years that Plaintiff is seeking Defendants' profits.

---

[1] As discussed below, there are three forms of profits raised by Defendants' motion: direct profits from MAE's products, indirect profits from MAE's third-party licensees, and indirect profits from MAE's use on social media.

To establish infringer's profits, Plaintiff sent discovery requests to Defendants seeking MAE's gross revenue. *See* 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue …"). In particular, on May 4, 2020, Plaintiff served requests for production on Defendants seeking documents "sufficient to show MAE's gross revenue." (Linger Decl., Ex. 1 at 7-8.) Defendants initially objected to providing certain gross revenue information, and Plaintiff obtained a court order compelling Defendants to produce such information. On September 30, 2020, Magistrate Judge Wang ordered Defendants to "produce the gross revenue of Muhammad Ali Enterprises." (Ex. 2, 14:25-15:1.) Defendants then produced the gross revenue information of MAE, as they state in their motion *in limine*, including for each of MAE's licensees. (Motion, 2 (citing, e.g., ECF 225-4.) In a supplemental response to Plaintiff's RFPs, Defendants confirmed that they "have produced MAE's gross revenues during the period February 1, 2015 through August 2020." (Ex. 3 at 23.)

Plaintiff also propounded a Rule 30(b)(6) deposition notice requesting a corporate witness to testify as to MAE's gross revenues. Defendants designated JoJo Dizon. Under questioning from Plaintiff's counsel, Dizon provided testimony as to MAE's gross revenues for the relevant period. (ECF 225-5, 123:12-24.)

The parties' joint pretrial order removes ***any*** doubt that Defendants have had notice of Plaintiff's claim for infringer's profits. In the stipulations of law section, submitted jointly on December 2, 2022, the parties describe at length the legal standards regarding damages relating to ***Defendants' profits***. (ECF 166 at 16-17, *e.g.*, ¶ 18 ("***Gaffney is entitled to recover any profits that Defendants earned*** that are attributable to the infringement.").) Defendants *stipulated* to these statements of law. And in Defendants' section regarding their defenses at trial, Defendants

stated that "Defendants will assert that Gaffney cannot establish that Defendants generated any direct or indirect profits attributable to the alleged infringement that could provide a basis for disgorgement of profits under 17 U.S.C. § 504(b)." (*Id.* at 7.) Accordingly, Defendants made a binding statement to the Court that Defendants would challenge the legal "basis" for Plaintiff's profit damages at trial. This confirms that Defendants were aware of Plaintiff's claim for profit damages and would contest it at trial, directly contrary to Defendants' repeatedly false contentions in the motion. (*Compare* Motion, 1, 5, 7 ("Plaintiff did not raise the issue of disgorgement of the Muhammad Ali Entities' profits until September 26, 2023 …").)

In the proposed pretrial order, Plaintiff listed all of the fact witnesses it intends to call at trial to testify as to Defendants' gross revenues, including Defendants' financial witnesses, JoJo Dizon and Adam Kronengold. (ECF 166, 20.) In the same order, Plaintiff also disclosed his expert, Professor Jeffrey Sedlik. (*Id.*) Contrary to Defendants' speculation, Professor Sedlik will not be offering any new expert reports, and at trial, will testify only as to opinions contained in his previously-disclosed report.

Defendants never challenged, communicated, or raised any issue about the sufficiency of Plaintiff's initial disclosures until Defendants' motion *in limine*, filed on December 19, 2023.

**B.    Defendants' Interrogatory No. 11 Seeking Actual Damages**

On May 29, 2020, Defendants served a set of interrogatories on Plaintiff. Defendants' Interrogatory No. 11 states in full as follows:

> Identify with specificity **the amount of actual damages Plaintiff claims to have incurred** as a result of Defendants' alleged infringement, including the precise dollar amount of damages Plaintiff claims to have sustained, the precise method Plaintiff used (or intends to use) to calculate the dollar amount of the damages, the PERSON who made (or who is intended to testify to) the calculation, and the DOCUMENTS, PERSONS, events, and COMMUNICATIONS that you claim support the fact or amount of damages.

