**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL GAFFNEY, | Civil Action No. 1:18-CV-08770 (GBD) |
| Plaintiff, | Civil Action No. 1:20-CV-07113 (GBD) |
| v. | |
| MUHAMMAD ALI ENTERPRISES LLC, a New York Limited Liability Company; AUTHENTIC BRANDS GROUP LLC, a New York Limited Liability Company; ROOTS OF, INC., a California corporation d/b/a "ROOTS OF FIGHT;" and DOES 1-10, | **[PROPOSED]**<br>**JOINT PRETRIAL ORDER** |
| Defendants. | |

Pursuant to Judge Daniels' Individual Rules and Practices (updated April 21, 2020), the

parties hereby submit to the Court, for its approval, the following joint pretrial order.

## A.    Full Caption of the Action

The full caption of the case is as follows: *Michael Gaffney v. Muhammad Ali Enterprises*

*LLC, Authentic Brands Group LLC, Roots Of, Inc. d/b/a "Roots Of Fight," and Does 1-10*, Civil

Action Nos. 1:18-CV-08770 (GBD-OTW), 1:20-CV-07113 (GBD-OTW).  The two actions were

consolidated by the Court on September 9, 2021 (Dkt. No. 109).

## B.    Trial Counsel Information

| Counsel for Plaintiff | Counsel for Defendants |
|---|---|
| Robert E. Allen (admitted *pro hac vice*) | Jessica S. Rutherford, Esq. |
| Lawrence M. Hadley (*pro hac vice* in | Edmund J. Ferdinand, III, Esq. |
| progress) | Kathleen B. Moore, Esq. |
| Jason C. Linger (*pro hac vice* in progress) | Alexander R. Malbin, Esq. |
| GLASER WEIL FINK HOWARD AVCHEN | FERDINAND IP, LLC |
| &  SHAPIRO LLP | 450 Seventh Avenue, Suite 1300 |
| 10250 Constellation Blvd., 19th Fl. | New York, NY 10123 |
| Los Angeles, CA 90067 | Phone: (212) 220-0523 |
| Telephone: (310) 282-6280 | Fax: (203) 549-2339 |
| Fax: (310) 785-3580 | jrutherford@fiplawgroup.com |
| Email: rallen@glaserweil.com | jferdinand@fiplawgroup.com |
| Email: lhadley@glaserweil.com | kmoore@fiplawgroup.com |
| Email: jlinger@glaserweil.com | amalbin@fiplawgroup.com |
| | |
| Jack Spinella | |
| SPINELLA LAW GROUP, LLC | |
| 425 Madison Avenue | |
| New York, New York 10123 | |
| Telephone:  (908) 947-2336 | |
| Fax: (908) 947-2343 | |
| Email: jspinella@spinellalawgroup.com | |

## C.    Basis for Subject Matter Jurisdiction

Plaintiff's Position

Plaintiff offers the following brief statement as to why this Court has subject matter jurisdiction in this action.  This is a civil action seeking injunctive relief and monetary damage for violations of the Copyright Act of the United States, 17 U.S.C. §§ 101 et seq., 17 U.S.C. §§ 1202-03.  This Court has exclusive original jurisdiction over this lawsuit under 28 U.S.C. §§ 1331 and 1338(a) because it arises under an Act of Congress relating to copyrights, specifically 17 U.S.C. §§ 101 et seq.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) because each of the Defendants each either reside or may be found in this District.  This Court has personal jurisdiction over each of the Defendants because Defendants are doing business in the State of New York and/or have committed acts of copyright infringement by unlawfully Copying the Photographs within the State of New York.

Defendants' Position

Defendants do not dispute that the Court has subject matter jurisdiction in this case.

## D.    Summary of Claims and Defenses

Plaintiff's Position

Plaintiff offers the following brief summary of the claims and defenses that remain to be tried, in addition to claims and defenses previously asserted which are not to be tried.

The claims that remain to be tried are as follows: Defendants' unauthorized copying of the Photographs (other than the specific Photographs dismissed in ECF 154) through their reproduction and display on social media under 17 U.S.C. § 501 (Claim I in both Actions); Defendants' unauthorized copying of the Photographs (other than the specific Photographs dismissed in ECF 154) through their reproduction and display for non-social media uses under 17

U.S.C. § 501 (Claim I under both Actions); Defendants' vicarious and/or contributory infringement as to copyright infringements committed by Defendants' licensees (Claims II and II under both Actions); Defendants' vicarious violation of the DMCA (Count V of the First Action); whether Defendants' infringements were committed willfully under 17 U.S.C. § 504(c)(2); and the amount of actual and statutory damages and attorneys' fees to which Plaintiff is entitled for Defendants' infringements under 17 U.S.C. §§ 504-505.

The defense that remains to be tried is as follows: Defendants' license defense for certain Photographs as applied only to social media use.

The claims and defenses previously asserted which are not to be tried are as follows: whether the '300 and '740 Registrations are valid (the Court determined that they were valid, Dkt. No. 154, 8); direct infringement as to nine of the Photographs in No. 18-cv-8770 and one Photograph in No. 120-cv-7113 (dismissed, Dkt. No. 154, 2); vicarious or contributory infringement as to infringement committed by fan sites (dismissed, Dkt. No. 154, 2); and vicarious DMCA violations in No. 120-cv-7113 (dismissed, Dkt. No. 154, 2).

Despite the Court's holding as a matter of law that both the '300 and '740 Registrations are valid as to each of the Photographs at issue because "Gaffney rightfully asserts he lacked the requisite knowledge of any purported inaccuracies" (ECF 154 at 9), Defendants' central defense, as outlined below, ignores the Court's holdings and instead Defendants intend to assert that (1) ali-008.jpg was "published" without notice and therefore is in the public domain and not subject to the '740 registration; (2) Gaffney "knew" that ali-002.jpg, ali-010.jpg and ali-016.jpg were published prior to the '300 Registration and therefore the '300 Registration is invalid as to these three Photographs; and (3) Gaffney "knew" that ali-008.jpg, ali-018.jpg, ali-029.jpg, ali-030.jpg, Ali-044.jpg, Ali-045.jpg, Ali-053.jpg, Ali-060.jpg, Ali-077.jpg, Ali-095.jpg and Ali-102.jpg had

been previously published when he submitted the '740 Registration and therefore the '740 Registration is invalid as to these eleven Photographs. Yet, as the Court observed, "Defendants fail to rebut Gaffney's lack of actual knowledge" as to the Photographs subject to the '300 registration (*Id.* at 10), and Gaffney's ignorance "of any knowledge that his actions amounted to legal publication" at the time of registration, also unrebutted by Defendants, is excusable under *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct 941 (2022). (*Id.* at 11.) Consequently, the Court's findings as a matter of law that the '300 and '740 Registrations are valid as to the applicable Photographs preclude Defendants from asserting their registration defense.

