**Glaser Weil**

10250 Constellation Blvd., 19th Fl.
Los Angeles, CA 90067

Robert E. Allen
**Direct Dial** 310.282.6280
**Direct Fax** 310.785.3580
**Email** rallen@glaserweil.com

Dear Judge Daniels:

Pursuant to the Court's instructions at the December 18, 2024 hearing on ABG's motions for judgment as a matter of law, Michael Gaffney hereby submits the following letter.

### (1) Did the jury commit "clear error" when it found that ABG acted willfully?

**No**. The jury's finding of willful copyright infringement is entitled to extraordinary deference under the "clear error" standard—the same standard that applies to witness credibility and factual determinations. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir. 2001) ("[W]illfulness is shown where 'the defendant recklessly disregarded the possibility that its conduct represented infringement.'") (reviewing jury's willfulness finding for "clear error"); *Agence France Presse v. Morel*, 2014 WL 3963124, at *4 (S.D.N.Y. Aug. 13, 2014) (affirming maximum statutory damages of $1.2M for willful infringement of 8 photos, finding no clear error). There was overwhelming evidence by which the jury could find that ABG acted with "reckless disregard[]," such as:

- Gaffney's termination/cease and desist letter sent to ABG in Mar. 2015. Ex. 51. "Courts have repeatedly found willfulness where a defendant receives a cease-and-desist letter but continues the infringing conduct." *Fendi Adele S.R.L. v. Burlington Coat Factory*, 689 F. Supp. 2d 585, 600-01 (S.D.N.Y. 2010) (such letter shows willfulness "***in and of itself***").
- ABG is a sophisticated, experienced company that manages IP rights for brands. *Castle Rock Entm't v. Carol Publ'g Group, Inc.*, 955 F. Supp. 260, 267 (S.D.N.Y.1997) (Sotomayor, D.J.) (finding willfulness where "defendants are sophisticated with respect to such matters"), *aff'd*, 150 F.3d 132 (2d Cir.1998); *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986) (defendant's position as an experienced publisher treated as a circumstance supporting a finding of willful infringement); *Yurman Design*, 262 F.3d at 112 (similar).
- ABG's employees knew they no longer had the right to use Gaffney's photographs, but did so anyway. Ex. 100 at 2 (Feb. 2017 email stating "We don't have a license to use [Gaffney's] imagery and haven't for a long time now," but instructing ABG's brand manager to accept payment and charge licensee at a "higher rate"), Ex. 167 (Mar. 2015 email instructing ABG's brand managers to stop using Gaffney's photographs). *Fitzgerald Pub. Co.*, 807 F.2d at 1115 ("internal memoranda revealed" that defendant knew limits on its rights).
- ABG's Rule 30(b)(6) witnesses testified that ABG no longer had the right to use Gaffney's photographs after the Term in the manner they were used. Ex. 180 at 50:06-07 (ABG's Jojo Dizon) ("whatever rights we got from this agreement ends on January 31, 2015"), 59:09-11 ("Q. So would you agree that after the term, ABG has no more rights with respect to the photographs? A. Yes."); Tr. at 578:20-579:1 (ABG's Katie Jones) ("Q. After the term expired … the only right that MAE had to use Gaffney's photos was for licensed products that Gaffney approved during the term and if the -- a photograph had been used prior to the agreement expiring, those products could still be sold; isn't that right? A. That sounds correct, yes.").
- Missing or false copyright credit. Ex. 4 at 1-22 (no credit to Gaffney on social media); Ex. 68 at 3-9 (ABG attributing copyright ownership to ABG, not Gaffney). *Fitzgerald Pub. Co.*, 807 F.2d at 1115 (willful defendant altered copyright notice without authorization).
- Various Misconduct: ABG continued to infringe for at least five years after the lawsuit was filed (until Q4 of 2023), provided false representations to the Court that it had paid "all" royalties owed to Gaffney, and a mere *two days before trial*, produced documents revealing

that ABG had withheld royalties from 2018 to 2023. Exs. 177, 178. *N.A.S. Import, Corp. v. Chenson Ent., Inc.*, 968 F.2d 250, 253 (2d Cir. 1992) (overturning district court finding that infringement was not willful where defendant continued to sell infringing article after its own attorney falsely represented that sales would cease); *Peer Int'l*, 887 F. Supp. at 566 (willful infringement where defendant used copyrighted works six months after filing of lawsuit).

