UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
MICHAEL GAFFNEY,                                  :
                                                  :
                          Plaintiff,              :
                                                  :          MEMORANDUM DECISION
         -against-                                :          AND ORDER
                                                  :
MUHAMMAD ALI ENTERPRISES LLC;                     :          20 Civ. 7113 (GBD)(OTW)
AUTHENTIC BRANDS GROUP LLC; ROOTS OF,             :          18 Civ. 8770 (GBD)(OTW)
INC., d/b/a ROOTS OF FIGHT; and DOES 1-10,        :
                                                  :
                          Defendants.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

GEORGE B. DANIELS, United States District Judge:

Plaintiff Michael Gaffney brings these two actions against Defendants Muhammad Ali

Enterprises LLC ("MAE"), Authentic Brands Group LLC ("ABG"), Roots Of, Inc. ("Roots"), and

Does 1-10 alleging five different claims of copyright infringement and DMCA violations and

demanding actual and statutory damages and Attorneys' Fees pursuant to 17 U.S.C. §§ 504 and

1203. Specifically, Gaffney claims that Defendants inappropriately used 23 photographs that

Plaintiff took of boxing champion Muhammad Ali. On September 25, 2018, Gaffney commenced

*Michael Gaffney v. Muhammad Ali Enterprises LLC, et al.*, No. 18-cv-8770 (the "First Action"),

based on the bulk of the photos at issue. On September 1, 2020, he commenced *Michael Gaffney*

*v. Muhammad Ali Enterprises LLC, et al.*, No. 20-cv-7113, based on three additional photos. At

the conclusion of a six-day trial, a jury returned a verdict for Gaffney upon finding that he proved

by a preponderance of the evidence that Defendants directly, vicariously, and contributorily

infringed upon Plaintiff's copyrights. (Verdict Form, ECF No. 313.) The jury awarded Gaffney

$352,665.00 in actual damages and $750,000.00 in infringement profits or, in the alternative,

$1,650,000.000 in statutory damages based on a finding that the Defendants willfully infringed upon Gaffney's copyrights. (*Id.*)

Defendants now move for judgment as a matter of law that their infringement was not willful and that Photograph Ali-12 is not eligible for statutory damages or, in the alternative, for a new trial on statutory damages or remittitur. (Mot. for J. as a Matter of L. ("Willfulness Mot."), ECF No. 315.)  They also move for judgment as a matter of law to reduce Gaffney's award of Defendants' profits. (Mot. for J. as a Matter of L. ("Profits Mot."), ECF No. 318.)  Defendants' motion for a reduction in the profits award is GRANTED.  Defendants' motion regarding willfulness and statutory damages is DENIED.

## I. RELEVANT FACTUAL BACKGROUND

A more detailed factual record is set forth in this Court's September 7, 2022 Order granting and denying in part both parties' motions for summary judgment and is incorporated herein. (Mem. Decision and Order ("Summ. J. Order"), ECF No. 154, at 3–6.)  The evidence at trial most relevant to the instant motions is summarized below.

ABG is a brand development and licensing company that acquires, manages, and builds long-term value in prominent consumer brands. (*See* Pl.'s Counterstatement of Facts, ECF No. 140 ¶ 11.)[1]  MAE is a subsidiary of ABG that owns the intellectual property rights and rights of publicity in the name, likeness, and other indicia of the personal identity of Muhammad Ali. (*Id.* at ¶¶ 10, 12.)  Gaffney is a professional photographer who took photographs of Muhammad Ali from 1977 to 1978. (*Id.* at ¶ 13.)

On February 1, 2011, Gaffney entered into an Agreement with the Defendants (the "Agreement") to license the Ali photographs at issue. (*See* Agreement, Pl. Trial Ex. 94, ECF No.

---

[1] All citations refer to the First Action, unless stated otherwise.

316-3.) Under the Agreement, Gaffney provided MAE an "exclusive license" for two different uses: (1) the manufacture, sale, marketing, and distribution of products associated with Muhammad Ali and/or advertisements which feature an endorsement of a good or service by Ali; (2) for promotional and marketing purposes, including on social media; as well as a non-exclusive license (3) for editorial purposes. (*Id.* ¶ 1.1.) Use (1) required Gaffney's prior approval. (*Id.* ¶ 1.2.) The Agreement also required MAE to pay Gaffney royalties in the amount of 30% of merchandise sales and 50% of "royalties that MAE receive[d]" from editorial purposes. (*Id.* ¶¶ 5.1–5.2.) Upon expiration, Defendants retained the right to "exercise the license rights granted to it in Paragraph 1.1 with respect to all licenses and/or agreements made prior to the date of termination, provided that the royalties with respect to such period are paid." (*Id.* ¶ 10.2.) The Agreement expired on January 31, 2015. (*Id.* ¶ 2; *see* Pl.'s Counterstatement of Facts, ¶ 19.) On February 2, 2015, ABG approved production by Tailgate, one of its licensees, of a T-shirt featuring photograph Ali-15. (Trial Tr., ECF Nos. 320, 322, 324, 326, 328, 330, at 258:10–16; Pl. Trial Ex. 68-1, ECF No. 316-6, at 1.)