3

(ECF 222-11, 5.) Thus, this interrogatory sought a figure of "actual damages," but made no request as to other distinct forms of damages, such as infringer's profits or statutory damages. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001) (noting that actual damages and infringer's profits are separate "categories" of damages "based on different financial data"). No other interrogatory requested information relating to infringer's profits or statutory damages. Plaintiff responded, objecting on the grounds that the request "prematurely attempts to obtain documents, evidence and expert reports that are to be used at trial in this case." (ECF 222-11, 5.) While in discovery, Defendants never contested Plaintiff's objection, sought further information from Plaintiff, or otherwise challenged Plaintiff's response.

On September 19, 2023, after the close of discovery and after Plaintiff had filed a new lawsuit against Defendants expressly naming certain photographs, Defendants wrote to Plaintiff, asking whether Plaintiff intended to update his response to Interrogatory No. 11. This was the first time Defendants had ever raised any issue with Plaintiff's response to this interrogatory. On September 20, 2023, Plaintiff confirmed that he would supplement his response, and on September 26, 2023, the supplemental response was served on Defendants. (ECF 222-11.) The response stated that Plaintiff would be seeking actual damages in response to the request, in addition to "***other*** forms of damages, including statutory damages … and infringer profits." (*Id.*)

## III.   ARGUMENT

### A.   Plaintiff Put Defendants on Notice That He Was Seeking Infringer's Profits.

Defendants' notice of Plaintiff's claim for infringer's profits is crystal clear from the course of this litigation. In the operative Second Amended Complaint, as well as all previously-filed complaints, Plaintiff demanded Defendants' profits. (*See* ECF 58, 29 (Second Amended Complaint); ECF 48, 29 (First Amended Complaint), ECF 1, 19 (Initial Complaint).) Plaintiff obtained a Court order from Judge Wang compelling Defendants to produce the necessary

information to determine MAE's profits during the discovery process. Indeed, at the hearing with Judge Wang, the parties extensively argued about MAE's revenue and profit information. (Ex. 2, 14:25-15:1.) And as Defendants admit, Plaintiff questioned Defendants' 30(b)(6) witness about MAE's gross revenue, which is used to establish MAE's profits. (ECF 225-5, 123:12-24 (discussing MAE's gross revenue figures in ECF 225-4.))

In the joint pretrial order, filed on December 2, 2022, Defendants stipulated to the following statement: "Gaffney is entitled to recover any profits that Defendants earned that are attributable to the infringement." (ECF 166 at 16-17.) Defendants further stipulated that it would challenge Plaintiff's claim for "disgorgement of profits" at trial. (*Id.*) Defendants' stipulations cannot be squared with the statements made in their motion *in limine* and also operate as a waiver of the arguments in their current motion. (*Compare* Motion, 7 ("Plaintiff did not raise the issue of disgorgement of the Muhammad Ali Entities' profits until September 26, 2023 …").); *see McNeil-PPC, Inc. v. Perrigo Co.*, 516 F. Supp. 2d 238, 259 (S.D.N.Y. 2007) (finding waiver of affirmative defense based on contradictory statement in joint pretrial order). Defendants' statements in their motion about a first-time disclosure of a claim for disgorgement of profits in September 2023 are demonstrably incorrect.

Defendants ignore this extensive discovery and litigation related to MAE's profits, and instead, claim that Plaintiff should be precluded from seeking MAE's profits at trial because Plaintiff's initial disclosures do not "mention" the exact term "infringer's profits." (Motion, 7.) However, "[t]he duty to supplement a Rule 26 disclosure is 'only necessary when the omitted or after-acquired information has not otherwise been made known to the parties during the discovery process.'" *Howard Univ. v. Borders*, No. 20-CV-04716 (LJL), 2022 WL 3568477, at *2 (S.D.N.Y. Aug. 17, 2022) (citing 8A Charles Alan Wright & Arthur R. Miller, Federal

Practice and Procedure § 2049.1 (3d ed. 2010)); *Laspata DeCaro Studio Coporation v. Rimowa GmbH*, No. 16 CIV. 934 (LGS), 2018 WL 3059650, at *9 (S.D.N.Y. June 20, 2018) (similar). Based on the discovery and litigation discussed above, MAE's gross revenues were certainly "made known to the parties during the discovery process." Thus, there was no need to supplement Plaintiff's initial disclosures.