Defendants' Position

    Defendants will assert the following defenses at trial[1]:

    a. Defendants will assert that Gaffney does not own copyright in Photograph I04, because the work is in the public domain. (First Action First and Third Affirmative Defense). Photograph I04 entered the public domain when it was published with Gaffney's authorization in the *Daily Record* newspaper on or shortly before November 23, 1977 without proper copyright notice. Copyright Act of 1909, § 26. Because Gaffney does not own copyright in Photograph I04, all of his claims relating to Photograph I04 are barred under 17 U.S.C. § 106. Defendants' public domain defense is not precluded by the Court's Summary Judgment Order, which denied Defendants' motion for summary judgment on the question of the validity of Plaintiff's copyright registrations but did not address Defendants' wholly independent public domain argument and did not grant Plaintiff's motion to dismiss the public domain defense. See Dkt. No. 112, pp. 14-16; Dkt. No. 145 pp. 7-9; Dkt. No. 154 (addressing the validity of the '740 Registration with respect to

---

[1] The following list shall not constitute a waiver of Defendants' right to pursue any and all available defenses that may be relevant and/or appropriate based upon the evidence presented by Plaintiff at the time of trial or otherwise available by law.

Photograph I04 only under the standard of *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941 (2022) applicable to a copyright registration invalidity defense and not under the standard applicable to the defense of public domain set forth in *Goldsmith v. Max*, 1981 WL 1428, *5 (S.D.N.Y. Mar. 31, 1981) (evidence that plaintiff intended to protect rights in photograph is insufficient where "the record is devoid of evidence that she in fact protected those rights.")

b. Defendants' copyright invalidity and fraud on the Copyright Office defenses with respect to Photographs I01, I05 and I08 ((First Action First, Fifth and Sixth Affirmative Defenses) are not precluded by the Court's Summary Judgment Order, which declined to issue the order Plaintiff requested declaring Defendants' fraud on the Copyright Office defense invalid as a matter of law and therefore left open for trial the disputed factual question of whether Gaffney knew of the prior publications at the time he submitted the '300 Registration application. See Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration, Dkt. No. 158 p. 4.

c. Defendants' fraud on the Copyright Office defense with respect to Photographs I04, I10-I12, I14-I17, I22, and I25-I26 (First Action First and Sixth Affirmative Defenses) is not precluded by the Court's Summary Judgment Order, which declined to issue the order Plaintiff requested declaring Defendants' fraud on the Copyright Office defense invalid as a matter of law and therefore left open for trial the disputed factual question of whether Gaffney knew of the prior publications at the time he submitted the '740 Registration application. See Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration, Dkt. No. 158 p. 4 and n.3.

d. Defendants will assert a defense of license with respect to all of the Muhammad Ali Entities' alleged infringing uses of the Photographs. (First and Second Action Seventh Affirmative Defense). With respect to alleged infringing social media and non-social media uses, Defendants

will assert that Paragraph 10.2 of the 2011 License Agreement between MAE and Gaffney (the "MAE Agreement" or "Agreement") authorized Defendants and its sublicensees to use the Photographs after the expiration of the MAE Agreement. Section 10.2 of the MAE Agreement provided that upon expiration of the Agreement, MAE maintained the right "to exercise the license rights granted it in Paragraph 1.1 with respect to all licenses and/or agreements made prior to the date of termination."

e. Defendants will assert that their use of the Photographs for instructional purposes, including all uses of the Photographs in Brand Books, Social Media Guidelines, and communications with licensees that illustrate appropriate uses of Muhammad Ali's name, image and likeness constitute non-commercial fair uses.

f. Defendants will assert that Gaffney cannot meet his burden of proving Claim II in both Actions (vicarious infringement as to alleged copyright infringements committed by Defendants' licensees), because he cannot prove any underlying act of copyright infringement by Defendants' licensees. Paragraph 10.2 of the 2011 License Agreement between MAE and Gaffney (the "MAE Agreement" or "Agreement") authorized Defendants' sublicensees to use the Photographs after the expiration of the MAE Agreement. In addition, Gaffney cannot prove that Defendants had the right and ability to supervise the alleged infringing conduct, or that they had an obvious and direct financial interest in the alleged infringement.

g. Defendants will assert that Gaffney cannot meet his burden of proving Claim III in both Actions (contributory infringement as to alleged copyright infringements committed by Defendants' licensees), because he cannot prove any underlying act of copyright infringement by Defendants' licensees. Paragraph 10.2 of the 2011 License Agreement between MAE and Gaffney (the "MAE Agreement" or "Agreement") authorized Defendants' sublicensees to use the

Photographs after the expiration of the MAE Agreement.  In addition, Gaffney cannot prove that Defendants, with knowledge of the alleged infringing activity, induced, caused or materially contributed to the alleged infringing conduct of any licensee.

h. Defendants will assert that Gaffney cannot meet his burden of proving Claim V in the First Action (Vicarious violation of DMCA under 17 U.S.C. § 1202), because he cannot prove any third-party violation of the DMCA and because he cannot prove that Defendants had the right and ability to supervise the alleged third-party DMCA violations, or that they had an obvious and direct financial interest in the alleged third-party violations.

i. Defendants will assert that Gaffney is unable to establish any actual damages suffered by him "as a result of the infringement." 17 U.S.C. § 504(b).  (First and Second Action Thirteenth and Fourteenth Affirmative Defense).

j. Defendants will assert that Gaffney cannot establish that Defendants generated any direct or indirect profits attributable to the alleged infringement that could provide a basis for disgorgement of profits under 17 U.S.C. § 504(b). (First and Second Action Thirteenth and Fourteenth Affirmative Defense).

k.  Defendants will assert that Gaffney is time-barred from recovering any damages prior to September 25, 2015 for his claims in the First Action or any damages prior to September 1, 2017 for his claims in the Second Action. 17 U.S.C. § 507(b). (Second and Thirteenth Affirmative Defense in First and Second Action).

l. Defendants will assert that any monetary damages available to Gaffney must be reduced under the doctrine of apportionment. (Eleventh Affirmative Defense in First and Second Action).

m. Defendants will assert that if Gaffney sustained any damage, which Defendants deny, such damages were proximately caused by the acts or omissions of others, and Defendants are

only liable for that portion of damages which corresponds to their own degree of responsibility (First and Second Fifteenth and Sixteenth Affirmative Defense).

n. Defendants will assert that Gaffney is not entitled to injunctive relief, because he cannot prove (1) that he has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of hardships between Defendants and Gaffney, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. (Twelfth Affirmative Defense in First and Second Action).

o. Without waiving any defense that may be established by evidence presented in support of the defenses asserted above or by Gaffney's failure to meet his burden of proof on any element of his claims, Defendants will not present separate argument at trial on the following previously asserted defenses in both the First and Second Action: failure to obtain registration of each work prior to commencement of action (Fourth Affirmative Defense), estoppel, waiver and/or acquiescence (Eighth Affirmative Defense), unclean hands (Ninth Affirmative Defense), no right to statutory damages and attorney's fees (Tenth Affirmative Defense), and unconstitutionally excessive statutory damages (Seventeenth Affirmative Defense).