**(2) Is the trier of fact permitted to find willful copyright infringement when the licensing agreement between the parties has <u>expired</u>?**

**Yes**. There is binding precedent finding willful copyright infringement as a matter of law, involving an expired license agreement. The fact that plaintiff and defendant were previously parties to such an agreement is cited by courts as a significant reason the infringement is willful.

- *Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.2d 228, 230 (2d Cir. 1982) (willful infringement where defendant sold the copyrighted works after the contract expired);
- *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 768 (11th Cir. 1996) (willful infringement where defendant broadcast works after copyright owner revoked defendant's license);
- *Peer Int'l Corp. v. Pausa Recs., Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (continued use of copyrighted works after termination of the license was "willful as a matter of law");
- *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 568 (S.D.N.Y. 1995) (Sotomayor, D.J.) (willful infringement where defendant, after receiving termination notice, continued to make and distribute copies, and also because defendant was an experienced music publisher);
- *White v. Marshall*, 771 F. Supp. 2d 952, 958 (E.D. Wis. 2011) ("the continued use of the copyrighted photos for more than three years after the license expired is without a doubt willful infringement");
- *Homeowner Options v. Brookline Bancorp, Inc.*, 754 F. Supp. 2d 201, 209 (D. Mass. 2010) (willful infringement where defendant did not renew license, but continued to use the works);
- *Jobete Music Co. v. Johnson Commc'ns, Inc.*, 285 F. Supp. 2d 1077, 1090-91 (S.D. Ohio 2003) (willful infringement "as a matter of law" where defendant "accidentally" continued to copyrighted works after license expired);
- *Entral Grp. Int'l, LLC v. 7 Day Cafe & Bar Inc.*, 2006 WL 8439052, at *9 (E.D.N.Y. Sept. 29, 2006) ("Where there is evidence of a past relationship between plaintiff and defendants, courts have inferred defendants' knowledge of the copyright and concluded that the conduct was willful."), *adopted in relevant part*, 2006 WL 8439053 (E.D.N.Y. Nov. 17, 2006);
- *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Inc.*, 996 F.2d 1366, 1382 (2d Cir. 1993) (upholding finding of willfulness where defendant acknowledged that it knew of the copyrights and continued publication after receiving a warning from plaintiff, even though defendant claimed to have a good faith belief that its actions were lawful);
- *EMI Ent. World, Inc. v. Karen Recs., Inc.*, 806 F. Supp. 2d 697, 705-06 (S.D.N.Y. 2011), *vacated on other grounds*, 2013 WL 2480212 (S.D.N.Y. June 10, 2013) ("a termination notice does create an inference that post-termination sales are willful infringement");
- *Barnaby Music Corp. v. Catoctin Broad. Corp. of N.Y.*, 1988 WL 84169, at *4 (W.D.N.Y. Aug. 10, 1988) (willful infringement was "without question" where the defendant continued to broadcast copyrighted works after license agreement expired); and
- *Gladys Music v. Ed Smith Prods., Ltd.*, 1994 WL 705265, at *4 (N.D.N.Y. Dec. 6, 1994) (willful infringement for use after license agreement terminated).

If defendant exceeds the scope or duration of a license agreement, the parties are treated as "strangers" and there is "no contractual relationship" at all. *Small Bus. Bodyguard Inc. v. House*

*of Moxie, Inc.*, 230 F. Supp. 3d 290, 305 (S.D.N.Y. 2017) ("Although [defendant] had a valid license to sell the [] Product, [defendant] 'utilized a copyrighted work in a manner or to an extent not authorized by the license agreement,' making its position 'no different from that of an infringer having no contractual relationship with the holder of the copyright.'"); *Marshall v. New Kids On The Block P'ship*, 780 F. Supp. 1005, 1009 (S.D.N.Y. 1991) ("Case law in this Circuit indicates that a copyright licensee can make himself a 'stranger' to the licensor by using the copyrighted material in a manner that exceeds either the duration or the scope of the license.").