On February 11, 2015, Gaffney sent ABG a proposed new contract for the photographs. (Trial Tr. 144:10–145:2.) Then, on March 4, 2015, Gaffney sent an email to ABG informing the company that "ABG is not permitted to use any of the photographs in the Michael Gaffney Collection." (Pl. Trial Ex. 51, ECF No. 316-12.) Also on that day, Gaffney spoke with ABG regarding a potential contract renegotiation; at the end of that conversation, Gaffney expressed that there would be no further renegotiation between them. (Trial Tr. 145:3–21.) On March 9, 2015, on an internal email chain, an ABG attorney instructed the company to remove all Michael Gaffney photos from the ABG style guide. (Pl. Trial Ex. 167, ECF No. 350-32; *see* Trial Tr. 812:10-16.)

After the expiration of the Agreement and this string of warnings regarding the same, ABG entered into license agreements that included the photographs with three licensees: Roots, Tag Heuer, and iCanvas. (Pl. Trial Ex. 27, ECF No. 319-11; Pl. Trial Ex. 103, ECF No. 350-25; Pl. Trial Ex. 41, ECF No. 350-11.) The last of these agreements was signed on October 1, 2015, eight months after the Agreement's expiration. (Pl. Trial Ex. 41, ECF No. 350-11.) These new users utilized the photographs at least eight different times, including on social media and on sold merchandise, between the Agreement's expiration and May 3, 2019. (*See, e.g.*, Pl. Trial Ex. 9, ECF No. 319-10, at 2–4; Pl. Trial Ex. 32, ECF No. 350-7; Pl. Trial Ex. 86, ECF No. 350-18; Trial Tr. 274:2–275:14.)

Licensees who had preexisting licenses with ABG for the use of the photographs also continued using the photographs after the Agreement's expiration, including by downloading them for use and featuring them on sold merchandise. (*See, e.g.*, Pl. Trial Ex. 32, ECF No. 350-7; Pl. Trial Ex. 96, ECF No. 350-23; Pl. Trial Ex. 64, ECF No. 350-14.) One licensee included the photographs in its catalogue of images in 2016. (*See* Trial Tr. 269:20–271:8.) During this period, ABG itself also posted the photographs on social media several times. (*See, e.g.*, Pl. Trial Ex. 4, ECF No. 350-3.) Each license agreement between ABG and a licensee—both pre- and post-expiration—also included property other than the photographs at issue in this case. (*See, e.g.*, Pl. Trial Ex. 27, ECF No. 319-11; Pl. Trial Ex. 41, ECF No. 350-1l; Pl. Trial Ex. 40, ECF No. 350-10.)

ABG approved and otherwise interacted with its licensees' post-expiration use of the photographs on several occasions. For example, in December 2015, ABG approved production of several different products featuring the photographs. (*See* Pl. Trial Ex. 68, ECF No. 350-16.) On December 21, 2015, ABG wrote to a licensee that they could not use Gaffney photos "as of March

2015" and instructed the licensee not to "print anymore going forward." (*See id.* at 4–6, 8, 10.)
Despite this, the record demonstrates that licensees continued to make and sell products featuring
the photographs until at least 2016; in fact, on February 1, 2017, ABG directed that a licensee be
charged higher license rates because they were still using the photographs. (Trial Tr. 482:2–485:6;
*see, e.g.*, Pl. Trial Ex. 32, ECF No. 350-7; Pl. Trial Ex. 64, ECF No. 350-14.) ABG records show
that the company paid Gaffney royalties for the sale of products containing his photographs by
licensees through at least 2018. (*See, e.g.*, Pl. Trial Ex. 39, ECF No. 350-9, at 6–15; Pl. Trial Ex.
178, ECF No. 319-2; Pl. Trial Ex. 42, ECF No. 350-12; Trial Tr. 698:3–21.)[2] Defendants also
attempted to offer Plaintiff a check for further royalty payments during trial, which the Plaintiff
refused. (Trial Tr. 212:4–213:6.)