Plaintiff disagrees that his initial disclosures are insufficient. Plaintiff's initial disclosures cited "all" "damages provided under the Copyright Act" (ECF 222-1, 4), and infringer's profits are a category of damages under section 504(b) of the Copyright Act (*see* 17 U.S.C. § 504(b)). Moreover the initial disclosures cross-reference the Complaint (ECF 222-1 at 4), and each iteration of the Complaint makes specific reference to Defendants' "profits" (ECF 58, 29 (Second Amended Complaint)). The Second Amended Complaint also makes specific and repeated reference to section 504(b). (ECF 58, ¶¶ 87, 98, 111.)

Defendants also alleges that Plaintiff should have referenced "infringer's profits" in its response to Defendants' Interrogatory No. 11. That interrogatory asked for "actual damages," not infringer's profits. (ECF 222-11, 4-5.) As the Second Circuit has found, these are "two" different categories of "compensatory damages," having "different justifications and are based on different financial data." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001); *see also Hamil Am. Inc. v. GFI*, 193 F.3d 92, 103 (2d Cir. 1999) ("Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefitting from a wrongful act."). Whereas "infringer's profits examines the facts only from the infringer's point of view," "the owner's actual damages looks at the facts from the point of view of the copyright owner." *On Davis*, 246 F.3d at 159. Thus, Plaintiff was not required to specify an amount of infringer's profits in an interrogatory request seeking an

entirely different category of damages. If Defendants took issue with Plaintiff's response, then they could have met and conferred with Plaintiff, sought a Court order, or propounded additional discovery seeking infringer's profits. They did none of these things.

To the extent the Court determines that Plaintiff's initial disclosures violated Rule 26, that does not mean that the extraordinary sanction of preclusion of infringer's profits is warranted. Courts in this District routinely allow parties to go forward with damages claims even where those claims are not expressly disclosed in that party's initial disclosures. *See, e.g.*, *New York City Transit Auth. v. Express Scripts, Inc.*, 588 F. Supp. 3d 424, 441 (S.D.N.Y. 2022) (no undue prejudice where damages evidence was always in the possession of the party seeking preclusion and damages theory was "vital" to the case); *Cates v. Trustees of Columbia Univ. in City of New York*, 330 F.R.D. 369, 374 (S.D.N.Y. 2019) (excusing "technical violation of Rule 26(a)" because the plaintiff would be deprived of millions of dollars in damages, the defendant's expert had the opportunity to review the same evidence, and the defendant failed to timely raise an issue with the initial disclosures); *King v. Wang*, No. 14-CV-7694 (LJL), 2021 WL 5283950, at *4 (S.D.N.Y. Nov. 12, 2021) (declining to use the "extraordinary" and "drastic" sanction of preclusion of an damages theory not disclosed in initial disclosures because the underlying factual issues had long been known to the parties); *Max Impact, LLC v. Sherwood Grp., Inc.*, No. 09 CIV. 902 JGK HBP, 2014 WL 902649, at *7 (S.D.N.Y. Mar. 7, 2014) (declining to preclude damages theory not cited in initial disclosures because the claim was an "important component" of the case and the party seeking preclusion had opportunity to review "supporting documentation" underlying that theory).

Based on the discovery on this issue, allowing Plaintiff to continue to pursue actual damages would be harmless. From the inception of this case, Defendants have been on notice

that Plaintiff is seeking infringer's profits. (ECF 1, 19.) Defendants have thus had the opportunity to conduct discovery into infringer's profits, all of which relies on financial documents in ***Defendants'*** possession. Defendants' 30(b)(6) witness, JoJo Dizon, was questioned by Plaintiff about this very topic. (ECF 225-5, 123:12-24.) The parties even went to the Magistrate Judge to get a ruling as to whether Defendants were required to produce this MAE's gross revenues. Judge Wang ordered Defendants to produce MAE's gross revenue so that Plaintiff could pursue his claim for infringer's profits. (Ex. 2, 14:25-15:1.) Based on that order, Defendants produced their gross revenue and income information. (*E.g.*, ECF 225-4.)