2. Defendants identify the following claims of Plaintiff as previously asserted but not to be tried:

The Court's Memorandum Opinion and Summary Judgment Order has dismissed the following of Gaffney's claims:

a. Claim I in both Actions as to any Photographs not identified in Plaintiff's March 3, 2022 letter to the Court as "at issue" in the consolidated action. (Dkt. No. 151). (Summary Judgment Order, Dkt. No. 154, p. 2 n.5);

b. Claims II and III in both Actions with respect to non-licensees of Defendants;

c. Claims II and III in both Actions, as to any Photographs not identified in Plaintiff's March 3, 2022 letter to the Court as "at issue" in the consolidated action (Dkt. No. 151). (Summary Judgment Order, Dkt. No. 154, p. 2 n.5);

d. Claim IV in both Actions (Summary Judgment Order, Dkt. No. 154, p. 15);

e. Claim V in the First Action as to any Photographs not identified in Plaintiff's March 3, 2022 letter to the Court as "at issue" in the consolidated action (Dkt. No. 151). (Summary Judgment Order, Dkt. No. 154, p. 15 and p. 2 n.5)

f. Claim V in the Second Action;

g. Claims for statutory damages or attorney's fees for any alleged infringing uses of Photographs I02, I04, I06, and I10-I28 (Summary Judgment Order, Dkt. No. 154, p. 3 n.10).

h. Any claim in the First or Second Action for enhancement of statutory damages on grounds of willfulness (Summary Judgment Order, Dkt. No. 154, p. 15 n. 18).

The following Defendants were never properly served and therefore all Claims against them are no longer part of this Consolidated Action and are not to be tried:

a. Roots Of, Inc., a California corporation d/b/a "Roots of Fight"; and

b. DOES 1-10

**E.    Jury Trial**

Plaintiff's Position

Plaintiff respectfully requests that this case be tried with a jury over a period of seven (7) days.

Defendants' Position

Defendants do not contest Gaffney's demand for a jury trial.  Defendants anticipate that five (5) trial days will be required for this consolidated action.

**F.     Consent to Trial by Magistrate Judge**

The parties have not consented to trial of the case by a Magistrate Judge.

**G.     Stipulations of Fact or Law**

**Stipulations of Fact**

1.     Gaffney is the sole author of the photographs I01-I28.  (PSMF 46 as modified by DCSMF 46).

2.     One of the terms of the License Agreement was that MAE was required to obtain Gaffney's approval rights prior to MAE's exploitation of the Photographs.  (PSMF 20 as modified by DCSMF 20).

3.     MAE owns the intellectual property rights and rights of publicity in the name, likeness, and other indicia of personal identity of Muhammad Ali, a professional boxer, known the world over simply as "The Greatest." (DSMF ¶10 and PCSM ¶ 10).

4.     Since 2013, MAE has been a subsidiary of ABG. (DSMF ¶ 12 and PCSMG ¶ 12).

5.     ABG is a brand development and licensing company that acquires, manages, and builds long-term value in prominent consumer brands. (DSMF ¶11 and PCSMF ¶ 11).

6.     Michael Gaffney is a professional photographer who took photographs of Muhammad Ali at various times in 1977 and 1978. (DSMF ¶ 13 and PCSMF ¶ 13).

7.     On February 1, 2011 Gaffney and MAE entered into an agreement (the "MAE Agreement").   (DSMF ¶ 14 as modified by PCSMF ¶ 14).

8.     The term of the License Agreement between Gaffney and MAE expired on January 31, 2015 (Allen Decl., Ex. 9).

9.      Gaffney commenced the First Action on September 25, 2018. (Defendant's Statement of Material Facts, Dkt. No. 113 ("DSMF" ¶1); Plaintiff's Counterstatement of Material Facts, Dkt. No. 140 ("PCSMF"), ¶ 1)

10.     MAE and ABG filed a Joint Answer and Affirmative Defenses on February 8, 2019. (DSMF ¶2 and PCSMF ¶ 2)

11.     Gaffney filed a Second Amended Complaint on July 14, 2020. (DSMF ¶ 4 as modified by PCSMF ¶ 4)

12.     The Muhammad Ali Entities filed a joint Answer and Affirmative Defenses to the Second Amended Complaint on July 31, 2020. (DSMF ¶ 5 and PCSMF ¶ 5)

13.     On September 1, 2020 Gaffney filed a Second Action asserting causes of action against the Muhammad Ali Entities for direct copyright infringement and violations of the DMCA with respect to three additional photographs identified as Photographs I23 and I27-I28. (DSMF ¶ 6 and PCSMF ¶ 6)

14.     The Muhammad Ali Entities filed a joint Answer and Affirmative Defenses to the Second Action on August 24, 2021. (DSMF ¶ 8 and PCSMF ¶ 8).

15.     On September 9, 2021, the court consolidated these actions. (DSMF ¶9 and PCSMF ¶ 9).

16.     On or about February 22, 2008, Gaffney applied to register a work titled "Muhammad Ali Collection I ali 001, 002, 003, 004, 005, 006, 007, 008, 009, 010, 011, 012, 013, 014, 015, 016, 017" ("Collection I").   (DSMF ¶ 33 and PCSMF ¶ 33).

17.     Gaffney personally certified the application to register Collection I on or about February 22, 2008. (DSMF ¶34 and PCSMF ¶ 34).

18.     Photographs I04 and I06 are not included in the '300 Copyright Registration for Collection I.

19.     ABG reproduced and distributed Photograph I04 to TAG Heuer, a licensee of ABG, on or around May 30, 2018.  ABG_002299-2318.

20.     From the third quarter of 2013 through the third quarter of 2018, the Muhammad Ali Entities paid royalties to Gaffney in the amount of $2,036. (DSMF ¶ 98 as modified by PCSMF ¶ 98).

21.     Gaffney applied to register a work titled "The Champ My Year With Muhammad Ali", on or about June 4, 2018. (DSMF ¶ 37 and PCSMF ¶ 37).

22.     Defendants' Exhibit 25 (MG-MAEABG000002-000008) is a true and correct copy of the application to register the book "The Champ My Year With Muhammad Ali." (Dkt. No. 114-5) .