**(3) Is the trier of fact permitted to find willful copyright infringement if the licensing agreement is <u>ambiguous</u> as to certain rights?**

**Yes**. Defendant may be liable for willful infringement, and pay maximum statutory damages, even when it asserts a "reasonable and good faith" defense based on an "ambiguous" license provision. *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288-89 (2d Cir. 1999). When defendant exceeds the scope of a license, it may be found to have acted willfully, such as where defendant is an "experienced" industry player. *Fitzgerald Pub. Co.*, 807 F.2d at 1114 ("although in some respects the contract is unclear," willful infringer had no right to change copyright notice); *Jacobsen v. Katzer*, 535 F.3d 1373, 1382 (Fed. Cir. 2008) ("An express (or possibly an implied) condition that a licensee must affix a proper copyright notice to all copies of the work that he causes to be published will render a publication devoid of such notice without authority from the licensor and therefore, an infringing act." (quoting Nimmer on Copyright § 10.15)). Here, the jury properly rejected ABG's license defense. Not only did ABG exceed the Term of the license by using the photographs in new ways after expiration, ABG failed to secure Gaffney's approval for its post-expiration uses, failed to give copyright credit to Gaffney as required, and failed to pay him all royalties within the required 60-day period. Ex. 94, § 1.2.1 (approval); § 6.1 (royalties must be paid within 60 days), § 7.1 (credit); *see* ECF 332 (Opp. to JMOL on Willfulness) 8-10, 15-16.

**(4) Did ABG enter into new agreements with its licensees and partners after the expiration of ABG's agreement with Gaffney?**

**Yes**. The Term expired on Jan. 31, 2015. Ex. 94. ABG's agreement with TAG Heuer had an effective date of Sept. 1, 2015. Ex. 26. That agreement—under which ABG received $4.55M—defines the "licensed property" as including "photographs … depict[ing] Muhammad Ali," which would have included Gaffney's photographs. Ex. 26 at 1, 3-4 ($6.5M license fee), Ex. 103 at 3 (ABG received $4.55M of the $6.5M license fee). The iCanvas agreement had an effective date of Oct. 1, 2015, and it was signed on Sept. 15, 2016. Ex. 41. The Roots of Fight agreement was executed in Mar. 2015. Ex. 27. Thus, ABG's agreements with TAG Heuer, Roots of Fight, and iCanvas were entered into *after* Gaffney's agreement expired. The Pyramid agreement was executed on January 15, 2015. Ex. 42. The GB Eye agreement was executed on June 1, 2014. Ex. 40. While the Pyramid and GB Eye agreements pre-dated the expiration of Gaffney's agreement, Gaffney's undisputed testimony was that he did not approve any uses in 2014 or 2015 or any uses by Pyramid or GB Eye. Tr. at 137:5-17; 258:7-268:16. Thus, ABG's distribution of the photographs to Pyramid and GB Eye constituted infringement. ABG approved *new* uses of the photographs by Pyramid through 2019. Ex. 32 (rows 165-66). Pyramid sold the photographs through 2023, without Gaffney's approval or credit. Exs. 177, 178.

**(5) Does accepting a royalty constitute a license or "approval" of ABG's uses?**

**No**. Acceptance of a royalty does not waive a claim for willful infringement or constitute an approval or license by the copyright owner. *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 321 (2d

Cir. 2022) (rejecting argument made by *willful infringer* that "since they made royalty payments," there was an implied agreement between the parties); *Kamakazi Music Corp. v. Robbins Music Corp.*, 522 F. Supp. 125, 135 (S.D.N.Y. 1981) (acceptance of $11,000 royalty did not waive *willful infringement*), *aff'd*, 685 F.2d 228 (2d Cir. 1982); *Caffey v. Cook*, 409 F. Supp. 2d 484, 501 n.6 (S.D.N.Y. 2006) (acceptance of royalties insufficient to confirm license or constitute waiver); *MLB Promotion Corp. v. Colour-Tex, Inc.,* 729 F. Supp. 1035, 1044 (D.N.J. 1990) (acceptance of royalties did not confirm license); *U.S. v. King Features Ent.*, 843 F.2d 394, 399 (9th Cir. 1988) (accepting $80,000 royalty did not waive copyright infringement claim: "Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it."). Gaffney's royalty statements did not communicate how ABG or its licensees were using the photographs, such as which or how the photograph was being used. Ex. 39 at 4-14. Furthermore, ABG stopped paying Gaffney royalties in 2018, even though Pyramid continued to sell the photographs through 2023 and paid revenue to ABG. Ex. 177, Ex. 178.