Before trial and in light of this Court's Summary Judgment Order, the parties stipulated
to a list of 23 photographs at issue. (Letter ("Photos Chart"), ECF No. 151.) Plaintiff indicated
that he sought statutory damages for 10 of these 23 photographs. (*See id.*) At trial, Plaintiff
requested that one additional photograph, Ali-12, be made eligible for statutory damages based on
new evidence introduced at trial. (*See* Trial Tr. 960:2–5.) This Court granted that request. (*See
id.* at 967:16–968:11.)[3] This Court then instructed the jury regarding each element of a copyright
infringement claim, as well as on actual damages, profits, and statutory damages. (*See id.* at
1037:9–1044:10.) It also gave the jury the following instruction regarding willfulness:

> In general, you may award statutory damages between $750 and $30,000 for each
> of the eligible photographs. Now, the statutory damage maximum for willful

---

[2] Plaintiff provided evidence that each of the 11 photos eligible for statutory damages was used in a fashion
described in this section after the Agreement's expiration. (*See, e.g.*, Trial Tr. 698:3–699:22 (Ali-01); Pl.
Trial Ex. 4, ECF No. 350-3 (Ali-02, -06, -12, and -17); Pl. Trial Ex. 79, ECF No. 350-17 (Ali-05); Pl. Trial
Ex. 96, ECF No. 350-23, at 6–7 (Ali-07 and -10); Pl. Trial Ex. 32, ECF No. 350-7; Pl. Trial Ex. No. 68,
ECF No. 350-16 (Ali-15 and -17); Pl. Trial Ex. 89, ECF No. 350-19 (Ali-16).)

[3] Thus, the Photographs eligible for statutory damages were Ali-001, Ali-002, Ali-004, Ali-005, Ali-006,
Ali-007, Ali-010, Ali-012, Ali-015, Ali-016, and Ali-017. (*See* Verdict Form at 2.)

infringement is higher, $150,000. If you find the infringement willful, you may award as much as $150,000 for each of the one or more of the 11 photographs at issue. Infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence: first, the defendant engaged in acts that infringed the copyright; and Second, the defendant knew that those acts infringed the copyright, or the defendant acted with reckless disregard for, or willful blindness to, the copyright holder's rights. To refute evidence of willful infringement, the defendant must not only establish good-faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief.

(*Id.* at 1043:18–1044:10.) The jury returned a verdict in favor of Plaintiff, finding that he proved by a preponderance of the evidence that, under the U.S. Copyright Act, Defendants directly, vicariously, and contributorily infringed upon Plaintiff's copyrights by their own and their licensees' copying or creating derivative works from Plaintiff's photographs. (*Id.* at 1067:13–1068:4.) The jury awarded Gaffney $362,665 in actual damages and $750,000 in profits, as well as $1,650,000 in statutory damages based on a finding that the infringements were willful. (*Id.* at 1068:5–21.)

Defendants filed two post-trial motions: (1) a motion for judgment as a matter of law to reduce the jury's award of Defendants' profits to Plaintiff from $750,000 to less than $5,000 total (Profits Mot. at 1) and (2) a motion for judgment as a matter of law that Defendants' copyright infringement was not willful and that Photograph Ali-12 is not eligible for statutory damages, or, in the alternative, for a new trial on statutory damages or remittitur. (Willfulness Mot. at 1.) The parties do not contest liability or challenge the amount of actual damages awarded. This Court heard oral argument on these motions on December 18, 2024. (*See* Oral Arg. Tr., ECF No. 348.)

## II. LEGAL STANDARD

### A. Motion for Judgment as a Matter of Law

Motions pursuant to Federal Rule of Civil Procedure 50(b) to set aside a jury verdict and to award judgment as a matter of law should be granted "cautiously and sparingly." *Meloff v. N.Y.*

*Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001) (internal citation omitted).  "Such a motion may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008) (internal quotation marks and citations omitted).  The court is not permitted to "assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *U.S. v. Space Hunters, Inc.*, 429 F.3d 416, 429 (2d Cir. 2005) (citation and internal quotation marks omitted).  Accordingly, "[w]eakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that 'a reasonable juror would have been compelled to accept the view of the moving party.'" *This is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir. 1998) (quoting *Piesco v. Koch*, 12 F.3d 332, 343 (2d Cir. 1993)).

### B. Motion for New Trial

The decision to grant a motion for new trial, pursuant to Federal Rule of Civil Procedure 59(a), rests within the sound discretion of the district court. *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998).  Such a motion should not be granted unless the court "is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 82 (2d Cir. 2006) (internal citations omitted); *see DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) (stating that a court should only grant such a motion when the jury's verdict is "egregious") (citing *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir. 1992)).  "Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." *DLC Mgmt.*

*Corp.*, 163 F.3d at 134. The court may independently weigh the evidence and, in doing so, need not view the evidence "in the light most favorable to the verdict winner." *See Martin v. Moscowitz*, 272 F. App'x 44, 47 (2d Cir. 2008) (citing *DLC Mgmt. Corp.*, 163 F.3d at 134).