The prejudice to Plaintiff if it were unable to pursue his claim for infringer's profits would be severe. Precluding Plaintiff from presenting the gross revenues would deprive Plaintiff of potentially millions of dollars in infringer's profits. *Cates*, 330 F.R.D. at 374 (excusing "technical violation of Rule 26(a)" because the plaintiff would be deprived of millions of dollars in damages).

Defendants rely primarily on two cases for their argument, *Design Strategy* and *Agence France Presse*. (Motion, 8-9.) Both cases are inapposite and do not support the drastic remedy of preclusion here. *Design Strategy* was a case brought by a company against a former employee for lost business opportunities. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 293 (2d Cir. 2006). The company disclosed two witnesses for the first time in the joint pretrial order, including an expert witness, on the issue of the company's lost profits. The witnesses were not disclosed in the initial disclosures, and the expert still needed to prepare a report on the issue. (*Id.* at 297.) Moreover, the documents on which the company intended to rely to show its lost profits were the company's ***own*** financial statements. (*Id.* at 295.) Here, by contrast, all of Plaintiff's witnesses were timely disclosed, and Plaintiff is not seeking to add new witnesses, is not preparing a new

8

expert report, and is relying on **Defendants'** financial statements to show to **their** gross revenue. Plaintiff will rely on Defendants' gross revenue statement (*e.g.*, ECF 225-4) and question JoJo Dizon, Defendants' trial witness on this topic (ECF 222-5, 123:12-124:7.). Dizon is on both parties' witness lists. (ECF 166, 20.)

   *Agence France Presse* is similarly far afield. There, the plaintiff attempted to change his damages theory from one asserting just 16 violations of the DMCA, to a new one alleging 527 violations, a 32-fold increase. *Agence France Presse v. Morel*, 293 F.R.D. 682, 684 (S.D.N.Y. 2013). The Court found that the plaintiff's new, undisclosed theory was "particularly troubling in light of Defendants' repeated requests for more information." (*Id.* at 685.) The plaintiff responded to the defendant's requests, falsely confirming that it had already provided the relevant information. (*Id.* at 684.) Moreover, the Court found specific ways that the defendants would have handled discovery differently based on the 527-violation theory. (*Id.* at 686.) Here, Defendants never requested that Plaintiff provide supplemental initial disclosures and Defendants' interrogatories do not seek any information as to infringer's profits, only "actual damages." Moreover, Defendants offer no specific ways that discovery would have been handled differently. (Motion, 8.) After all, Plaintiff's RFPs sought gross revenue and Defendants produced that information. (11/17/2020 Supplemental Response at 23.)

   Defendants claim that they would need to "take a supplemental deposition of Mr. Gaffney on this issue" if this claim proceeds. (Motion, 8.) This makes no sense. Defendants do not explain why Gaffney would need to be deposed about **Defendants'** confidential financial information. Gaffney does not have access or knowledge of such information, and thus, cannot offer anything of value on this issue.[2] *See King*, 2021 WL 5283950, at *3 ("Defendants fail to

---

[2] In fact, Defendants have sealed this information, preventing Mr. Gaffney from even viewing it.

identify with any specificity the testimony and evidence they would require if Plaintiff is permitted to raise the [damages] theory with the jury in this case or why the discovery that they already took would not be sufficient to address any new arguments that Plaintiff might make based on that theory."). Defendants also speculate that Plaintiff may disclose a new expert and expert report. (Motion, 8.) Plaintiff will not be offering any new experts or producing any reports that have not yet already been disclosed.

In sum, Defendants have not been "sandbagged"; they knew all along that Plaintiff would be pursuing a claim for infringer's profits, as they ***admitted*** in the joint pretrial order. (ECF 166 at 16-17.) Plaintiff has the evidence it needs to pursue this claim at trial, based on productions made by Defendants, and the Court should permit this claim to go forward.