23.     The '740 Registration purports to register the book "The Champ My Year With Muhammad Ali" as a nondramatic literary monograph. (Plaintiff Brief in Opposition to Summary Judgment, Dkt. No. 137, p. 22).

24.     Gaffney personally certified the application underlying '740 Registration on June 4, 2018. (DSMF ¶ 38 and PCSMF ¶ 38).

25.     The effective date of the '740 Registration is June 12, 2018. (DSMF ¶ 41 and PCSMF ¶ 41).

26.     The '740 Registration identified "text, photograph(s)" as "[n]ew materials included in this claim" and identified "some text and photograph(s) by others" as "excluded material."

27.     Following the alleged expiration of the MAE Agreement on January 31, 2015, Gaffney continued to receive royalty payments from MAE under the contract through 2018. (DSMF ¶103 and PCSMF ¶ 103).

28.     Gaffney does not control the rights of publicity in Muhammad Ali's name, likeness or image, although Gaffney can sell copies of the Photographs so long as he does not imply the endorsement or sponsorship of Ali.  Gaffney can also license the right to copy the Photographs in connection with products or services to third parties, so long as he does not purport to license rights that he does not own.. (DSMF ¶91 as modified by PCSMF ¶ 91).

29.     At the time of his deposition, Gaffney testified that over his entire career, Gaffney has generated about $30,000 in revenue from use of the Photographs. (DSMF ¶ 99 and PCSMF ¶99).

30.     Gaffney did not attempt to make use of the Photographs for social media until March 2018 and has never licensed such use, aside from the MAE Agreement. (DSMF ¶ 102 and PCSMF ¶ 102).

**Stipulations of Law**

1.     Plaintiff bears the burden of proving each of his claims by a preponderance of the evidence.

2.     Under the Copyright Act, a copyright owner has among other things, the exclusive right to do or to authorize someone else to do certain things with the copyrighted work.  For photographs, these include all of the following:

    a.  to reproduce or copy the copyrighted work;

    b.  to prepare derivative works based on the copyrighted work;

    c.  to distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

d.   the right to display the copyrighted works publicly.

3.      Photographs are works of authorship subject to copyright protection. *See Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992).

4.      An owner of a copyright can give permission to someone to use a copyrighted work. This is called a license.

5.      "[A] claim for copyright infringement lies when a party's use of copyrighted material exceeds the scope of its license." John Wiley & Sons, Inc. v. DRK Photo, 998 F. Supp. 2d 262, 287 (S.D.N.Y. 2014), aff'd, 882 F.3d 394 (2d Cir. 2018).

6.      The Copyright Act of 1909 applies to photographs taken by Gaffney before January 1, 1978).

7.      To establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991).

8.      Posting photographs to social media constitutes a reproduction and public display of the photographs under the meaning of the Copyright Act of 1976. *Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 193 (S.D.N.Y. 2021).

**[Ownership/Standing]**

9.      To bring a valid claim of copyright infringement under the Copyright Act, a plaintiff must prove, *inter alia,* that he is the owner of the copyright interests in the Photographs at issue.

10.     To bring a valid claim under the DCMA, a plaintiff must prove, *inter alia,* that he is the owner of the copyright interests in the Photographs at issue.

**[License]**

11.     A valid copyright license is a complete defense to a claim of copyright infringement, where the licensee uses the copyright as authorized by the license.

**[Vicarious DMCA]**

12.     To prove a vicarious DMCA Section 1202 violation by MAE or ABG, Plaintiff must prove a preponderance of the evidence, first, that a third party committed a violation of DMCA Section 1202, and second, that MAE or ABG is vicariously liable for that violation.

13.     For purposes of DMCA Section 1202, "copyright management information" means any of the following conveyed in connection with Plaintiff's photographs: (1) the title and other information identifying the photographs, including the information set forth on a notice of copyright; (2) the name of, and other identifying information about, the author of the photographs; (3) the name of, and other identifying information about, the copyright owner of the photographs, including the information set forth on a notice of copyright; (4) terms and conditions for use of the photographs; and (5) identifying numbers or symbols referring to such information or links to such information.  Copyright management information does not, however, include any personally identifying information about a user of a work, in this case, the photographs.

14.     To prove a violation of DMCA Section 1202(a), Plaintiff must prove by a preponderance of the evidence that a person or entity – in this case, a licensee of MAE or ABG – (1) provided or distributed copyright management information that was false; and (2) knew that the copyright management information was false at the time they provided or distributed the copyright management information; and (3) provided or distributed the false copyright management information with the intent to induce, enable, facilitate or conceal copyright infringement. Each element must be met as to each individual alleged violation of Section 1202(a).

**[Damages]**

15.   The copyright owner is entitled to recover the actual damages suffered as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.

16.   It is important that these two categories of compensation have different justifications and are based on different financial data.   The award of the infringer's profits examines the facts only from the infringer's point of view.   If the infringer has earned a profit, this award makes him disgorge the profit to ensure that he not benefit from his wrongdoing. The award of the owner's actual damages looks at the facts from the point of view of the copyright owner; it undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal act. *Davis v. Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001).

17.   The amount of Gaffney's actual damages or Defendants' profits are not affected by whether Defendants, as the infringer, knew or intended to infringe Gaffney's copyright in the Photographs.

18.   Gaffney is entitled to recover any profits that Defendants earned that are attributable to the infringement.

19.   The division of profits between those portions attributable to the infringement and those attributable to other sources does not require mathematical exactness.   A reasonable approximation is enough if it allows a rational separation of the net profits so that neither party may have what rightfully belongs to the other.

20.   The infringer may show that the existence and amount of its profits are not the natural and probable consequences of the infringement alone, but are also the result of other factors which either add intrinsic value to the product or have independent promotional value. Where such

a showing is made, apportionment is required.

21.     Evidence of profits offered by a copyright owner need not reflect profits derived solely and directly from the infringing activity. *Fournier v. McCann Erickson,* 242 F. Supp 2d 318, 327 (S.D.N.Y. 2003).

22.     An infringement by Defendants of a particular Photograph that began after its registration date means that Gaffney may elect to recover an award of statutory damages with respect to that particular Photograph. 17 U.S.C. §§ 412, 504.

23.     Where statutory damages are permitted, Gaffney may elect a statutory damage award, established by Congress for each applicable work infringed.  Its purpose is not only to compensate the plaintiff for his losses, which may be hard to prove, but also to penalize the infringer and deter future violations of the copyright laws.  The amount of statutory damages is not less than $750, nor more than $30,000 for each work infringed.  When awarding statutory damages, all parts of a compilation constitute one work.

24.     Actual damages may not be based on undue speculation.

25.     For purposes of a plaintiff's burden to present proof of a defendant's gross revenues that are attributable to infringement, the term "gross revenue" means gross revenue reasonably related to the infringement, not unrelated revenues.  The term should not be construed so broadly as to include revenue from lines of business that were unrelated to the act of infringement.