**(6) How did ABG infringe the 11 photographs eligible for statutory damages?**

ABG presented no evidence that: (1) Gaffney approved or received credit for any of the following post-Term uses, (2) that any of these uses pre-dated the expiration of Gaffney's agreement, or (3) ABG paid Gaffney's royalties within 60 days with respect to Pyramid. Ex. 94, § 10.2 (rights upon termination limited to "licenses and/or agreements made prior to the date of termination, provided that the royalties with respect to such period are paid and the appropriate statements for that period are furnished to Photographer"), § 6.1 (royalties must be paid within 60 days). ABG's documents showed that these uses did not start until after the Term had already expired. Ex. 32 (column AC).

| Photo | Undisputed Evidence of Infringement |
|---|---|
| Ali-01 | ▪ Sold by GB Eye on merchandise and in catalog after the Term (Ex. 32 (rows 139-78); Ex. 64 (rows 2070, 2075, 2443, 2453-54, 2601); Ex. 68 at 2, 6, 8, 9; Ex. 128 at 134)<br>▪ Sold by Pyramid from 2018-2023, while ABG withheld Gaffney's royalties (Ex. 90, Ex. 117, Tr. at 698:3-21) |
| Ali-02 | ▪ Used on Twitter, Instagram, and Facebook on 8/31/2015 (Ex. 4 at 1-3, Ex. 36)<br>▪ Copied by ABG after the Term (Ex. 95 at 2, Ex. 96 at 3) |
| Ali-04 | ▪ Copied by Open Roads after the Term (Ex. 95 at 2, Ex. 96 at 4) |
| Ali-05 | ▪ Sold by GB Eye and in catalog after Term (Ex. 32 (rows 120-30); Ex. 79; Ex. 128 at 133) |
| Ali-06 | ▪ Used on Twitter, Instagram, and Facebook on 7/27/2015 (Ex. 4 at 1-3, Ex. 36) |
| Ali-07 | ▪ Copied by ABG after the Term (Ex. 95, Ex. 96 at 6) |
| Ali-10 | ▪ Sold by Pyramid on a poster after the Term (Ex. 32, Ex. 95 at 5, Ex. 96 at 7)<br>▪ Sold by iCanvas on a poster (Ex. 86) |
| Ali-12 | ▪ Used on Twitter, Instagram, and Facebook on 3/31/2016 (Ex. 4 at 56-58) |
| Ali-15 | ▪ Used on Twitter, Instagram, and Facebook on 4/6/2015 (Ex. 4 at 17-19, Ex. 36)<br>▪ Sold by GB Eye after the Term (Ex. 32 (rows 76, 89, 102, 109, 111); Ex. 64 (rows (1983-84, 2075, 2464-65); Ex. 68 at 4; Ex. 129)<br>▪ Used by Roots of Fight on Instagram on 4/6/2015 (Ex. 9 at 4)<br>▪ Sold by Tailgate on t-shirt after the Term (Ex. 64 (rows 1983-84); Ex. 68 at 1; Ex. 64)<br>▪ Copied by ABG after the Term (Ex. 95 at 7, Ex. 96 at 9)<br>▪ Copied by Tricot Mondial after the Term (Ex. 95 at 7, Ex. 96 at 9)<br>▪ Copied by Pyramid after the Term (Ex. 95 at 7, Ex. 96 at 9) |
| Ali-16 | ▪ Sold by iCanvas on poster after the Term (Ex. 32 (rows 124, 131, 137); Ex. 89) |
| Ali-17 | ▪ Used by Roots of Fight on Instagram in derivative work on 5/3/2019 (Ex. 9 at 2-3) |