## III. THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT THE JURY'S AWARD OF PROFITS

Under the Copyright Act, a copyright owner is entitled to "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). In this Circuit, "gross revenue" must be "reasonably related to the infringement." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001), *as amended* (May 15, 2001). Awarded profits may be direct or indirect. *Graham v. Prince*, No. 15-CV-10160, 2023 WL 5917712, at *5 (S.D.N.Y. Sept. 11, 2023). "Direct profits arise from the sale of the infringing good. Indirect profits are derived from the use of the copyrighted work to promote sales of other products." *Graham*, 2023 WL 5917712, at *5 (internal quotations omitted). The Second Circuit has interpreted the Copyright Act to establish a burden-shifting framework for determining profits: The copyright owner has the initial burden to present evidence of gross revenues *reasonably related to the infringement. Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 334–35 (S.D.N.Y. March 29, 2019). Once they do so, the burden shifts to the infringer to establish "the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b); *see Davis*, 246 F.3d at 160; *see also Craig*, 380 F. Supp. 3d at 334–35.

Gaffney argues that he met his initial burden by establishing his entitlement to 30% of "gross revenue reasonably related to the infringement of $8.475 million," or $2.542 million. (Pl.'s

Opp. to Profits Mot. ("Pl.'s Profits Opp."), ECF No. 333, at 10.) He cites to ten discrete sources of revenue that he attempts to tie to the photographs in support of this argument. (*Id.* at 4–10.) Three of these sources are ABG licensees that used the photographs in advertisements on social media. (*See id.* at 4–5; 8–9, 16.) Another three are ABG licensees that used the photographs on merchandise sold by the licensees. (*See id.* at 8–10.) Two are ABG licensees that downloaded or "used" the photographs, with no further description of how the photographs were used. (*See id.* at 9–10.) For each of these licensees, Gaffney argues that he is entitled to the entirety of Defendants' revenue from these license agreements, regardless of whether that revenue was tied—directly or indirectly—to his photographs. (*See id.* at 4–10.) Finally, Gaffney argues that ABG posted the photographs on social media and used them on its website to advertise its web store, rendering the entirety of ABG's web store revenues reasonably related to the infringement. (*See id.* at 5–7.)

The bulk of Gaffney's argument rests on the proposition that he is entitled to revenue "arising from advertisement of the infringing photographs." (*Id.* at 12–14.) In other words, Gaffney argues that the use of his photographs in advertisements is enough to establish that the entirety of the gross revenues from a license agreement or web store are reasonably related to ABG's infringement. (*See id.* at 12.) But that is not the case. In this Circuit, "modern cases 'more frequently deny profits' earned from advertising that incorporates infringing copyrighted material." *Bayoh v. Afropunk LLC*, No. 18-cv-5820, 2020 WL 6269300, at *7 (S.D.N.Y. Oct. 26, 2020) (citing 4 Nimmer on Copyright § 14.03 (2019)).

The caselaw that *does* find advertising profits sufficiently related to the infringement generally encompasses two main categories, neither of which applies here. The first includes cases in which "evidence was presented showing that the infringing work contributed to an increase in value of, or increase in decisions to buy, the non-infringing products." *Graham*, 2023 WL

5917712, at *6.  One of Gaffney's main cited cases, *Lapsata DeCaro Studio Corporation v. Rimowa GMBH*, No. 16-cv-934, 2018 WL 3059650, (S.D.N.Y. June 20, 2018), falls squarely into this category.  In *Lapsata*, the plaintiff presented evidence that the infringer experienced a 33.3% increase in sales after unlawfully using the plaintiff's photographs in advertisements.  *Id.* at *7. Gaffney has presented no such evidence here.  He does not cite to any indication that ABG or its licensees experienced increased revenue after posting his photographs on social media, or that ABG experienced an increase in web store sales after using his photographs on its website.  Nor does he cite to any evidence presented at trial that any individual decided to buy a product from an ABG licensee—or even navigate to the product's or web store's page—after seeing a post bearing one of his photographs online.  Thus, the "decision to buy" link between infringement and Defendants' revenues is not sufficiently established here.  *See Graham*, 2023 WL 5917712, at *6.

*Lapsata* also falls into the second category of cases in which advertising use of a copyrighted work was sufficient to support a jury verdict for indirect profits: those in which an infringed work was the centerpiece of an advertising campaign.  In *Lapsata*, the court found that all of the infringer's revenues for a year could have been reasonably related to the infringement because, *inter alia*, the plaintiff's photographs were some of "the only promotional images . . . used in all advertising worldwide" and one of them was the cover image for a lookbook that was explicitly credited with increasing company profits.  *Lapsata*, 2018 WL 3059650, at *7.  The advertisements featuring the images "appeared internationally in stores, billboards, advertisements in print and online publications and [the company's] website."  *Id.*  Similarly, in *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324 (S.D.N.Y. 2019)—another one of Plaintiff's cited cases— the plaintiff's photographs were featured "front and center" on the covers of the defendant's music albums. *Id.* at 328, 335.