**B.** **It Is Plaintiff's Burden to Present Gross Revenue "Reasonably Related" to the Infringement.**

**1.** **Legal Standard for Infringer's Profits**

Section 504 of the Copyright Act establishes a burden-shifting framework to calculate infringer's profits. First, the plaintiff must "present proof only of the infringer's gross revenue." 17 U.S.C. § 504(b). Second, the infringer is required to "prove their deductible expenses and the elements of profit attributable to factors other than the copyrighted work." (*Id.*)

In *On Davis v. Gap*, the defendant infringed the plaintiff's copyrighted eyewear in an advertising campaign for Gap clothing. The plaintiff submitted evidence of the gross revenues of Gap's corporate parent. In denying infringer's profits, the Second Circuit stated: "Because the ad infringed only with respect to Gap label stores and eyewear … it was incumbent on Davis to submit evidence at least limited to the gross revenues of the Gap label stores, and perhaps also limited to eyewear or accessories." *On Davis*, 246 F.3d at 160. Importantly, the Second Circuit made clear: "*Had he done so*, the burden would then have shifted to *the defendant* under the

terms of § 504(b) to prove its deductible expenses and elements of profits from those revenues *attributable to factors other than the copyrighted work*." *Id.* (emphasis added). The Second Circuit clarified that "gross revenue" means gross "revenue reasonably related" to the infringement, and not from separate, unrelated lines of business. (*Id.*)

*On Davis* recognized that an infringing work is frequently commingled with non-infringing or larger works. Accordingly, the Second Circuit explained that a copyright owner would satisfy their burden by presenting the gross revenue of a certain business line or the gross revenue of an entire work, such as an anthology, where the anthology contains only a single infringing poem. *Id.* The infringer would then bear the burden to show costs and profits attributable to "the other poems contained in the volume." *Id.* Decisions by other appellate courts also recognize that the defendant bears the burden of separating out infringing from non-infringing works. In *ECIMOS, LLC v. Carrier Corp.*, the plaintiff sued the defendant for infringing its copyright by using its database source code to aid a third party's development of software that the defendant employed at one of its manufacturing facilities. 971 F.3d 616, 622 (6th Cir. 2020). The defendant objected to plaintiff's presenting all of its gross revenue from that facility (more than ***$1.25 billion***) and argued that the plaintiff was "required to show the amount of [Defendant's] profits that were attributable to the infringement." *Id.* at 634. The Sixth Circuit rejected the defendant's argument: "Put simply, the burden is on the copyright infringer to prove whatever portion of its gross revenue was not attributable to the" infringement. *Id.* Other appellate decisions have reached the same conclusion. *See Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985) (in case involving a handful of infringing songs in musical revue, affirming gross revenues of over $24 million, the amount of revenue received by the casino from the entire revue during the time period); *Balsley v. LFP,*

11

*Inc.*, 691 F.3d 747, 768-69 (6th Cir. 2012) (gross revenue from magazine issue was reasonably related to infringement of a ***single*** photograph in magazine, even though other articles and photographs appeared; plaintiff had no burden to attribute revenue to photograph versus other non-infringing photographs and material in magazine).

Courts in this District have applied similar reasoning to large, commingled works. In *Caffey v. Cook*, the plaintiffs met their burden of showing gross revenue where they presented revenue received by the infringer from musical performances where the performances contained infringed songs, even though the performances contained *additional, non-infringing* songs. *Caffey v. Cook*, 409 F. Supp. 2d 484, 503 (S.D.N.Y. 2006) (Holwell, J.). *Craig v. UMG Recordings* reached a similar holding involving a photograph. The case involved the use of a copyrighted photograph on the cover of a B.B. King music album. *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 335 (S.D.N.Y. 2019) (Oetken, J.). The Court found that a reasonable jury could find the photograph to be related to the gross revenue for all album sales, *even though none of the music was infringing*, rejecting the defendant's arguments that the sales were caused only by other factors, such as the musical talents of B.B. King, reasoning that the cover design "affect[s] the overall quality of an album." (*Id.*)

### 2.      Defendants' Direct Profits for Products with Gaffney's Photographs

Defendants first contend that there is no "direct profit" because Gaffney continued to receive royalties after the licensed expired. (Motion, 10.) Defendants call this "licensed, not infringing, use." (*Id.*) There is no dispute that the license was ***expired*** (ECF 133, ¶ 14), so Defendants had no right to use Gaffney's photographs in this manner. *Caffey*, 409 F. Supp. 2d at 502 n.6 ("the mere fact that [plaintiff] erroneously accepted royalties on behalf of these performances is insufficient to establish that he either granted or reconfirmed a nonexclusive

license to defendants to perform the Show or otherwise waived his copyright claim."). Thus, this is infringing use of which Gaffney is entitled to profits.