26.     It is insufficient for a plaintiff to simply show gross revenues from the sale of everything a defendant sells; copyright law does not allow for speculative recovery.

27.     A plaintiff may not obtain a "double recovery," or recovery for both actual damages and a defendant's profits to the extent those measures of damages overlap.  Therefore, an award of infringement profits may not include any amount that has already been included in the

calculation of a plaintiff's actual damages.

28.     Each timely registered, infringed work is entitled to one and only one award of statutory damages within the statutory range.  This is true not matter how many acts of infringement of that work are alleged, how many copies were made, how widely they were distributed, or how many persons and entities were involved.

29.     Any or all of the following factors may be considered in determining an appropriate statutory damages award within the statutory range for an infringement action: (1) a defendant's states of mind,; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) a defendants' cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

30.     Any amounts awarded to a plaintiff in actual damages for violations of the DMCA must compensate him for injury sustained as a result of the DMCA violation alone, not for harm suffered as a result of infringement of a plaintiff's copyright.

31.     A plaintiff must prove actual damages for violations of the DMCA by a preponderance of the evidence.

32.     Any amount included in calculating a plaintiff's actual damages for violations of the DMCA may not be included in an award of profits for violations of the DMCA.

33.     To establish entitlement to disgorge profits as damages for a violation of the DMCA, a plaintiff must prove by a preponderance of the evidence that any such profits are attributable to the DMCA violation alone, not for harm suffered as a result of infringement of a plaintiff's copyright.

34.     In determining the appropriate amount to award in statutory damages for each

DMCA violation, the following factors may be considered: (1) the expenses that a defendant saved and the profits that they earned because of the violation; (2) the revenues that a plaintiff lost because of the violation; (3) the difficulty of proving a plaintiff's actual damages; (4) the circumstances of the violation; (5) whether the DMCA was violated intentionally or innocently; and (6) deterrence, if any, of future violations.

35.     A plaintiff may not recover twice against a defendant for the same injury.  Any damages award for the DMCA claim must be limited to the component of injury that a plaintiff sustained for this claim, if any, separate from whatever injury he is compensated for by a damages award for copyright infringement.

36.     To be entitled to injunctive relief, a plaintiff must prove (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between defendants and plaintiff, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

**[Reasonable Attorney's Fees/Prevailing party]**

37.     Under 17 U.S.C. § 505, a court may award reasonable attorney's fees to the prevailing party in a copyright infringement action.

38.     A Court's discretion to award reasonable attorney's fees to a prevailing party is informed by several nonexclusive factors, including frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence.

## H. Witnesses Offered as Part of Case-in-Chief

Plaintiff's Witnesses

      1. Michael Gaffney (in person)

      2. Professor Jeffrey Sedlik (in person)

      3. JoJo Dizon (in person)

      4. Katie Jones (in person)

      5. Adam Kronengold (in person)

      6. Kerri Wright Lewis (in person)

      7. Jasen Wright (in person)

Defendants' Witnesses

      1. Michael Gaffney (in person)

      2. Adam Kronengold (in person)

      3. Katie Jones (in person)

      4. JoJo Dizon (in person)

      5. Kerri Wright Lewis (in person)

      6. Christina Shanahan (in person)

      7. Brian Buss (in person)

## I. Designation of Deposition Testimony as Part of Case-in-Chief

Plaintiff's Designation

| Plaintiff's Designation of Deposition Testimony | Defendants' Cross-Designation of Deposition Testimony | Defendants' Objections to Plaintiff's Designation |
|---|---|---|
| Buss Dep. Tr. at 12:11-22 | | |
| Buss Dep. Tr. at 41:1-43:12 | | 41:13-22 Calls for legal conclusion |

| | | |
|---|---|---|
| Buss Dep. Tr. at 53:4-54:20 | 48:1-52:23, 55:16-20; Brian Buss Errata Sheet | |
| Buss Dep. Tr. at 56:13-57:19 | | |
| Buss Dep. Tr. at 60:13-19 | | Calls for legal conclusion |
| Buss Dep. Tr. at 63:7-12 | | Calls for legal conclusion |
| Buss Dep. Tr. at 65:23-68:13 | | |
| Buss Dep. Tr. at 70:2-21 | 70:22-72:23 | |
| Buss Dep. Tr. at 81:3-16 | 80:14-81:2 | |
| Buss Dep. Tr. at 94:9-17 | | Calls for speculation/improper opinion |
| Buss Dep. Tr. at 149:22-161:20 | | 151:22-152:15 Relevance |
| Buss Dep. Tr. at 169:6-17 | 140:5-143:8; 165:9-13; 166:1-167:22;  169:18-175:18 | |
| Buss Dep. Tr. at 177:4-9 | | |
| Dizon Dep. Tr. at 26:11-27:11 | | |
| Dizon Dep. Tr. at 29:10-31:6 | | |
| Dizon Dep. Tr. at 37:10-38:20 | | |
| Dizon Dep. Tr. at 40:5-43:21 | | 40:5-41:5; 41:17-24; 42:1-6; 42:12-22 – Improper opinion/speculation |
| Dizon Dep. Tr. at 47:12-19 | | |
| Dizon Dep. Tr. at 49:21-50:7 | | Improper opinion |
| Dizon Dep. Tr. at 53:13-54:20 | | 53:13-18 – Improper opinion/speculation; 54:11-20 – Relevance |
| Dizon Dep. Tr. at 57:2-13 | | Improper Opinion |
| Dizon Dep. Tr. at 59:9-60:19 | | Improper Opinion |
| Dizon Dep. Tr. at 66:22-67:7 | | Improper Opinion |
| Dizon Dep. Tr. at 68:14-72:17 | | |
| Dizon Dep. Tr. at 80:10-81:12 | | 81:6-12 Speculation/lack of personal knowledge |
| Dizon Dep. Tr. at 84:14-86:15 | | 84:25-85:14 – Speculation/lack of personal knowledge; 85:19-25 Relevance; 86:1-15 Relevance |
| Dizon Dep. Tr. at 89:15-90:13 | | |
| Dizon Dep. Tr. at 92:19-93:10 | | |