4

|  | <ul><li>Sold by GB Eye for wall art after the Term (Ex. 32 (rows 76, 88, 94); Ex. 64 (rows 2075, 2447, 2602); Ex. 68 at 3)</li><li>Created unauthorized derivative work and used it in marketing materials (Ex. 119 at 13)</li><li>Used on Twitter, Instagram, and Facebook on 4/30/2018 (Ex. 4 at 20-22, Ex. 36)</li></ul> |
|---|---|

**(7) Are ABG's license fees "reasonably related" to Gaffney's photos under *Davis v. Gap*?**

**Yes**. ABG earned revenue by purporting to license Gaffney's photographs to its partners, in exchange for license fees to ABG. The jury properly determined that the license fees that ABG received as consideration for such agreements was "reasonably related" to Gaffney's photographs.

- Tr. at 722:10-16 (ABG's Jones) ("Q. And what is the purpose of this provision [§ 1(d)] in the agreement? A. To let -- well, to make clear that partners would be getting photographs. Q. As part of the agreement, correct? A. As part of the agreement for their use. Yes. Q. *That was part of what they were paying for? A. Correct.*").
- Ex. 109 at 3 (§ 1(d)): "In the event that Licensor provides Licensee with photograph(s) of Muhammad Ali ("Photographs")"….
- Ex. 26 at 1 (TAG Heuer): "licensed property" includes "photographs … depict[ing] Muhammad Ali"; *id.* at 3-4, Ex. 103 at 3 (ABG received $4.55M of the $6.5M license fee).
- Ex. 67 at 6 (graphic using Gaffney photo for TAG Heuer was "created for the partnership").
- Tr. at 718:24-719:5 ("Q. [I]f [Open Road] downloaded one of Mr. Gaffney's photos, would that be within the scope of their license agreement? A. Yes. Q. And if Tailgate used one of Mr. Gaffney's photos, would that be within the scope of their license agreement? A. Yes.").
- Tr. at 720-723 (similar testimony for American Classics, Malloy, and GB Eye).
- Tr. at 726:5-11 ("Q. Do you remember that Mr. Allen showed you uses by Pyramid Posters of Mr. Gaffney's photos? A. I do. Yes. Q. Would those fall within the scope of this license agreement or any extension thereof, if they exist? A. Potentially. Yes.").
- Tr. at 816:1-4 ("you testified that the purpose of this provision was to make sure partners would be getting photographs as part of this agreement. Did I state what you said correctly? A. I believe so, yes.").

**(8) May the trier of fact award maximum statutory damages even though the license fees received by the copyright owner are comparatively smaller in amount?**

**Yes**. There need not be a "direct correlation between statutory damages and actual damages." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 126 (2d Cir. 2014); *Yurman Design*, 262 F.3d at 113 (upholding maximum statutory damages that had "little relationship" to actual damages because "statutory damages are not meant to be merely compensatory or restitutionary"); *Agence France Presse*, 2014 WL 3963124, at *15 (affirming jury award of $1.2 million in statutory damages, lost license fees of $275,000); *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 660 (S.D.N.Y.1996) ("a statutory damage award should significantly exceed the amount of unpaid license fee"). Here, the ratio of statutory damages to Gaffney's undisputed lost license fees ($1.65M to $362,665) is well within these guidelines.

**(9) Did ABG waive its right to challenge the non-inclusion of the *Bryant* factors?**

**Yes**. ABG never objected to the Court not including the non-standard *Bryant* factors in the jury instructions. Tr. at 970-971 ("thank[ing]" Court for removing instruction that statutory damages are punitive). *Emamian v. Rockefeller Univ.*, 971 F.3d 380, 387 (2d Cir. 2020) (a party must object on the record, not merely propose an instruction, to preserve argument); Fed. R. Civ. P. 51(c)(1).

Respectfully submitted,

ROBERT E. ALLEN
of GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP

**Attachments: All Trial Exhibits and Trial Transcript Portions Cited Herein**