The social media advertisements featuring the Gaffney's photographs were not nearly as prolific as the advertisements in the aforementioned cases. Nor were the photographs the focal point of an advertising campaign. Gaffney's allegation that three ABG licensees used Gaffney's photographs in six total social media posts over three years is not enough to establish that all of ABG's revenue from its license agreements with those licensees is reasonably related to the use of Gaffney's photographs. Defendants' license agreements contained use provisions for several other pieces of intellectual property. There was no actual evidence presented at trial of the infringing uses' impact on either the licensees' or ABG's revenue streams.

Similarly, Gaffney presented no evidence that the ABG web store experienced increased sales or revenue after posting Gaffney's photographs on social media or featuring one on the website. While Defendants posted Gaffney's photographs on social media more frequently than its licensees did, they also posted numerous other photographs. Moreover, these posts were not direct advertisements for the Muhammad Ali web store, but generic social media posts regarding Muhammad Ali. (*See, e.g.*, Pl. Trial Ex. 4., ECF No. 350-3.) Without more, the existence of these posts and the use of Gaffney's photographs on the website are not enough to tie all of ABG's web store revenue to the photographs.

In sum, Gaffney has not met his burden to show that all of his claimed revenues—from Defendants' license agreements and web store sales—are profits reasonably related to infringing uses of his photographs. Gaffney is entitled to only Defendants' gross revenues attributable to Defendants' infringement: the gross revenues resulting from the sales of products bearing Gaffney's photos. Based on the royalty statements provided by Defendants at trial, Defendants earned $3,466 in revenue from 2015 to 2019 and $1,183.60 in revenue from 2019 to 2023 from products featuring the photographs. (*See* Def. Trial Ex. 27, ECF No. 319-1; Pl. Trial Ex. 178; ECF

No. 319-2; Pl. Ex. 42, ECF No. 350-12 (Pyramid Posters Agreement).)[4] Plaintiff does not contest

that this $4,649.60 total represents the total amount of gross revenue attributable to the sale of

products featuring his photographs. Therefore, Gaffney would only be entitled to $4,649.60 in

infringers' profits. The motion to reduce the profit award is therefore granted.

## IV. THE EVIDENCE AT TRIAL WAS SUFFICIENT TO SUPPORT THE JURY'S STATUTORY DAMAGES AWARD

### A.  Willful Infringement

Under the U.S. Copyright Act, a jury may award enhanced statutory damages of up to

$150,000 per work if it finds that the defendant's infringement was willful. 17 U.S.C. § 504(c)(2).

Otherwise, the jury may award statutory damages of $750 to $30,000 per work.  17 U.S.C. §

504(c)(1).  Infringement is willful if (1) "the defendant was actually aware of the infringing

activity" or (2) "the defendant's actions were the result of 'reckless disregard' for, or 'willful

blindness' to, the copyright holder's rights." *Island Software & Computer Serv., Inc. v. Microsoft

Corp.,* 413 F.3d 257, 263 (2d Cir. 2005).  In other words, the infringer does not need to have acted

maliciously; knowledge or reckless disregard is sufficient.  *See Nat'l Football League v.

PrimeTime 24 Joint Venture,* 131 F. Supp. 2d 458, 479 (S.D.N.Y. 2001).  Here, Defendants ask

this Court to overturn the jury's finding that Defendants' infringement was willful.  They argue

for either a new trial on statutory damages, or an offer to Gaffney of the option of a new trial or a

reduction in statutory damages to $30,000 per photo.  (Willfulness Mot. at 1–2.)  Because the

evidence at trial was sufficient to support a jury's finding of willfulness, the Defendants' motion

is denied.

---

[4] In addition, Plaintiff does not argue that he is owed unpaid royalties from Defendants based on revenue generated from the use of his photos. Given that he is entitled to 30 to 50% of Defendants' revenue, depending on the use, the royalty amounts he received do not imply hundreds of thousands of dollars in profit. (*See* Agreement ¶¶ 5.1–5.2; Pl. Trial Ex. 39, ECF No. 350-9, at 6–15; Pl. Trial Ex. 178, ECF No. 319-2; Pl. Trial Ex. 42, ECF No. 350-12.)