### 3.      Defendants' Indirect Profits from Third-Party Licensees

As for indirect profits, Plaintiff have satisfied their burden by adducing evidence of Defendants' gross revenues specific to one line of business, the revenue that their subsidiary MAE received after expiration of the license with Gaffney, from February 1, 2015 through August 2020 (*i.e.*, the period of time when Defendants used Gaffney's photographs without authorization). Defendants produced a spreadsheet showing, in granular detail, the royalty revenue received by MAE from each of its licensees of the Ali photographs during this period. (ECF 225-4.) Plaintiff will link the revenue received by MAE from the specific entities that received Gaffney's photographs. This gross revenue is reasonably related to Defendants' infringement. *ECIMOS*, 971 F.3d at 635 ("[A]ny relevant revenue that could be traced back to the infringement can be submitted to the jury, and that it is ultimately for the jury to decide how much profit—after hearing the infringer's mitigating evidence—must be disgorged.").

### 4.      Defendants' Indirect Profits from Use on Social Media Sites

As for indirect profits relating to the social media sites, Gaffney's photographs appeared prominently and significantly on these sites. Defendants selected one of Gaffney's photographs as the ***official*** obituary photograph of Ali for three straight years. (Preliminary Expert Report of Professor Jeffrey Sedlik ["Sedlik Report"], Ex. N at 4 (Linger Decl., Ex. 5).) That photograph can also be seen as one of the very first images from MAE's Facebook page below:



(ECF 59 at 34; *id.* ("There are at least 53 uses of [Gaffney's] Photographs … on the social media verified sites of Facebook, Instagram, and Twitter.").)

These picture draw people in to view MAE's pages, and as shown above, these pages contain links to pages where Ali merchandise can be purchased. *See Craig*, 380 F. Supp at 335 (finding album sales to be reasonably related where infringing photograph was displayed "front and center"); *Laspata DeCaro Studio Coporation v. Rimowa GmbH*, No. 16 CIV. 934 (LGS), 2018 WL 3059650 (S.D.N.Y. June 20, 2018) (finding revenue from luggage line to be reasonably related to the photographs on the front cover of the defendant's brochure for its luggage line) (Schofield, J.); *Silberman v. Innovation Luggage, Inc.*, No. 01 Civ. 7109, 2003 WL 1787123, at *10 (S.D.N.Y. Apr. 3, 2003) (Lynch, J.) ("In a case such as this, where defendants used the infringing [images of the New York skyline] as interior décor of their luggage stores, and did not sell the infringing items, it may well be that profits from the infringement are not great. However, plaintiffs are entitled to recover infringing profits to the extent that any such profits can be demonstrated, and that calculation is also reserved for a trier of fact and is not

14

appropriate for summary judgment."); *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 797 (8th Cir. 2003) (reversing the district court's decision vacating the jury award and reinstating an award of infringer's profits from car sales where an infringing voiceover was central to defendant's car commercial).

While Defendants contend that other, non-Gaffney photographs of Ali appear more frequently on these social media pages, they have no evidence to support their claims, just the unsupported testimony from their executive, Adam Kronengold. (Motion, 12.) Showing that profits came from other, non-infringing sources is ***Defendants'*** burden. *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1175 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) ("The defendant's burden under the apportionment provision of Section 504(b) is primarily to demonstrate the absence of a causal link between the infringement and all or part of the profits claimed by the plaintiff."). Defendants, however, admitted to ***deleting*** all of the social media pages using Gaffney's photographs after 2015 after the lawsuit was filed and kept no records of the number of images that were taken down. (Ex. 4, 131:11-22, 158:21-24).