| | | |
|---|---|---|
| Dizon Dep. Tr. at 101:21-102:22 | | 102:2-6; 102:15-22 – Attorney testifying |
| Dizon Dep. Tr. at 104:4-19 | | Speculation/lack of personal knowledge |
| Dizon Dep. Tr. at 113:4-7 | | Improper Opinion |
| Dizon Dep. Tr. at 116:16-23 | | Speculation/lack of personal knowledge |
| Dizon Dep. Tr. at 120:1-18 | | |
| Dizon Dep. Tr. at 123:3-124:7 | | |
| Dizon Dep. Tr. at 129:11-130:24 | | |
| Dizon Dep. Tr. at 134:2-135:16 | | |
| Jones Dep. Tr. at 15:6-17:24 | | 17:11-24 improper opinion/calls for speculation |
| Jones Dep. Tr. at 19:12-21 | | |
| Jones Dep. Tr. at 21:7-24 | 174:15-175:12 | |
| Jones Dep. Tr. at 23:2-6 | | |
| Jones Dep. Tr. at 27:5-16 | | Speculation/lack of personal knowledge |
| Jones Dep. Tr. at 29:15-34:8 | | |
| Jones Dep. Tr. at 44:9-15 | | Relevance |
| Jones Dep. Tr. at 46:5-9 | | |
| Jones Dep. Tr. at 48:7-18 | | |
| Jones Dep. Tr. at 53:2-54:22 | | |
| Jones Dep. Tr. at 58:10-17 | | |
| Jones Dep. Tr. at 61:10-62:12 | | |
| Jones Dep. Tr. at 74:18-24 | | |
| Jones Dep. Tr. at 80:8-81:4 | 79:25-80:6 | 80:19-81:4 – Speculation/lack of personal knowledge |
| Jones Dep. Tr. at 84:9-25 | 83:19-84:8; 84:25-85:1-12 | |
| Jones Dep. Tr. at 91:20-92:25 | | 91:20-92:8 – Speculation/lack of personal knowledge |
| Jones Dep. Tr. at 93:6-94:1 | | |
| Jones Dep. Tr. at 96:19-97:1 | | |
| Jones Dep. Tr. at 111:15-112:2 | | |
| Jones Dep. Tr. at 113:2-114:20 | | Relevance |
| Jones Dep. Tr. at 117:15-120:25 | | Relevance |
| Jones Dep. Tr. at 131:6-133:17 | | Relevance |
| Jones Dep. Tr. at 155:13-160:14 | | 155:13-20, 157:18-158:8, 158:19-25; 160:7-14 - Speculation/lack of personal knowledge |

| | | |
|---|---|---|
| Jones Dep. Tr. at 167:23-172:21 | | 167:23-171:13 - Relevance |
| Kronengold Dep. Tr. at 19:16-20:8 | | |
| Kronengold Dep. Tr. at 23:11-23 | | |
| Kronengold Dep. Tr. at 57:10-62:15 | | 59:9-60:8 Relevance |
| Kronengold Dep. Tr. at 68:11-19 | | |
| Kronengold Dep. Tr. at 87:23-88:7 | | |
| Kronengold Dep. Tr. at 92:12-95:21 | | 95:9-21 – Improper opinion/lack of personal knowledge |
| Kronengold Dep. Tr. at 118:4-8 | | |
| Kronengold Dep. Tr. at 121:2-122:10 | | 121:6-122:10 - Relevance |
| Kronengold Dep. Tr. at 126:11-15 | | Relevance/attorney testifying |
| Kronengold Dep. Tr. at 128:8-142:4 | | 134:14-22 – Attorney testifying; Relevance 134:24-135 - Relevance; 137:19-141:14 – lack of personal knowledge/speculation; 141:8-14 – attorney testifying |
| Kronengold Dep. Tr. at 145:14-18 | | Relevance |
| Kronengold Dep. Tr. at 148:17-149:15 | 149:16-25 | |
| Kronengold Dep. Tr. at 153:16-17 | 153:2-15; 153:18-154:2 | |
| Kronengold Dep. Tr. at 155:3-163:7 | | 157:11-17 – Relevance |
| Lewis Dep. Tr. at 20:18-22:25 | | 21:14-22:25 relevance |
| Lewis Dep. Tr. at 25:20-26:11 | | |
| Lewis Dep. Tr. at 40:11-23 | | |
| Lewis Dep. Tr. at 44:24-45:10 | | |
| Lewis Dep. Tr. at 57:8-58:15 | | Assumes facts not in evidence; relevance |
| Lewis Dep. Tr. at 63:2-12 | | |
| Lewis Dep. Tr. at 65:7-66:23 | | Assumes facts not in evidence |
| Lewis Dep. Tr. at 98:22-24 | | |

Defendants' Designation

| Defendants' Designation of Deposition Testimony | Plaintiff's Cross-Designation of Deposition Testimony | Plaintiff's Objections to Defendants' Designation |
|---|---|---|
| **Michael Gaffney** | | |
| 75:21-78:4 | 79:24-80:16 | Relevance |
| 78:19-79:8 | | Relevance |
| 103:21-104:4 | 104:5-22 | Relevance |
| 110:13-16 | 104:5-22, 105:21-106:10, 110:17-20 | Relevance |
| 110:19-23 | 110:24-111:7 | Relevance |
| 111:12-16 | 111:7, 111:16-19 | Relevance |
| 111:21 | 111:7, 111:16-19 | Relevance |
| 112:5-10 | 112:10-16 | Relevance |
| 123:15-124:16 | 124:16-20 | Relevance |
| 125:4-127:14 | 124:16-20 | Relevance |
| 127:21-25 | 124:16-20, 127:25-128:17 | Relevance |
| 128:18-129:9 | 129:9-17 | Relevance |
| 129:24-130:10 | 130:14-15 | Relevance; hearsay |
| 130:20-24 | | Relevance |
| 131:7-132:4 | | Relevance |
| 132:12-133:22 | | Relevance; lack of personal knowledge, speculation |
| 136:11-137:14 | 137:16-20 | Relevance |
| 138:3-10 | 138:12-139:7 | Relevance |
| 159:5-161:17 | | |
| 169:22-171:5 | | Calls for legal conclusion |
| 193:12-196:3 | | |
| 199:6-10 | 199:6-21 | |
| 199:16 | 199:6-21 | |
| 237:4-25 | 238:2-6 | Relevance |
| 239:5-240:7 | | |
| 244:11-17 | | |
| **Jeffrey Sedlik** | | |
| 136:6-137:9 | | |
| 169:6-171:3 | 171:4-173:21 | |
| 190:2-193:3 | | |
| 206:22-207:16 | 204:5-206:21, 207:18-208:9 | |
| 208:10-15 | | |
| 221:18-223:18 | | |
| 228:8-16 | 228:17-229:4 | |

**J.       List of Exhibits as Part of Case-in-Chief**

Plaintiff's List of Exhibits as Part of Case-in-Chief:

1. Photographs that were reproduced, publicly displayed, or distributed by Defendants without authorization (Dkt. No. 59, Exhibit A)

2. '300 and '740 Copyright Registration Certificates (Dkt. No. 59, Exhibit B)