Gaffney provided ample evidence at trial that supported a verdict of willful infringement. After the Agreement's expiration in 2015, Defendants received at least two emails—one from Gaffney and one from an ABG attorney—notifying them of the Agreement's expiration and that Gaffney's photographs could no longer be used. (*See* Pl. Trial Ex. 51, ECF No. 316-12, Pl. Trial Ex. 167, ECF No. 350-32.) Defendants also engaged in a phone conversation with Plaintiff that made it clear that there was no longer an active agreement between the parties. (Trial Tr. 145:3–21.) After these notifications, however, Defendants continued to post the photographs on social media, license the photographs to new licensees, approve new uses of the photographs by licensees, and collect royalties from licensees' sales of products bearing the photographs. (*See* sources cited *supra*.) This evidence alone is enough to support a jury's finding of willfulness, given that "termination notice does create an inference that post-termination sales are willful infringement." *EMI Ent. World, Inc. v. Karen Recs., Inc.*, 806 F. Supp. 2d 697, 703 (S.D.N.Y. 2011), *vacated on other grounds*, No. 05 CIV. 390, 2013 WL 2480212 (S.D.N.Y. June 10, 2013).

Defendants argue that their social media uses could not have been willful infringement because the Agreement was ambiguous as to post-termination social media uses, and Defendants had a reasonable belief that those uses were permitted. (Willfulness Mot. at 9–11.)[5] But whether the Agreement was ambiguous—and whether Defendants believed they were permitted to continue posting the photographs on social media—was a question for the jury. Some of Defendants' witnesses testified that they believed social media uses to be permitted, but others testified that

---

[5] Defendants argue that this Court, in its summary judgment ruling, found that post-termination social media uses could not constitute willful infringement as a matter of law because the Agreement was ambiguous with respect to post-termination social media use. (*See* Willfulness Mot. at 9–10; Summ. J. Order at 15 n.18.) As Plaintiff correctly notes, however, this Court did not make that finding as a matter of law; instead, it simply noted that, in the summary judgment context, the terms of the agreement were sufficiently disputed to present a factual question best left for a jury. (Pl.'s Opp. to Willfulness Mot. ("Pl.'s Willfulness Opp."), ECF No. 332, at 18–19.)

those uses were not. (*See, e.g.*, Trial Tr. 515:5–516:13, 578:20–579:1.) The jury was entitled to credit certain witnesses over others and reject Defendants' argument of ambiguity or the claim that they believed these uses to be permitted. *See, e.g.*, *Beastie Boys v. Monster Energy Co.*, 66 F. Supp. 3d 424, 440–41 (S.D.N.Y. 2014) (finding enough evidence to support a finding of willfulness when there was a dispute over whether use permission had been granted). Thus, the jury had sufficient evidence to determine that Defendants acted in reckless disregard of Gaffney's rights when Defendants continued allowing and directing employees to post the photographs on social media after the Agreement's termination.

Defendants also argue that they made good-faith efforts to stop their licensees from using the photographs after the Agreement's termination, which should preclude a finding of willfulness. (*See* Willfulness Mot. at 11–12.) There is some evidence of these efforts: for example, Defendants showed the jury emails sent by ABG in 2017 to various licensees directing them to stop using Gaffney's photographs on any products. (*See, e.g.*, Pl. Trial Ex. 93, ECF No. 316-10; Pl. Trial Ex. 102, ECF No. 316-11.) In addition, in December 2015, ABG wrote in the production comments of multiple licensed products that Gaffney photos could no longer be used and instructed the licensee not to "print anymore going forward." (*E.g.*, Pl. Trial Ex. 68 at 3–5, 7, 9.) Moreover, Defendants argue that their instruction to charge one licensee higher royalty amounts because it was still using the photographs was to deter further use of those photos. (*See* Def.'s Rep. in Support of Willfulness Mot. ("Willfulness Rep."), ECF No. 337, at 9–10.)

There was also ample evidence, however, that Defendants were aware of these post-termination uses and did little to stop them. For example, the jury also heard and saw evidence that Defendants approved multiple items for production after the Agreement had expired, and that Defendants continued to collect revenue from products bearing Gaffney's photos until 2023. (*See*,

*e.g.*, Trial Tr. 259:17–24, 260:6–25, 262:17–24, 266:25–267:9, 698:3–699:22.) The jury was not bound to believe Defendants' explanations or claims; it was reasonable for the jury to decide that Defendants willfully used and licensed Plaintiff's photographs beyond the expiration of their contract. Emails sent two years after the Agreement's expiration and a few production comments were not enough to overcome the evidence that Defendants were acutely aware of—and profited from—the fact that the photographs were still being used, especially since Defendants are a large company with significant intellectual property experience. *See, e.g., Agence France Presse v. Morel*, No. 10 CV 2730, 2014 WL 3963124, at *5–6 (S.D.N.Y. Aug. 13, 2014) (finding enough evidence to support a jury conclusion that the infringer "should have been more meticulous in finding and removing [plaintiff's] photographs," especially given that the infringer "worked in an industry where copyright was prevalent," when the infringer had seen a termination notice and argued that it was difficult to know whether he had sufficiently remedied the infringement). There was sufficient evidence presented at trial to support the jury's finding that Defendants willfully infringed Gaffney's copyrights.