Defendants thus have no way to determine the proportion of infringing to non-infringing photographs on the social media sites. It was Defendant's responsibility to maintain these records as it is their burden to apportion. *See* 17 U.S.C. § 504(b) ("the infringer is required to … the elements of profit attributable to factors other than the copyrighted work."); *On Davis*, 246 F.3d at 160 (the infringer must prove "those revenues attributable to factors other than the copyrighted work"); *ECIMOS*, 971 F.3d at 635 ("Where there is a commingling of gains, the defendant must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him."); *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789,

797 (8th Cir. 2003) ("Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff."); *In Design v. Lauren Knitwear Corp.*, 782 F. Supp. 824, 832 (S.D.N.Y. 1991) ("any uncertainty as to profits that is caused by the defendant's failure to keep adequate records of costs will be resolved in favor of the plaintiff.").

Rather than apply the standard set forth in *On Davis*, Defendants rely primarily on the Ninth Circuit's *Polar Bear* and *Mackie* decisions. (Motion, 10-12.) The "reasonably related" standard in *On Davis* is the proper one in the Second Circuit. Nonetheless, these decisions still support Plaintiff, not Defendants. *Polar Bear* involved infringing images used at a trade show booth of a watchmaker. The images comprised a "substantial part" of the trade booth, and the Ninth Circuit found that all trade booth sales were a "reasonable approximation of the profit related to infringement." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 712 (9th Cir. 2004). The Court further held that the plaintiff "was not required to separate the gross profits resulting from the infringement from the profits resulting from other sources." *Id. Mackie* involved an infringing artwork in a multipage promotional brochure for the Seattle Symphony Orchestra. The artwork showed a series of bronze shoe prints along a sidewalk known as the "Dance Steps" and, importantly, was unrelated to the orchestra. The Court found that the revenue the orchestra received from performances because it was "impossible" to trace the revenue from the orchestra to the artwork. *Mackie v. Rieser*, 296 F.3d 909, 913 (9th Cir. 2002). The Southern District of New York distinguished *Mackie* on this basis in *Craig v. UMG Recordings*, finding, as discussed above, that album artwork that appeared "front and center" was reasonably related to album sales. *Craig*, 380 F. Supp. at 335.

Defendants also cite to *Bayoh v. Afropunk LLC*, No. 18CV5820 (DLC), 2020 WL 6269300 (S.D.N.Y. Oct. 26, 2020), but in that case, there was no documentation or evidence

16

provided by the plaintiff about how the photographs were actually used at each music festival. (*Id.* at \*7.) Here, there is evidence about the prominence and significance of Gaffney's photographs in MAE's social media sites (for example, as shown in the Facebook image above), and these pages show links where purchases could be made. (*See, e.g.*, ECF 59 at 34, 49.)

Here, Plaintiff has adduced evidence of MAE's gross revenue that is relevant and reasonably related to Defendants' infringement.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion *in Limine* No. 4 should be denied.


Date: January 12, 2024                    Respectfully submitted,

                                  */s/ Robert E. Allen*
                                  Robert E. Allen (admitted *pro hac vice*)
                                  Lawrence M. Hadley (admitted *pro hac vice*)
                                  Jason C. Linger (admitted *pro hac vice*)
                                  GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP
                                  10250 Constellation Blvd., 19th Fl.
                                  Los Angeles, CA 90067
                                  Telephone: (310) 282-6280
                                  rallen@glaserweil.com
                                  lhadley@glaserweil.com
                                  jlinger@glaserweil.com

                                  Jack Spinella
                                  Spinella Law Group, LLC
                                  425 Madison Avenue
                                  New York, New York 10123
                                  Telephone: (908) 947-2336
                                  jspinella@spinellalawgroup.com


                                  *Attorneys for Plaintiff Michael Gaffney*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 12, 2024, a true and correct copy of the foregoing **MEMORANDUM OF LAW IN OPPOSITION AND RESPONSE TO DEFENDANTS' MOTION IN LIMINE NO. 4 TO PRECLUDE PLAINTIFF FROM INTRODUCING ANY EVIDENCE OR ARGUMENT ABOUT ALLEGED DAMAGES BASED ON REVENUE OR PROFIT GENERATED BY THE MUHAMMAD ALI ENTITIES** was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Robert E. Allen*
Robert E. Allen

18

2371461v1