3. Non-Exclusive License Agreement between Gaffney and MAE (Dkt. No. 59, Exhibit C)

4. ABG Letter to Gaffney (Dkt. No. 59, Exhibit D)

5. December 28, 2017 article in the *Robin Report* (Dkt. No. 59, Exhibit E)

6. Email correspondence with ABG dated January 14, 2015 and February 11, 2015 (Dkt. No. 59, Exhibit F)

7. Cease and Desist Notice (Dkt. No. 59, Exhibit G)

8. List of Unauthorized Uses on Social Media Platforms (Dkt. No. 59, Exhibit H)

9. Screenshots from ROF's social media webpage (Dkt. No. 59, Exhibit K)

10. Images showing Falsification of CMI on Gaffney's Photograph (Dkt. No. 59, Exhibit M)

11. ABG_000297.xlsx spreadsheet **

12. ABG_000297.xlsx spreadsheet sorted by "Post Date" in ascending order (Dkt No. 127-1, Exhibit 2). **

13. Summary chart of Defendants' non-social media infringing uses (Dkt. No. 127-1, Exhibit 3)

14. Documents produced by Defendants (Dkt. No. 127-1, Exhibit 4)

15. Deposition testimony of Plaintiff Michael Gaffney (Dkt. No. 127-1, Exhibit 5)

16. Deposition testimony of Adam Kronengold as 30(b)(6) designee for Defendants (Dkt. No. 127-1, Exhibit 6)

17. Deposition testimony of Kerri Wright Lewis (Dkt. No. 127-1, Exhibit 7)

18. Screenshots of Defendants' verified social media accounts (Dkt. No. 127-1, Exhibit 8)

19. Agreement between Plaintiff Michael Gaffney and Defendant Muhammad Ali Enterprises, LLC (Dkt. No. 127-1, Exhibit 9)

20. Letter agreement between Plaintiff Michael Gaffney and Defendant Authentic Brands Group, LLC (Dkt. No. 127-1, Exhibit 10)

21. Emails produced by Defendants as ABG_002841 and ABG_002847 **

22. Email thread between Plaintiff Michael Gaffney and Katie Jones of Defendant Authentic Brands Group, LLC, with the Bates range MG-MAEABG_000176 to MG-MAEABG_000178 **

23. Deposition testimony of Michael Gaffney (Dkt. No. 137-2, Exhibit 13)

24. Preliminary export report of Professor Jeffrey Sedlik (Dkt. No. 137-2, Exhibit 14)

25. Deposition testimony of Katie Jones as 30(b)(6) designee for Defendants (Dkt. No. 137-2, Exhibit 15)

26. Deposition testimony of Jojo Dizon as 30(b)(6) designee for Defendants (Dkt. No. 137-2, Exhibit 16)

27. Document produced by Defendants with the Bates range ABG_002889 to ABG_002896 (Dkt. No. 137-2, Exhibit 17)

28. Document produced by Defendants with the Bates range ABG_002935 to ABG_002946 (Dkt. No. 137-2, Exhibit 18)

29. Document produced by Defendants with the Bates range ABG_002897 to

ABG_002903 (Dkt. No. 137-2, Exhibit 19)

30. Deposition testimony of Adam Kronengold as 30(b)(6) designee for Defendants (Dkt. No. 137-2, Exhibit 20)

31. ABG_003587.xlsx spreadsheet  **

32. Updated version of MG-MAEABG000768 (Dkt. No. 137-2, Exhibit 22)

33. MG-MAEABG 772, 773, 777, 778, 779, 782, 783, 784, 790, 792, 793, 796, 802, 804, 805, 806, 807, 808, 813, 816, 820, 821, 823, 824, 831, 833, 834, 841, 844, 847, 848, 849, 852, 853, 854, 858, 859, 860, 865, 866, 868, 869, 870, 872, 873, 874, 876, 877, 879, 888, 889, 892, 895, 897, 901, 904, 905, 906, 907, 908, 909, 910, 911, 914, 915, 917, 918  **

34. ABG_000113, '337, '1171, '1634, '1638, '1904, '2216, '2217, '2220, '2222, '2224, '2229, '2240, '2241, '2242, '2243, '2244, '2299, '2318, '2333, '3397, '3399, '3401, '3403, '3404, '3405, '3406, '3407, '3586, '3592, '3594, '3607, '3608, '3609, '3701, '3944, '3945, '4084, '4087, '4094, '4099 *

35. Kerri Wright 30(b)(6) Deposition ("Wright Dep.") Exhibit 49 (ABG_032804) **

36. Wright Dep. Exhibit 50

37. Wright Dep. Exhibit 51 **

38. February 12, 2021 30(b)(6) Deposition ("30(b)(6)") Exhibit 1 **

39. 30(b)(6) Exhibit 2 **

40. 30(b)(6) Exhibit 3 **

41. 30(b)(6) Exhibit 4 **

42. 30(b)(6) Exhibit 5 (ABG_002214) **

43. 30(b)(6) Exhibit 6 (ABG_001638) **

44. 30(b)(6) Exhibit 7

45. 30(b)(6) Exhibit 8 (ABG_003878) **

46. 30(b)(6) Exhibit 9 (ABG_003996)**

47. 30(b)(6) Exhibit 10 (ABG_004001)**

48. 30(b)(6) Exhibit 11 (ABG_004028)**

49. 30(b)(6) Exhibit 12 **

50. 30(b)(6) Exhibit 13 **

51. 30(b)(6) Exhibit 14 (ABG_032800) **

52. 30(b)(6) Exhibit 15 (ABG_032798)**

53. 30(b)(6) Exhibit 16 **

54. 30(b)(6) Exhibit 17 (MG-MAEABG000772)