## B.  Ali-12 Is Eligible for Statutory Damages

Defendants also ask this Court to rule, as a matter of law, that photograph Ali-12 is not eligible for statutory damages and that the statutory damages award must therefore be reduced by $150,000. (Willfulness Mot. at 14–16.) The photograph labeled as Ali-12 is identical to the photograph Ali-102. (*See* Willfulness Rep. at 4.) Ali-102 was part of the '740 Registration, which took place on June 12, 2018. (*See* Photos Chart.) Ali-12 was part of the '300 Registration, which took place on February 22, 2008. (*See* Cert. of Reg. ("300 Registration"), ECF No. 158-1.) In the Summary Judgment Order, this Court found that the evidence showed there was "no infringing

use[]" of Ali-102[6] before the date of the '740 Registration, which would preclude Gaffney from

seeking statutory damages for that photograph.  (Summ. J. Order at 2 n.9.)  Before trial, Plaintiff

filed his Motion *in Limine* No. 1, which sought the addition of thirteen photographs—including

Ali-12—to this case on the grounds that Defendants' infringement as to these photos were revealed

during discovery.  (*See* Mot. in Limine No. 1, ECF No. 204-1, at 5.)  That Motion noted that Ali-

12 "is a duplicate of Ali-102," which was established as a photograph at issue in this case, but did

not otherwise make an argument specific to Ali-12.  (*Id.* at 5, 7.)  This Court denied the Motion *in*

*Limine* on the grounds that Plaintiff could not, "on the eve of trial . . . add new photographs that

were not designated for trial or withdrawn."  (Pre-Trial Conf. Tr., ECF No. 282, at 3:2–9.)

"[T]he law of the case doctrine 'posits that when a court decides upon a rule of law, that

decision should continue to govern the same issues in subsequent stages of the same case.'"

*Arizona Premium Fin. Co. v. Employers Ins. of Wausau, of Wausau Am Mut. Co.*, 586 F. App'x

713, 716 (2d Cir. 2014) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see Aramony*

*v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) ("Courts apply the law of the case doctrine

when their prior decisions in an ongoing case either expressly resolved an issue or necessarily

resolved it by implication.").  Importantly, however, the application of the law of the case doctrine

is discretionary, and a court may reconsider a prior nonfinal decision when there is "an intervening

change of controlling law, the availability of new evidence, or the need to correct a clear error or

prevent a manifest injustice." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers*

*& Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).

As justification for his late-breaking request for statutory damages for Ali-12, Gaffney

argued that new evidence presented at trial demonstrated that Ali-12 and Ali-102 are the same

---

[6] In previous filings, Ali-102 was referred to by its Photo ID number, I26.  (*See, e.g.*, Summ. J. Order at 2;
Photos Chart.)

photograph. This was not new evidence; in fact, it was noted in Gaffney's Motion *in Limine*. *See Coopers & Lybrand, LLP*, 322 F.3d at 167–68 (finding that evidence was not new because the moving party had "access to the evidence before the order they sought to revise was entered.") Instead, what appears to be new is the argument that Ali-12 was part of the '300 registration and it is therefore eligible for statutory damages—which was made to this Court for the first time at the charging conference during trial. (*See* Trial Tr. 960:2–5; 964:18–19.) In essence, Gaffney now argues that the registration of Ali-102 as part of the '740 Registration was duplicative, since the photograph had already been registered as part of the '300 registration, and the treatment of that photo in this case should be as if it had not been part of the '740 Registration at all. Based on the evidence presented at trial, Plaintiff is correct. This Court's reasoning in its Summary Judgment Order with respect to the photos registered in 2018 does not apply to Ali-12. Thus, Ali-12 is properly treated as registered in 2008, and the Summary Judgment Order did not find that Ali-12 is ineligible for statutory damages as a matter of law.

As such, Plaintiff's argument is better characterized as one that the evidence at trial helped clarify for the parties that Ali-12 was actually part of the '300 registration, which made it eligible for statutory damages under the Summary Judgment Order. That Gaffney failed to connect the dots and explicitly make this argument earlier does not overcome the fact that Ali-12 is legally eligible for statutory damages under the Copyright Act, an eligibility that Defendants do not contest. *See* 17 U.S.C. § 504(c)(2). The evidence presented at trial and the arguments made at the charging conference clearly demonstrate that Gaffney is legally entitled to seek these damages. Ali-12 is therefore eligible for statutory damages.