55. 30(b)(6) Exhibit 18 (MG-MAEABG000848) **

56. 30(b)(6) Exhibit 19 **

57. 30(b)(6) Exhibit 20 (ABG_000590) **

58. Agreement between MAE LLC and GB Eye, Ltd. (ABG_000617 –'644) **

59. 30(b)(6) Exhibit 22 (ABG_000645) **

60. 30(b)(6) Exhibit 24 (ABG_000706) **

61. 30(b)(6) Exhibit 25 (ABG_000741) **

62. 30(b)(6) Exhibit 26 (ABG_000778) **

63. 30(b)(6) Exhibit 27 (ABG_000806) **

64. 30(b)(6) Exhibit 28 (ABG_002897) *

65. 30(b)(6) Exhibit 29 (ABG_002841) **

66. 30(b)(6) Exhibit 30 (ABG_002847) **

67. 30(b)(6) Exhibit 31 (ABG_000808) **

68. 30(b)(6) Exhibit 32

69. 30(b)(6) Exhibit 33 (ABG_000814) **

70. 30(b)(6) Exhibit 34 (ABG_000828) **

71. 30(b)(6) Exhibit 35 (ABG_000904) **

72. 30(b)(6) Exhibit 36 (ABG_003326) **

73. 30(b)(6) Exhibit 37 (ABG_004066) **

74. 30(b)(6) Exhibit 38

75. 30(b)(6) Exhibit 39 (ABG_002275) **

76. 30(b)(6) Exhibit 40 (ABG_002341) **

77. 30(b)(6) Exhibit 41 (ABG_002324) **

78. 30(b)(6) Exhibit 42 (ABG_004041) **

79. 30(b)(6) Exhibit 43 (ABG_002299) **

80. 30(b)(6)  Exhibit 44 (ABG_000965) **

81. 30(b)(6) Exhibit 45

82. 30(b)(6) Exhibit 46 (ABG_000309) *

83. 30(b)(6) Exhibit 47 (ABG_004075) *

84. 30(b)(6) Exhibit 48 (ABG_002330) *

85. Document produced by Defendants with the Bates number ABG_32441 *

86. Document produced by Plaintiff with the Bates range MG-MAEABG000919–
    '949**

87. Defendant's Counterstatement of Material Facts in Opposition to Plaintiff's Motion
    for Summary Judgment (Dkt. No. 133) **

29

Defendants' List of Exhibits as Part of Case-in-Chief

| Exhibit No. | Description | No Authenticity Objection* | No Objection on Any Grounds ** |
|---|---|---|---|
| 1 | MAE/Gaffney License Agreement dated February 1, 2011 (Gaffney Dep, Exh. 13) | | ** |
| 2 | Plaintiff's Complaint 18-18-cv-08770 Ex. A (Gaffney Dep. Exh. 2)[2] | * | |
| 3 | Land of Legends Agreement dated June 7, 1997 (Gaffney Dep. Exh. 12) | * | |
| 4 | Land of Legends Sales Sheet, MG-MAEABG000956 (Dkt. No. 115-1) | * | |
| 5 | U.S. Copyright VAu 964-300 Certified Deposit (Gaffney Dep. Ex. 10) | * | |
| 6 | U.S. Copyright Office Letter to Michael Gaffney dated July 31, 2008 (Dkt. No. 114-4) (Gaffney Dep. Exh. 9) | * | |
| 7 | Sales Records, MG-MAEABG000081-000111 | | ** |
| | MG-MAEABG0000112-115 | * | |
| 8 | Sales Records, MG-MAEABG000122-000143 | | ** |
| 9 | Sales Records, MG-MAEABG000957-000969 | | ** |
| 10 | MAE/Open Road License Agreement (ABG_032897-032908) | | |
| 11 | ABG/MAE/Tailgate Clothing Co. License ABG_000741-000766) | | ** |
| 12 | MAE/Uncommon LLC License (ABG_000778-000805) | | ** |
| 13 | ABG/MAE Letter to Tailgate Clothing Co. (ABG_000767-770) | | ** |
| 14 | ABG/MAE Letter to Uncommon LLC (ABG_000774-000777) | | ** |
| 15 | ABG/MAE Letter to Trends International LLC (ABG_771-000773) | | ** |

---

[2] Unless otherwise noted, all docket numbers and pleadings refer to the First Action, 1:18-cv-8770.

| Exhibit No. | Description | No Authenticity Objection* | No Objection on Any Grounds ** |
|---|---|---|---|
| 16 | MAE/American Classics License (ABG_000590-000616) | | ** |
| 17 | MAE/GB Eye License Agreement (ABG__000617-000644) | | ** |
| 18 | MAE/Malloy Distribution SRL License (ABG_000679-000701) | | ** |
| 19 | MAE/Pyramid License Agreement (ABG_000706-000733) | | ** |
| 20 | MAE/iCanvas License (ABG_000645-000678) | * | |
| 21 | Letter from Michael Gaffney to Jason Wright, dated January 14. 2015, MG-MAEABG00153-000154 (Gaffney Dep, Ex. 15) | | ** |
| 22 | Letter from Michael Gaffney to Jason Wright, dated Feb. 11, 2015, MG-MAEABG000156-000158 (Gaffney Dep. Ex. 16) | | ** |
| 23 | Email communications, MG-MAEABG000160-000192 | | ** |
| 24 | ABG_001652 (Gaffney Dep. Exh. 22) | | ** |
| 25 | Application to Register "The Champ My Year With Muhammad Ali" Copyright, MG-MAEABG000002-000008 | | |
| 26 | Expert Report of Brian Buss | | |
| 27 | Schedules for the Expert Report of Brian Buss | | |
| 28 | Plaintiff's Counterstatement of Material Facts in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 140) | | ** |
| 29 | MAE Social Media Sites (ABG_004247-032794) | | |
| 30 | Plaintiff's Responses and Objections to Defendants' First Set of Interrogatories (Sedlik Exh. 15) | * | |
| 31 | Plaintiff's Revised Responses and Objections to Defendants' | * | |

| Exhibit No. | Description | No Authenticity Objection* | No Objection on Any Grounds ** |
|---|---|---|---|
| | First Set of Interrogatories (Sedlik Exh. 16) | | |
| 32 | March 3, 2022 Letter from Robert Allen to Hon. George B. Daniels (Dkt. No. 151) | | ** |

**SO ORDERED:**

Hon. George B. Daniels
United States District Judge

FEB 0 1 2024

**STIPULATED AND AGREED TO:**

Date: _____

Respectfully submitted,

   */s/ Robert E. Allen*
Robert E. Allen (admitted *pro hac vice*)
Lawrence M. Hadley (*pro hac vice* in progress)
Jason C. Linger (*pro hac vice* in progress)
GLASER WEIL FINK HOWARD AVCHEN &
 SHAPIRO LLP
10250 Constellation Blvd., 19th Fl.
Los Angeles, CA 90067
Telephone: (310) 282-6280
Email: rallen@glaserweil.com
Email: lhadley@glaserweil.com
Email: jlinger@glaserweil.com

Jack Spinella
Spinella Law Group, LLC
425 Madison Avenue
New York, New York 10123
Telephone: (908) 947-2336
jspinella@spinellalawgroup.com

*Attorneys for Plaintiff*

   */s/ Jessica S. Rutherford* (with permission)
Jessica S. Rutherford, Esq.
Edmund J. Ferdinand, III, Esq.
Kathleen B. Moore, Esq.
Alexander R. Malbin, Esq.
FERDINAND IP, LLC

1

450 Seventh Avenue, Suite 1300
New York, NY 10123
Phone: (212) 220-0523
Fax: (203) 549-2339
jrutherford@fiplawgroup.com
jferdinand@fiplawgroup.com
kmoore@fiplawgroup.com
amalbin@fiplawgroup.com

*Attorneys for Defendants*

2

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties through the Court's Electronic Case Filing System.

*/s/ Robert E. Allen*
Robert E. Allen