### C. Jury Instructions

Finally, Defendants argue that they are entitled to a new trial on statutory damages or reduced statutory damages on the ground that this Court did not provide the jury adequate instructions with respect to willfulness. (*See* Willfulness Mot. at 16.) In its written objections to this Court's proposed jury instructions, Defendants asked this Court to include in its jury instructions a list of factors identified in *Bryant v. Media Rights Prods., Inc.*, 603 F.3d 135 (2d Cir. 2010), which outlines "the full range of factors [the jury] may consider in awarding statutory damages." (Willfulness Mot. at 16; *see* Trial Tr. 969:14–23; *Bryant*, 603 F.3d at 144.) Defendants "submit[ted] that the jurors should be instructed to consider the following factors when awarding statutory damages: (1) the Defendants' infringer's state of mind; (2) expenses saved and profits earned by the infringer; (3) revenue lost by the copyright holder, if any; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." (Defs.' Objs. to Jury Charge and Proposed Verdict Form, ECF No. 305, at 2); *see Bryant*, 603 F.3d at 144. At the charging conference, Defendants renewed this request. (*See* Trial Tr. 969:14–23.) This Court elected not to include the *Bryant* factors in its instruction, instead opting for the instruction previously quoted. (Trial Tr. 970:5–971:6.) Defendants did not specifically object to the final instruction at the charging conference, during the actual jury charge, or after the jury charge was given. (*See id.* at 971:4–11; 1043:24–1044:10.) They argue post-trial that the omission of the *Bryant* factors rendered the jury instructions "deficient as incomplete, and prejudicial." (Willfulness Rep. at 3.)

More specifically, Defendants now argue that the jury should have been instructed that it could consider the "revenue lost by the copyright holder" and the profits earned by Defendants

while determining statutory damages, and that the instruction "did not allow the jury to consider" the Defendants' removal of Gaffney's photographs from their social media sites after the lawsuit was filed. (Willfulness Mot. at 17–18.) Defendants essentially argue that because willfulness was the "sole instructive factor," the jury wrongfully approached statutory damages as an either/or question: once it decided that infringement was willful, it had "no basis" to award anything but the maximum of 150,000 per photo. (*Id.* at 18.)

This argument is unavailing. First, the federal modern jury instruction on copyright infringement does not contain the *Bryant* factors or any other discussion of factors the jury may consider when awarding statutory damages. *See* 4 Modern Federal Jury Instructions-Civil P 86B.04 (2025); *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 150 (2d Cir. 2025) (upholding jury charge that "mirrors, nearly word-for-word, the model instruction from the leading set of pattern federal jury instructions.") Nor do the Defendants cite to any case in which the court held that jury instructions must include the *Bryant* factors, or that factors such as the *Bryant* factors are a required component of jury instructions. In fact, Defendants never argued any of the specific *Bryant* factors to the court or jury, nor did most of those factors support Defendants' claim of non-willfulness.

In any event, the fact that the jury charge did not contain a list of factors the jury could consider does not mean that this Court "did not allow the jury" or prohibited the jury from considering any relevant considerations supported by the evidence. Defendants were well within their rights to make the arguments they wanted to, including that Gaffney did not lose enough revenue from the infringement to warrant a $150,000 award per photo, that Defendants simply did not make that much money from the photographs, that Defendants removed the photographs from social media platforms immediately after the lawsuit was filed, or that Defendants' conduct

generally did not warrant an award of the statutory maximum, even if the jury found that it was willful. That Defendants did not make most of these arguments in their brief, five- to ten-minute summation to the jury—or that these arguments were unsuccessful—is not an indictment of the jury charge.[7] The jury charge was legally complete, and Defendants are not entitled to a new trial or remittitur of statutory damages.

## V.    CONCLUSION

Defendants' motion for judgment as a matter of law with respect to profits (ECF No. 318) is GRANTED. The Plaintiff's award of Defendants' profits is reduced to $4,649.60.

Ali-12 is eligible for statutory damages. Defendants' motion for judgment as a matter of law with respect to willfulness and Ali-12 or, in the alternative, for a new trial on statutory damages or remittitur (ECF No. 315) is DENIED. The Plaintiff's award of statutory damages ($1,650,000.000) is undisturbed. The Clerk of Court is directed to close these motions accordingly.

Dated: New York, New York
     July 10, 2025

                                SO ORDERED.

                                *George B. Daniels*

                                GEORGE B. DANIELS
                                United States District Judge

---

[7] Moreover, the fact that the statutory damage award appears to be a "windfall recovery for Gaffney, who earned no more than $58,000 from [the Photographs] over his entire career," does not render the award legally problematic or invalid. (Willfulness Rep. at 1.) Statutory damage awards are not required to be proportional to actual damages.